1   Behrooz Shariati (State Bar. No. 174436)
2   bshariati@jonesday.com
    JONES DAY
3   1755 Embarcadero Road
    Palo Alto, CA  94303
4   Telephone:  (650) 739-3939
    Facsimile:   (650) 739-3900
5
    Attorney for Plaintiff
6   XILINX, INC.

*E-filing*

*ORIGINAL*

*Filed*

SEP  2 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ADR

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11                    C V 1 1    0 4 4 0 7    Case No.

12                                        **COMPLAINT FOR DECLARATORY**
13                                        **JUDGMENT OF LACK OF**
                                          **STANDING, PATENT NON-**
14   XILINX, INC.,                        **INFRINGEMENT AND INVALIDITY,**
                                          **AND VIOLATION OF CALIFORNIA**
15              Plaintiff,                **BUSINESS AND PROFESSIONS**
          v.                              **CODE § 17200**
16
     INTELLECTUAL VENTURES, LLC,          **DEMAND FOR JURY TRIAL**
17   INTELLECTUAL VENTURES
     MANAGEMENT, LLC,
18   DETELLE RELAY KG, LLC,
     ROLDAN BLOCK NY, LLC,
19   LATROSSE TECHNOLOGIES, LLC,
     TR TECHNOLOGIES FOUNDATION LLC,
20   TAICHI HOLDINGS, LLC,
     NOREGIN ASSETS N.V., LLC,
21   INTELLECTUAL VENTURE FUNDING
     LLC,
22              Defendants.

23        Xilinx, Inc. ("Xilinx" or "Plaintiff"), by and through its undersigned counsel, complains

24   against Intellectual Ventures, LLC, Intellectual Ventures Management, LLC, Detelle Relay KG,

25   LLC, Roldan Block NY, LLC, Latrosse Technologies, LLC, TR Technologies Foundation LLC,

26   Taichi Holdings, LLC, Noregin Assets N.V., LLC, Intellectual Venture Funding LLC, as follows:

27

28

                                                                    COMPLAINT

**NATURE OF THE ACTION**

1.     In this action, Xilinx seeks a declaration that certain products made, used, sold, or imported by Xilinx ("the Accused Products") do not infringe several patents asserted by Defendants against Xilinx ("the Asserted Patents"). Xilinx also seeks a declaration of invalidity and unenforceability of the Asserted Patents, a declaration that certain of the defendants who have accused Xilinx of infringing the Asserted Patents do not have standing to assert these patents against Xilinx, and an injunction permanently enjoining those defendants from asserting the patents in violation of California Business and Professions Act §§ 17200 *et.seq.*

**JURISDICTION AND VENUE**

2.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, under the patent laws of the United States, Title 35 of the United States Code. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

3.     This Court has personal jurisdiction over Defendants by virtue of their sufficient minimum contacts with this forum as a result of the business they conduct within the State of California and within the Northern District of California.

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

**INTRADISTRICT ASSIGNMENT**

5.     For purposes of intradistrict assignment pursuant to Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action is to be assigned on a district-wide basis.

**THE PATENTS-IN-SUIT**

6.     The United States Patent and Trademark Office (the "USPTO") issued United States Patent No. 5,524,251 ("the '251 patent"), entitled "Microcomputer having ALU Performing Min and Max Operations," on June 4, 1996. On June 3, 2011, the USPTO granted *ex parte* reexamination of all claims of the '251 patent on the basis that a substantial new question of patentability exists as to those claims in light of prior art that was not previously before the USPTO. On August 18, 2011, the USPTO issued an Office Action rejecting all 11 claims.

7.     The USPTO issued United States Patent No. 5,751,736 ("the '736 patent"), entitled "Testable Electronic System," on May 12, 1998. On May 27, 2011, the USPTO granted *ex parte*

1  reexamination of all claims of the '736 patent on the basis that a substantial new question of
2  patentability exists as to those claims in light of prior art that was not previously before the
3  USPTO.

4      8.    The USPTO issued United States Patent No. 5,887,165 ("the '165 patent"), entitled
5  "Dynamically Reconfigurable Hardware System for Real-time Control of Processes," on March
6  23, 1999. On May 12, 2011, the USPTO granted *ex parte* reexamination of claims 1-11 of the
7  '165 patent on the basis that a substantial new question of patentability exists as to those claims in
8  light of prior art that was not previously before the USPTO.

9      9.    The USPTO issued United States Patent No. 6,321,331 ("the '331 patent"), entitled
10 "Real Time Debugger Interface for Embedded Systems," on November 20, 2001. On April 8,
11 2011, the USPTO granted *ex parte* reexamination of claims 1-5, 11-15, and 19-22 (of 22 total
12 claims) of the '331 patent on the basis that a substantial new question of patentability exists as to
13 those claims in light of prior art that was not previously before the USPTO. On July 29, 2011, the
14 USPTO issued an Office Action rejecting all the claims subject to the reexamination.

15     10.   The USPTO issued United States Patent No. 6,747,350 ("the '350 patent"), entitled
16 "Flip Chip Package Structure," on June 8, 2004. On April 22, 2011, the USPTO granted *inter*
17 *partes* reexamination of all claims of the '350 patent on the basis that a substantial new question
18 of patentability exists as to those claims in light of prior art that was not previously before the
19 USPTO, and issued an Office Action rejecting the claims.

20     11.   The USPTO issued United States Patent No. 6,768,497 ("the '497 patent"), entitled
21 "Elastic Presentation Space," on July 27, 2004.

22     12.   The USPTO issued United States Patent No. 7,100,061 ("the '061 patent"), entitled
23 "Adaptive Power Control," on August 29, 2006. An *inter partes* reexamination certificate was
24 issued on August 4, 2009.

25                              **THE PARTIES**

26 **Plaintiff**

27     13.   Xilinx is a Delaware corporation with its principal place of business at 2100 Logic
28 Drive, San Jose, California 95124. Xilinx is engaged in the business of designing, developing,

1   and marketing complete programmable logic solutions, including advanced integrated circuits,

2   software design tools, predefined system functions delivered as intellectual property cores, design

3   services, customer training, field engineering, and customer support.

4   **Defendants**

5          14.    Upon information and belief, Defendants Intellectual Ventures, LLC ("Intellectual

6   Ventures") and Intellectual Ventures Management, LLC ("IV Management") are Washington

7   limited liability companies each with their principal place of business at 3150 139th Avenue SE,

8   Building 4, Bellevue, Washington 98005.

9          15.    Upon information and belief, Intellectual Ventures and IV Management maintain

10  offices and employees within this District.

11         16.    Upon information and belief, Intellectual Ventures and IV Management are in the

12  business of acquiring, licensing and/or enforcing patents and patent portfolios.

13         17.    Upon information and belief, Defendant Detelle Relay KG, LLC ("Detelle") is a

14  Delaware limited liability company with a Registered Agent located at 2711 Centerville Road,

15  Suite 400, Wilmington, Delaware 19808.  Detelle is the assignee of record with the USPTO of the

16  '251 patent.

17         18.    Upon information and belief, Defendant Roldan Block NY, LLC ("Roldan") is a

18  Delaware limited liability company with a Registered Agent located at 160 Greentree Drive, Suite

19  101, Dover, Delaware 19904.  Roldan is the assignee of record with the USPTO of the '736

20  patent.

21         19.    Upon information and belief, Defendant Latrosse Technologies, LLC ("Latrosse") is

22  a Delaware limited liability company with a Registered Agent located at 2711 Centerville Road,

23  Suite 400, Wilmington, Delaware 19808.  Latrosse is the assignee of record with the USPTO of

24  the '165 patent.

25         20.    Upon information and belief, Defendant TR Technologies Foundation LLC (TRTF")

26  is a Delaware limited liability company with a Registered Agent located at 2711 Centerville

27  Road, Suite 400, Wilmington, Delaware 19808.  TRTF is the assignee of record with the USPTO

28  of the '331 patent.

COMPLAINT

21.     Upon information and belief, Defendant Taichi Holdings, LLC ("Taichi") is a Delaware limited liability company with a Registered Agent located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. Taichi is the assignee of record with the USPTO of the '350 patent.

22.     Upon information and belief, Defendant Noregin Assets N.V., LLC ("Noregin") is a Delaware limited liability company with a Registered Agent located at 160 Greentree Drive, Suite 101, Dover, Delaware 19904. Noregin is the assignee of record with the USPTO of the '497 patent.

23.     Upon information and belief, Defendant Intellectual Venture Funding ("IVF") is a Nevada limited liability company with a Registered Agent located at 2215-b Renaissance Drive, Las Vegas, NV 89119. IVF is the assignee of record with the USPTO of the '061 patent. IVF is a known affiliate of Defendants Intellectual Ventures and Intellectual Ventures Management.

24.     Upon information and belief Defendants Detelle, Roldan, Latrosse, TRTF, Taichi, Noregin, and IVF are each acting as holding companies for the respective Asserted Patents and their activities relating to those patents are being directed by Defendants Intellectual Ventures and IV Management. Defendants Detelle, Roldan, Latrosse, TRTF, Taichi, Noregin, IVF are collectively referred to throughout this Complaint as the "Holding Companies."

**Defendants' Activities in California**

25.     Defendants Intellectual Ventures and IV Management were founded in 1999 and 2000, respectively, by Nathan Myhrvold, Edward Jung, Peter Detkin and Greg Gorder. Defendants Intellectual Ventures and IV Management have the same directors and management and otherwise appear to operate as a single entity.

26.     In a recent complaint filed with the U.S. International Trade Commission, IV Management stated that it "oversees the entire family of companies known in the industry . . . as 'Intellectual Ventures.'" Certain Dynamic Random Access Memory and NAND Flash Memory Devices and Products Containing Same, Inv. No. 337-TA-__, USITC Docket No. 2829 (July 12, 2011), ¶ 7.

27.     Together Intellectual Ventures and IV Management make up what has been called

COMPLAINT

1    one of the world's largest patent holding companies.  Intellectual Ventures and IV Management

2    claim to own rights to more than 30,000 patents and patent applications, which they acquire,

3    group into portfolios, and market to investors through their private IP funds ("IP Funds").

4         28.    Intellectual Ventures and/or IV Management maintain an office and employees

5    within this District.  Upon information and belief, Mr. Joe Chernesky, a Vice President and

6    General Manager of Intellectual Ventures and IV Management's Hardware Intellectual Property

7    group, and Mr. Mark Wilson, a Licensing Executive, both work at Intellectual Ventures and IV

8    Management's Silicon Valley office.

9         29.    In 2004, Xilinx was approached by Intellectual Ventures and IV Management about

10   becoming an investor in one of their IP Funds, Intellectual Ventures Fund I ("Fund I").  During

11   the course of the negotiations, representatives from Intellectual Ventures and IV Management,

12   including Peter Detkin and/or Gregory Gorder, communicated with Xilinx by email and

13   telephone, and attended in-person meetings with Xilinx in California.

14        30.    In 2005, following extensive negotiations, Xilinx and various companies related to

15   Intellectual Ventures and IV Management executed several agreements pursuant to which Xilinx

16   became a limited partner of Fund I.  Xilinx's representatives executed the agreements in San Jose,

17   California on behalf of Xilinx.

18        31.    In 2008, after several months of negotiations again initiated by representatives from

19   Intellectual Ventures and IV Management, Xilinx became a non-managing member of Intellectual

20   Ventures Fund II ("Fund II").

21        32.    Also in 2008, Defendants Intellectual Ventures and/or IV Management, and their

22   affiliate Fund I, issued acquisition notices informing Xilinx that Fund I acquired an interest in the

23   '251, and '331 patents.

24        33.    In 2009,  Defendants Intellectual Ventures and/or IV Management, and their affiliate

25   Fund II, issued an acquisition notice informing Xilinx that Fund II acquired an interest in the '497

26   and '736 patents

27        34.    In 2010, Defendants Intellectual Ventures and/or IV Management, and their affiliate

28   Fund II, issued acquisition notices informing Xilinx that Fund II acquired an interest in the '061,

COMPLAINT

1    '165, '350 patents.

2         35.   In or about the summer of 2010, Intellectual Ventures and IV Management

3    contacted Xilinx to request Xilinx make additional investments in the Funds and take licenses to

4    certain patent portfolios belonging to the Funds which together contained over 500 patents.

5    Intellectual Ventures and IV Management refused to consider granting Xilinx licenses to

6    individual patents, and Xilinx declined to pay for licenses to the portfolios.

7         36.   In December 2010, Intellectual Ventures and IV Management again began to

8    pressure Xilinx into making additional investments in Fund I and Fund II.  As part of its

9    campaign, representatives from Intellectual Ventures and IV Management, including Mr.

10   Chernesky, sent Xilinx emails and met with Xilinx in person at Xilinx's headquarters in San Jose

11   and at Xilinx's counsel's offices in Palo Alto.

12        37.   In an email dated December 7, 2010, Mr. Chernesky identified 16 patents (including

13   the Asserted Patents) that Intellectual Ventures and IV Management claim are infringed by

14   certain Xilinx products.  Shortly thereafter, Intellectual Ventures and IV Management provided

15   Xilinx with claim charts that are identified as having been prepared by Intellectual Ventures

16   and/or IV Management, and that purport to map Xilinx's Accused Products with claim terms of

17   some of the Asserted Patents, including the '251, '736, '165, '331, '350, and '497 patents.  The

18   cover sheet for each of the claim charts prominently displayed Intellectual Ventures and/or

19   Intellectual Ventures Management's logo and indicated that the claim charts were prepared by

20   Intellectual Ventures and/or IV Management and contained confidential information belonging to

21   Intellectual Ventures and IV Management.

22        38.   None of the claim charts indicate the charted patent was owned or was being

23   asserted by any other party, including any of the Holding Companies.  On information and belief,

24   the claim charts were prepared by Intellectual Ventures and IV Management and provided to

25   Xilinx on behalf of the Holding Companies.  On information and belief, by accusing Xilinx of

26   infringing the Asserted Patents, Intellectual Ventures and IV Management were acting as agents

27   of the Holding Companies, or were otherwise acting on behalf of the Holding Companies as the

28   owners of the Asserted Patents.

COMPLAINT

### FIRST COUNT

**(Declaratory Judgment of Lack of Standing to Enforce the '251 Patent)**

**(Against Defendants Intellectual Ventures and IV Management)**

39.    The allegations contained in paragraphs 1 through 38 are incorporated by reference as if fully set herein.

40.    Defendants Intellectual Ventures and IV Management, through their representatives, have accused Xilinx of infringing the '251 patent and have pressured Xilinx into taking a license to the '251 patent.  Despite Intellectual Ventures' and IV Management's accusations and attempts to enforce the '251 patent, Defendants now claim IV Management and Intellectual Ventures do not now have, nor have they ever had, any rights to assert or enforce the '251 patent.

41.    Under all the circumstances in this dispute, Intellectual Ventures and IV Management have, at a minimum, created a substantial, immediate, and real controversy between the parties as to whether Intellectual Ventures and IV Management has standing to enforce the '251 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

42.    A judicial declaration that Intellectual Ventures and IV Management lack standing to enforce the '251 patent is necessary and appropriate in order to resolve this controversy.  Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from initiating infringement litigation and from threatening Xilinx with infringement litigation or charging them either verbally or in writing with infringement of any claims of the '251 patent.

### SECOND COUNT

**(Declaratory Judgment of Lack of Standing to Enforce the '736 Patent)**

**(Against Defendants Intellectual Ventures and IV Management)**

43.    The allegations contained in paragraphs 1 through 42 are incorporated by reference as if fully set herein.

44.    Defendants Intellectual Ventures and IV Management, through their representatives, have accused Xilinx of infringing the '736 patent and have pressured Xilinx into taking a license to the '736 patent.  Despite Intellectual Ventures' and IV Management's accusations and attempts

1   to enforce the '736 patent, Defendants now claim IV Management and Intellectual Ventures do

2   not now have, nor have they ever had, any rights to assert or enforce the '736 patent.

3       45.   Under all the circumstances in this dispute, Intellectual Ventures and IV

4   Management have, at a minimum, created a substantial, immediate, and real controversy between

5   the parties as to whether Intellectual Ventures and IV Management has standing to enforce the

6   '736 patent. A valid and justiciable controversy has arisen and exists between Xilinx and

7   Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

8       46.   A judicial declaration that Intellectual Ventures and IV Management lack standing

9   to enforce the '736 patent is necessary and appropriate in order to resolve this controversy.

10  Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from

11  initiating infringement litigation and from threatening Xilinx with infringement litigation or

12  charging them either verbally or in writing with infringement of any claims of the '736 patent.

13                          **THIRD COUNT**

14          **(Declaratory Judgment of Lack of Standing to Enforce the '165 Patent)**

15            **(Against Defendants Intellectual Ventures and IV Management)**

16      47.   The allegations contained in paragraphs 1 through 46 are incorporated by reference

17  as if fully set herein.

18      48.   Defendants Intellectual Ventures and IV Management, through their representatives,

19  have accused Xilinx of infringing the '165 patent and have pressured Xilinx into taking a license

20  to the '165 patent. Despite Intellectual Ventures' and IV Management's accusations and attempts

21  to enforce the '165 patent, Defendants now claim IV Management and Intellectual Ventures do

22  not now have, nor have they ever had, any rights to assert or enforce the '165 patent.

23      49.   Under all the circumstances in this dispute, Intellectual Ventures and IV

24  Management have, at a minimum, created a substantial, immediate, and real controversy between

25  the parties as to whether Intellectual Ventures and IV Management has standing to enforce the

26  '165 patent. A valid and justiciable controversy has arisen and exists between Xilinx and

27  Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

28      50.   A judicial declaration that Intellectual Ventures and IV Management lack standing

COMPLAINT

1    to enforce the '165 patent is necessary and appropriate in order to resolve this controversy.

2    Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from

3    initiating infringement litigation and from threatening Xilinx with infringement litigation or

4    charging them either verbally or in writing with infringement of any claims of the '165 patent.

5                                   **FOURTH COUNT**

6        **(Declaratory Judgment of Lack of Standing to Enforce the '331 Patent)**

7            **(Against Defendants Intellectual Ventures and IV Management)**

8        51.   The allegations contained in paragraphs 1 through 50 are incorporated by reference

9    as if fully set herein.

10       52.   Defendants Intellectual Ventures and IV Management, through their representatives,

11   have accused Xilinx of infringing the '331 patent and have pressured Xilinx into taking a license

12   to the '331 patent. Despite Intellectual Ventures' and IV Management's accusations and attempts

13   to enforce the '331 patent, Defendants now claim IV Management and Intellectual Ventures do

14   not now have, nor have they ever had, any rights to assert or enforce the '331 patent.

15       53.   Under all the circumstances in this dispute, Intellectual Ventures and IV

16   Management have, at a minimum, created a substantial, immediate, and real controversy between

17   the parties as to whether Intellectual Ventures and IV Management has standing to enforce the

18   '331 patent. A valid and justiciable controversy has arisen and exists between Xilinx and

19   Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

20       54.   A judicial declaration that Intellectual Ventures and IV Management lack standing

21   to enforce the '331 patent is necessary and appropriate in order to resolve this controversy.

22   Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from

23   initiating infringement litigation and from threatening Xilinx with infringement litigation or

24   charging them either verbally or in writing with infringement of any claims of the '331 patent.

25                                    **FIFTH COUNT**

26       **(Declaratory Judgment of Lack of Standing to Enforce the '350 Patent)**

27            **(Against Defendants Intellectual Ventures and IV Management)**

28       55.   The allegations contained in paragraphs 1 through 54 are incorporated by reference

                                                                              COMPLAINT

1   as if fully set herein.

2       56.   Defendants Intellectual Ventures and IV Management, through their representatives,

3   have accused Xilinx of infringing the '350 patent and have pressured Xilinx into taking a license

4   to the '350 patent. Despite Intellectual Ventures' and IV Management's accusations and attempts

5   to enforce the '350 patent, Defendants now claim IV Management and Intellectual Ventures do

6   not now have, nor have they ever had, any rights to assert or enforce the '350 patent.

7       57.   Under all the circumstances in this dispute, Intellectual Ventures and IV

8   Management have, at a minimum, created a substantial, immediate, and real controversy between

9   the parties as to whether Intellectual Ventures and IV Management has standing to enforce the

10   '350 patent. A valid and justiciable controversy has arisen and exists between Xilinx and

11   Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

12       58.   A judicial declaration that Intellectual Ventures and IV Management lack standing

13   to enforce the '350 patent is necessary and appropriate in order to resolve this controversy.

14   Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from

15   initiating infringement litigation and from threatening Xilinx with infringement litigation or

16   charging them either verbally or in writing with infringement of any claims of the '350 patent.

17                           **SIXTH COUNT**

18      **(Declaratory Judgment of Lack of Standing to Enforce the '497 Patent)**

19          **(Against Defendants Intellectual Ventures and IV Management)**

20       59.   The allegations contained in paragraphs 1 through 58 are incorporated by reference

21   as if fully set herein.

22       60.   Defendants Intellectual Ventures and IV Management, through their representatives,

23   have accused Xilinx of infringing the '497 patent and have pressured Xilinx into taking a license

24   to the '497 patent. Despite Intellectual Ventures' and IV Management's accusations and attempts

25   to enforce the '497 patent, Defendants now claim IV Management and Intellectual Ventures do

26   not now have, nor have they ever had, any rights to assert or enforce the '497 patent.

27       61.   Under all the circumstances in this dispute, Intellectual Ventures and IV

28   Management have, at a minimum, created a substantial, immediate, and real controversy between

COMPLAINT

1    the parties as to whether Intellectual Ventures and IV Management has standing to enforce the

2    '497 patent. A valid and justiciable controversy has arisen and exists between Xilinx and

3    Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

4          62.    A judicial declaration that Intellectual Ventures and IV Management lack standing

5    to enforce the '497 patent is necessary and appropriate in order to resolve this controversy.

6    Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from

7    initiating infringement litigation and from threatening Xilinx with infringement litigation or

8    charging them either verbally or in writing with infringement of any claims of the '497 patent.

9                                  **SEVENTH COUNT**

10        **(Declaratory Judgment of Lack of Standing to Enforce the '061 Patent)**

11          **(Against Defendants Intellectual Ventures and IV Management)**

12         63.    The allegations contained in paragraphs 1 through 62 are incorporated by reference

13   as if fully set herein.

14         64.    Defendants Intellectual Ventures and IV Management, through their representatives,

15   have accused Xilinx of infringing the '061 patent and have pressured Xilinx into taking a license

16   to the '061 patent. Despite Intellectual Ventures' and IV Management's accusations and attempts

17   to enforce the '061 patent, Defendants now claim IV Management and Intellectual Ventures do

18   not now have, nor have they ever had, any rights to assert or enforce the '061 patent.

19         65.    Under all the circumstances in this dispute, Intellectual Ventures and IV

20   Management have, at a minimum, created a substantial, immediate, and real controversy between

21   the parties as to whether Intellectual Ventures and IV Management has standing to enforce the

22   '061 patent. A valid and justiciable controversy has arisen and exists between Xilinx and

23   Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

24         66.    A judicial declaration that Intellectual Ventures and IV Management lack standing

25   to enforce the '061 patent is necessary and appropriate in order to resolve this controversy.

26   Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from

27   initiating infringement litigation and from threatening Xilinx with infringement litigation or

28   charging them either verbally or in writing with infringement of any claims of the '061 patent.

COMPLAINT

## **EIGHTH COUNT**

### **(Declaratory Judgment of Non-Infringement of the '251 Patent)**

### **(Against Defendant Detelle)**

67. The allegations contained in paragraphs 1 through 66 are incorporated by reference as if fully set herein.

68. Detelle is the assignee of record with the USPTO of the '251 patent. Upon information and belief, Detelle is the owner and assignee of all rights, title, and interest in and under the '251 patent.

69. Defendants Intellectual Ventures and IV Management, acting on behalf of and as the agent for Detelle, have accused Xilinx of infringing at least Claim 1 of the '251 patent through its manufacture, sale, use, and/or importation of certain integrated circuits allegedly containing an ARM Processor, and have asserted that Xilinx must take a license to the '251 patent to lawfully continue the manufacture, sale, use, and/or importation of such integrated circuits.

70. Xilinx has informed Defendants that Xilinx contends it has the right to engage in the manufacture, sale, use, and/or importation of these integrated circuits without a license to the '251 patent.

71. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of the '251 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

72. Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '251 patent, either literally or under the doctrine of equivalents because none of its integrated circuits, including those Xilinx integrated circuits allegedly containing an ARM Processor, practice Claim 1 or any valid claim of the '251 patent.

73. A judicial declaration of non-infringement of the '251 patent is necessary and appropriate in order to resolve this controversy.

COMPLAINT

**NINTH COUNT**

**(Declaratory Judgment of Invalidity of the '251 Patent)**

**(Against Defendant Detelle)**

74.    The allegations contained in paragraphs 1 through 73 are incorporated by reference as if fully set herein.

75.    Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '251 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

76.    Upon information and belief, the '251 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

77.    At a minimum, at least Claims 1-11 of the '251 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '251 patent, including but not limited to U.S. Patent No. 4,774,688, and the Signetics, 68000 16-/32-Bit Microprocessor publication.  Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '251 patent would not have issued.

78.    The USPTO has already determined that these references raise a substantial new question of patentability of the '251 patent and has issued an Office Action rejecting all claims of the patent.

79.    A judicial declaration of invalidity of the '251 patent is necessary and appropriate in order to resolve this controversy.

**TENTH COUNT**

**(Declaratory Judgment of Non-Infringement of the '736 Patent)**

**(Against Defendant Roldan)**

80.    The allegations contained in paragraphs 1 through 79 are incorporated by reference as if fully set herein.

COMPLAINT

1    81.  Roldan is the assignee of record with the USPTO of the '736 patent.  Upon

2    information and belief, Roldan is the owner and assignee of all rights, title, and interest in and

3    under the '736 patent.

4    82.  Defendants Intellectual Ventures and IV Management, acting on behalf of and as the

5    agent for Roldan, have accused Xilinx of infringing at least Claim 1 of the '736 patent through its

6    manufacture, sale, use, and/or importation of certain integrated circuits, including Xilinx's

7    Spartan-6 FPGAs, and have asserted that Xilinx must take a license to the '736 patent to lawfully

8    continue the manufacture, sale, use, and/or importation of such integrated circuits.

9    83.  Xilinx has informed Defendants that Xilinx contends it has the right to engage in the

10   manufacture, sale, use, and/or importation of these integrated circuits without a license to the '736

11   patent.

12   84.  Under all the circumstances in this dispute, Defendants have, at a minimum, created

13   a substantial, immediate, and real controversy between the parties as to the non-infringement of

14   the '736 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and

15   Defendants within the meaning of 28 U.S.C. § 2201.

16   85.  Upon information and belief, Xilinx has not directly or indirectly infringed any valid

17   and enforceable claim of the '736 patent, either literally or under the doctrine of equivalents

18   because none of its integrated circuits, Xilinx's Spartan-6 FPGAs, practice Claim 1 or any valid

19   claim of the '736 patent.

20   86.  A judicial declaration of non-infringement of the '736 patent is necessary and

21   appropriate in order to resolve this controversy.

22                              **ELEVENTH COUNT**

23              **(Declaratory Judgment of Invalidity of the '736 Patent)**

24                        **(Against Defendant Roldan)**

25   87.  The allegations contained in paragraphs 1 through 86 are incorporated by reference

26   as if fully set herein.

27   88.  Under all the circumstances in this dispute, Defendants have, at a minimum, created

28   a substantial, immediate, and real controversy between the parties as to the invalidity of the '736

COMPLAINT

patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

89.   Upon information and belief, the '736 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

90.   At a minimum, at least Claims 1-8 of the '736 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '736 patent, including but not limited to U.S. Patent Nos. 4,947,357 and 5,748,497;  the European Patent Application 0578386A2, 1/12/1994, L. Whetsel, Int. Cl. G06F 13/40;  and the publication J. Hirst et al., "Infinite Versions Of Some Problems From Finite Complexity Theory," Cornell University Library, March 10, 1995.  Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '736 patent would not have issued.

91.   The USPTO has already determined that these references raise substantial new questions of patentability of the '736 patent.

92.   A judicial declaration of invalidity of the '736 patent is necessary and appropriate in order to resolve this controversy.

## TWELFTH COUNT

### (Declaratory Judgment of Non-Infringement of the '165 Patent)

### (Against Defendant Latrosse)

93.   The allegations contained in paragraphs 1 through 92 are incorporated by reference as if fully set herein.

94.   Latrosse is the assignee of record with the USPTO of the '165 patent.  Upon information and belief, Latrosse is the owner and assignee of all rights, title, and interest in and under the '165 patent.

95.   Defendants Intellectual Ventures and IV Management, acting on behalf of and as the agent for Latrosse, have accused Xilinx of infringing at least Claim 1 of the '165 patent through its manufacture, sale, use, and/or importation of certain integrated circuits, including the Xilinx

COMPLAINT

16

Virtex-5 ML50x evaluation platforms, and have asserted that Xilinx must take a license to the '165 patent to lawfully continue the manufacture, sale, use, and/or importation of such evaluation platforms.

96.     Xilinx has informed Defendants that Xilinx contends it has the right to engage in the manufacture, sale, use, and/or importation of these evaluation platforms without a license to the '165 patent.

97.     Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of the '165 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

98.     Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '165 patent, either literally or under the doctrine of equivalents because none of its evaluation platforms, including the Xilinx Virtex-5 ML50x evaluation platforms, practice Claim 1 or any valid claim of the '165 patent.

99.     A judicial declaration of non-infringement of the '165 patent is necessary and appropriate in order to resolve this controversy.

## THIRTEENTH COUNT

### (Declaratory Judgment of Invalidity of the '165 Patent)

### (Against Defendant Latrosse)

100.   The allegations contained in paragraphs 1 through 99 are incorporated by reference as if fully set herein.

101.   Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '165 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

102.   Upon information and belief, the '165 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

COMPLAINT

17

103. At a minimum, at least Claims 1-11 of the '165 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '165 patent, including but not limited to U.S. Patent Nos. 5,859,878; 5,559,450; 5,815,415; and 5,784,648. Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '165 patent would not have issued.

104. The USPTO has already determined that these references raise a substantial new question of patentability of the '165 patent.

105. A judicial declaration of invalidity of the '165 patent is necessary and appropriate in order to resolve this controversy.

## FOURTEENTH COUNT

### (Declaratory Judgment of Non-Infringement of the '331 Patent)

### (Against Defendant TRTF)

106. The allegations contained in paragraphs 1 through 105 are incorporated by reference as if fully set herein.

107. TRTF is the assignee of record with the USPTO of the '331 patent. Upon information and belief, TRTF is the owner and assignee of all rights, title, and interest in and under the '331 patent.

108. Defendants Intellectual Ventures and IV Management, acting on behalf of and as the agent for TRTF, have accused Xilinx of infringing at least Claim 21 of the '331 patent through its manufacture, sale, use, and/or importation of certain integrated circuits allegedly containing an ARM Cortex processor, and have asserted that Xilinx must take a license to the '331 patent to lawfully continue the manufacture, sale, use, and/or importation of such integrated circuits.

109. Xilinx has informed Defendants that Xilinx contends it has the right to engage in the manufacture, sale, use, and/or importation of these integrated circuits without a license to the '331 patent.

110. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of

COMPLAINT

1   the '331 patent. A valid and justiciable controversy has arisen and exists between Xilinx and

2   Defendants within the meaning of 28 U.S.C. § 2201.

3       111. Upon information and belief, Xilinx has not directly or indirectly infringed any valid

4   and enforceable claim of the '331 patent, either literally or under the doctrine of equivalents

5   because none of its integrated circuits allegedly containing an ARM Cortex processor practice

6   Claim 21 or any valid claim of the '331 patent.

7       112. A judicial declaration of non-infringement of the '331 patent is necessary and

8   appropriate in order to resolve this controversy.

9               **FIFTEENTH COUNT**

10      **(Declaratory Judgment of Invalidity of the '331 Patent)**

11             **(Against Defendant TRTF)**

12       113. The allegations contained in paragraphs 1 through 112 are incorporated by reference

13   as if fully set herein.

14       114. Under all the circumstances in this dispute, Defendants have, at a minimum, created

15   a substantial, immediate, and real controversy between the parties as to the invalidity of the '331

16   patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants

17   within the meaning of 28 U.S.C. § 2201.

18       115. Upon information and belief, the '331 patent is invalid because of its failure to

19   comply with one or more of the requirements of the patent laws of the United States, including,

20   without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

21       116. At a minimum, at least Claims 1-5, 11-15, and 19-22 of the '331 patent are invalid

22   as anticipated and/or obvious over multiple prior art references that were not before the patent

23   examiner during the prosecution of the '331 patent, including but not limited to U.S. Patent Nos.

24   5,996,092 and 5,361,348, and the IBM PowerPC 403GA User's Manual, Second Edition,

25   published March 1995. Had the patent examiner known or been made aware of these prior art

26   references, the claims would not have been allowed and the '331 patent would not have issued.

27       117. The USPTO has already determined that these references raise a substantial new

28   question of patentability of the '331 patent, and has issued an Office Action rejecting Claims 1-5,

COMPLAINT

1    11-15, and 19-22 of the '331 patent.

2         118.  A judicial declaration of invalidity of the '331 patent is necessary and appropriate in

3    order to resolve this controversy.

4                                  **SIXTEENTH COUNT**

5                 **(Declaratory Judgment of Non-Infringement of the '350 Patent)**

6                                 **(Against Defendant Taichi)**

7         119.  The allegations contained in paragraphs 1 through 118 are incorporated by reference

8    as if fully set herein.

9         120.  Taichi is the assignee of record with the USPTO of the '350 patent.  Upon

10   information and belief, Taichi is the owner and assignee of all rights, title, and interest in and

11   under the '350 patent.

12        121.  Defendants Intellectual Ventures and IV Management, acting on behalf of and as the

13   agent for Taichi, have accused Xilinx of infringing at least Claim 1 of the '350 patent through its

14   manufacture, sale, use, and/or importation of certain integrated circuits, including Xilinx FPGA

15   products assembled in a flip-chip BGA package, and have asserted that Xilinx must take a license

16   to the '350 patent to lawfully continue the manufacture, sale, use, and/or importation of such

17   integrated circuits.

18        122.  Xilinx has informed Defendants that Xilinx contends it has the right to engage in the

19   manufacture, sale, use, and/or importation of these integrated circuits without a license to the '350

20   patent.

21        123.  Under all the circumstances in this dispute, Defendants have, at a minimum, created

22   a substantial, immediate, and real controversy between the parties as to the non-infringement of

23   the '350 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and

24   Defendants within the meaning of 28 U.S.C. § 2201.

25        124.  Upon information and belief, Xilinx has not directly or indirectly infringed any valid

26   and enforceable claim of the '350 patent, either literally or under the doctrine of equivalents

27   because none of its integrated circuits, including Xilinx FPGA products assembled in a flip-chip

28   BGA package, practice Claim 1 or any valid claim of the '350 patent.

COMPLAINT

125. A judicial declaration of non-infringement of the '350 patent is necessary and appropriate in order to resolve this controversy.

## SEVENTEENTH COUNT

### (Declaratory Judgment of Invalidity of the '350 Patent)

### (Against Defendant Taichi)

126. The allegations contained in paragraphs 1 through 125 are incorporated by reference as if fully set herein.

127. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '350 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

128. Upon information and belief, the '350 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

129. At a minimum, at least Claims 1-10 of the '350 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '350 patent, including but not limited to U.S. Patent Nos. 7,126,218 ("the '218 patent"). Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '350 patent would not have issued.

130. The USPTO has already determined that the '218 patent reference raises a substantial new question of patentability of the '350 patent and has issued an Office Action rejecting all claims of the patent.

131. A judicial declaration of invalidity of the '350 patent is necessary and appropriate in order to resolve this controversy.

## EIGHTEENTH COUNT

### (Declaratory Judgment of Non-Infringement of the '497 Patent)

### (Against Defendant Noregin)

132. The allegations contained in paragraphs 1 through 131 are incorporated by reference

COMPLAINT

1   as if fully set herein.

2       133. Noregin is the assignee of record with the USPTO of the '497 patent. Upon

3   information and belief, Noregin is the owner and assignee of all rights, title, and interest in and

4   under the '497 patent.

5       134. Defendants Intellectual Ventures and IV Management, acting on behalf of and as the

6   agent for Noregin, have accused Xilinx of infringing at least Claim 76 of the '497 patent through

7   its manufacture, sale, use, and/or importation of the Xilinx FPGA Editor that allegedly practices

8   methods for applying detail-in-context viewing to online and electronic presentations of viewable

9   media, and have asserted that Xilinx must take a license to the '497 patent to lawfully continue

10  the manufacture, sale, use, and/or importation of the Xilinx FPGA Editor.

11      135. Xilinx has informed Defendants that Xilinx contends it has the right to engage in the

12  manufacture, sale, use, and/or importation of the Xilinx FPGA Editor without a license to the

13  '497 patent.

14      136. Under all the circumstances in this dispute, Defendants have, at a minimum, created

15  a substantial, immediate, and real controversy between the parties as to the non-infringement of

16  the '497 patent. A valid and justiciable controversy has arisen and exists between Xilinx and

17  Defendants within the meaning of 28 U.S.C. § 2201.

18      137. Upon information and belief, Xilinx has not directly or indirectly infringed any valid

19  and enforceable claim of the '497 patent, either literally or under the doctrine of equivalents

20  because the Xilinx FPGA Editor does not practice Claim 76 or any valid claim of the '497 patent.

21      138. A judicial declaration of non-infringement of the '497 patent is necessary and

22  appropriate in order to resolve this controversy.

23                    **NINETEENTH COUNT**

24      **(Declaratory Judgment of Invalidity of the '497 Patent)**

25              **(Against Defendant Noregin)**

26      139. The allegations contained in paragraphs 1 through 138 are incorporated by reference

27  as if fully set herein.

28      140. Under all the circumstances in this dispute, Defendants have, at a minimum, created

COMPLAINT

a substantial, immediate, and real controversy between the parties as to the invalidity of the '497 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

141. Upon information and belief, the '497 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

142. At a minimum, at least Claims 1-100 of the '497 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '497 patent, including but not limited to U.S. Patent Nos. 5,630,103; 5,615,384; 6,018,704; 4,821,210; and 6,407,747; and the International Patent Application WO 00/25267 to Poston et al. ("Poston"), published on May 4, 2000. Had the patent examiner known or been made aware of these prior art references and others, the claims would not have been allowed and the '497 patent would not have issued.

143. A judicial declaration of invalidity of the '497 patent is necessary and appropriate in order to resolve this controversy.

## TWENTIETH COUNT

### (Declaratory Judgment of Non-Infringement of the '061 Patent)

### (Against Defendant IVF)

144. The allegations contained in paragraphs 1 through 143 are incorporated by reference as if fully set herein .

145. IVF is the assignee of record with the USPTO of the '061 patent. Upon information and belief, IVF is the owner and assignee of all rights, title, and interest in and under the '061 patent.

146. Defendants Intellectual Ventures and IV Management, acting on behalf of and as the agent for IVF, have accused Xilinx of infringing the '061 patent through its manufacture, sale, use, and/or importation of certain integrated circuits that allegedly practice methods for controlling power consumption in a computer processor, including Xilinx's FPGA products, and have asserted that Xilinx must take a license to the '061 patent to lawfully continue the

COMPLAINT

1    manufacture, sale, use, and/or importation of such integrated circuits.

2        147.  Xilinx has informed Defendants that Xilinx contends it has the right to engage in the

3    manufacture, sale, use, and/or importation of these integrated circuits without a license to the '061

4    patent.

5        148.  Under all the circumstances in this dispute, Defendants have, at a minimum, created

6    a substantial, immediate, and real controversy between the parties as to the non-infringement of

7    the '061 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and

8    Defendants within the meaning of 28 U.S.C. § 2201.

9        149.  Upon information and belief, Xilinx has not directly or indirectly infringed any valid

10   and enforceable claim of the '061 patent, either literally or under the doctrine of equivalents

11   because none of its integrated circuits, including Xilinx's FPGA products, practice any valid

12   claim of the '061 patent.

13       150.  A judicial declaration of non-infringement of the '061 patent is necessary and

14   appropriate in order to resolve this controversy.

## TWENTY-FIRST COUNT

### (Declaratory Judgment of Invalidity of the '061 Patent)

### (Against Defendant IVF)

18       151.  The allegations contained in paragraphs 1 through 150 are incorporated by reference

19   as if fully set herein.

20       152.  Under all the circumstances in this dispute, Defendants have, at a minimum, created

21   a substantial, immediate, and real controversy between the parties as to the invalidity of the '061

22   patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants

23   within the meaning of 28 U.S.C. § 2201.

24       153.  Upon information and belief, the '061 patent is invalid because of its failure to

25   comply with one or more of the requirements of the patent laws of the United States, including,

26   without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

27       154.  At a minimum, all remaining claims of the '061 patent are invalid as anticipated

28   and/or obvious over multiple prior art references that were not before the patent examiner during

COMPLAINT

1    the prosecution of the '061 patent, including but not limited to U.S. Patent Nos. 5,727,193 and

2    5,761,517. Had the patent examiner known or been made aware of these prior art references and

3    others, the claims would not have been allowed and the '061 patent would not have issued.

4         155. A judicial declaration of invalidity of the '061 patent is necessary and appropriate in

5    order to resolve this controversy.

6                                   **TWENTY-SECOND COUNT**

7                     **(California Business and Professions Code § 17200 *et. seq.*)**

8                        **(Against Defendants IV and IV Management)**

9         156. The allegations contained in paragraphs 1 through 155 are incorporated by reference

10   as if fully set herein.

11        157. In an effort to coerce Xilinx into making additional investments in Fund I and Fund

12   II, Intellectual Ventures and IV Management represented to Xilinx that they own, have the right

13   to license, and the right to enforce the Asserted Patents. Specifically, the following are among the

14   misrepresentations made by or on behalf of Intellectual Ventures and IV Management:

15        158. In email correspondence and telephone discussions with Xilinx, Intellectual

16   Ventures' and IV Management's representatives, including Mr. Chernesky and Mr. Wilson,

17   referred to the Asserted Patents as "IV's patents." For example, on February 16, 2011, in an

18   email to Mr. Hover-Smoot, Mr. Chernesky reminded Mr. Hover-Smoot that IV sent Xilinx the

19   "list of patents IV had acquired that we believe Xilinx should re-consider electing into." In that

20   same email, Mr. Chernesky also referred to the Asserted Patents as "IV patents."

21        159. In or about December 2010, Intellectual Ventures and IV Management's

22   representatives provided Xilinx's General Counsel Scott Hover-Smoot with claim charts that

23   were identified as having been prepared by Intellectual Ventures and/or IV Management, and that

24   purport to map claim terms of the Asserted Patents on Xilinx's Accused Products.

25        160. Between December 2010 and February 2011, Mr. Chernesky, on behalf of

26   Intellectual Ventures and IV Management, communicated with Mr. Hover-Smoot and Mr. Justin

27   Liu, Xilinx's IP Counsel, via email, telephone and at in-person meetings, to discuss Xilinx's

28   further investment into the Funds. By virtue of engaging in licensing negotiations with Xilinx,

COMPLAINT

Intellectual Ventures and IV Management implied they had the right to license and enforce the Asserted Patents.

161.  At a meeting on or about February 14, 2011, representatives from Intellectual Ventures and IV Management's representatives, including Mr. Chernesky, demanded Xilinx pay millions of dollars to license several portfolios of patents including the portfolios containing the Asserted Patents.

162.  At no time did Mr. Chernesky or any representative from Intellectual Ventures and IV Management inform Xilinx that Intellectual Ventures and IV Management did not own the patents-in-suit or possess the right to bring a suit for infringement.  It was only during the course of this litigation and in an effort to avoid the jurisdiction of this Court that Intellectual Ventures and IV Management have taken a contrary position.  *See* Chernesky Decl. in Support of Defs' Reply Brief, ¶ 5, filed July 20, 2011, ECF No. 81-1 (filed under seal).

163.  Upon information and belief, at the time Intellectual Ventures and IV Management made the above misrepresentations, they were aware that they did not own, have the right to license, or have the right to enforce the Asserted Patents.

164.  Upon information and belief, at the time these representations were made, Intellectual Ventures and IV Management knew or reasonably should have known that they were false, but either actively concealed and suppressed the truth from Xilinx or disregarded their falsity.

165.  Intellectual Ventures and IV Management made these representations with the intent to deceive Xilinx and induce Xilinx into making further investments in the Funds for the benefit of Intellectual Ventures and IV Management.  Xilinx justifiably relied on  Intellectual Ventures and IV Management's representations.

166.  Xilinx reasonably relied upon these representations and, as a result of Intellectual Ventures and IV Management's fraudulent representations, active concealment and suppression of the truth, Xilinx has been damaged in an amount to be proven at trial.

167.  California Business and Professions Code Section 17200 prohibits acts, which constitute "unlawful, unfair or fraudulent business practice[s]."  The above-described actions of

1  Defendants IV and IV Management constitute unfair business acts or practices within the

2  meaning of California Business and Professions Code Section 17200, *et seq.*

3      168.  Defendants IV and IV Management should be ordered to account for all monies

4  received from such unfair activities, and disgorge any ill-gotten gains incurred as a result of its

5  unfair business practices.  Defendants IV and IV Management should also be permanently

6  enjoined from continuing their violations of California Business and Professions Code section

7  17200.

8  **PRAYER FOR RELIEF**

9      WHEREFORE, Xilinx requests that the Court enter judgment in its favor and against,

10  Intellectual Ventures LLC, Intellectual Ventures Management LLC, Detelle Relay KG, LLC,

11  Roldan Block NY, LLC, Latrosse Technologies, LLC, TR Technologies Foundation LLC, Taichi

12  Holdings, LLC, Noregin Assets N.V., LLC, Intellectual Venture Funding LLC, and requests the

13  following relief:

14      (A)  An adjudication that the '251, '736, '165, '331, '350, '497, and '061

15      patents (collectively, the "Asserted Patents") are not infringed by Xilinx's

16      importation, use, offer for sale, and/or sale in the United States of the

17      Accused Products;

18      (B)  An adjudication that the Asserted Patents are invalid;

19      (C)  An adjudication that Intellectual Ventures and IV Management do not have

20      the right to assert or bring an action to enforce the '251, '736, '165, '331,

21      '350, '497, and '061 patents;

22      (D)  An order requiring Intellectual Ventures and IV Management to account

23      for all monies received from its activities enforcing the Asserted Patents in

24      violation of California Business and Professions Code Section 17200;

25      (E)  An order requiring Intellectual Ventures and IV Management to disgorge

26      any ill-gotten gains incurred as a result of its activities enforcing the

27      Asserted Patents in violation of California Business and Professions Code

28      Section 17200;

COMPLAINT

(F)   A permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, or affiliates, from initiating infringement litigation and from threatening Xilinx with infringement litigation or charging them either verbally or in writing with infringement of any claims of the Asserted Patents.

(G)   An adjudication in favor of Xilinx on each of Xilinx's claims;

(H)   An adjudication that this is an exceptional case, and an award of Xilinx's costs and attorneys' fees by Defendants pursuant to 35 U.S.C. § 285 or otherwise; and

(I)   Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California Local Rule 3-6(a), Plaintiff respectfully requests a jury trial on all issues triable thereby.

Date:  September 2, 2011                    Respectfully submitted,

JONES DAY

By:  _Behrooz Shariati_
                                                        Behrooz Shariati
Attorneys for Xilinx, Inc.

SVI-96622v8

COMPLAINT

28