1
2
3
4
5
6
7

Behrooz Shariati (State Bar. No. 174436)
bshariati@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:  (650) 739-3939
Facsimile:   (650) 739-3900

Attorney for Plaintiff
XILINX, INC.

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 | Case No. 3:11-cv-04407-SI |
| 12 | **FIRST AMENDED COMPLAINT FOR PATENT NON-INFRINGEMENT AND INVALIDITY, AND VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200** |
| 13  XILINX, INC., | |
| 14          Plaintiff, | |
| 15      v. | **DEMAND FOR JURY TRIAL** |
| 16  INTELLECTUAL VENTURES, LLC, INTELLECTUAL VENTURES | |
| 17  MANAGEMENT, LLC, DETELLE RELAY KG, LLC, ROLDAN BLOCK NY, LLC, | |
| 18  LATROSSE TECHNOLOGIES, LLC, TR TECHNOLOGIES FOUNDATION LLC, | |
| 19  TAICHI HOLDINGS, LLC, NOREGIN ASSETS N.V., LLC, | |
| 20  INTELLECTUAL VENTURE FUNDING LLC, | |
| 21          Defendants. | |

22

23     Pursuant to Federal Rule of Civil Procedure 15(a)(1), Xilinx, Inc. ("Xilinx" or "Plaintiff"),

24 by and through its undersigned counsel, amends its Complaint against Intellectual Ventures, LLC,

25 Intellectual Ventures Management, LLC, Detelle Relay KG, LLC, Roldan Block NY, LLC,

26 Latrosse Technologies, LLC, TR Technologies Foundation LLC, Taichi Holdings, LLC, Noregin

27 Assets N.V., LLC, Intellectual Venture Funding LLC, as follows:

28

## NATURE OF THE ACTION

1.    In this action, Xilinx seeks a declaration that certain products made, used, sold, or imported by Xilinx ("the Accused Products") do not infringe several patents asserted by Defendants against Xilinx ("the Asserted Patents").  Xilinx also seeks a declaration of invalidity and non-infringement of the Asserted Patents and an injunction permanently enjoining those Defendants from asserting the patents in violation of California Business and Professions Act §§ 17200 *et.seq.*

## JURISDICTION AND VENUE

2.    This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

3.    This Court has personal jurisdiction over Defendants by virtue of their sufficient minimum contacts with this forum as a result of the business they conduct within the State of California and within the Northern District of California.

4.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## INTRADISTRICT ASSIGNMENT

5.    For purposes of intradistrict assignment pursuant to Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action is to be assigned on a district-wide basis.

## THE PATENTS-IN-SUIT

6.    The United States Patent and Trademark Office (the "USPTO") issued United States Patent No. 5,524,251 ("the '251 patent"), entitled "Microcomputer having ALU Performing Min and Max Operations," on June 4, 1996.  On June 3, 2011, the USPTO granted *ex parte* reexamination of all claims of the '251 patent on the basis that a substantial new question of patentability exists as to those claims in light of prior art that was not previously before the USPTO.  On August 18, 2011, the USPTO issued an Office Action rejecting all 11 claims.

7.    The USPTO issued United States Patent No. 5,751,736 ("the '736 patent"), entitled "Testable Electronic System," on May 12, 1998.  On May 27, 2011, the USPTO granted *ex parte* reexamination of all claims of the '736 patent on the basis that a substantial new question of

FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

1   patentability exists as to those claims in light of prior art that was not previously before the

2   USPTO.

3          8.     The USPTO issued United States Patent No. 5,887,165 ("the '165 patent"), entitled

4   "Dynamically Reconfigurable Hardware System for Real-time Control of Processes," on March

5   23, 1999.  On May 12, 2011, the USPTO granted *ex parte* reexamination of all 11 claims of the

6   '165 patent on the basis that a substantial new question of patentability exists as to those claims in

7   light of prior art that was not previously before the USPTO.

8          9.     The USPTO issued United States Patent No. 6,321,331 ("the '331 patent"), entitled

9   "Real Time Debugger Interface for Embedded Systems," on November 20, 2001.  On April 8,

10  2011, the USPTO granted *ex parte* reexamination of claims 1-5, 11-15, and 19-22 (of 22 total

11  claims) of the '331 patent on the basis that a substantial new question of patentability exists as to

12  those claims in light of prior art that was not previously before the USPTO.  On July 29, 2011, the

13  USPTO issued an Office Action rejecting all the claims subject to the reexamination.

14         10.    The USPTO issued United States Patent No. 6,747,350 ("the '350 patent"), entitled

15  "Flip Chip Package Structure," on June 8, 2004.  On April 22, 2011, the USPTO granted *inter*

16  *partes* reexamination of all 10 claims of the '350 patent on the basis that a substantial new

17  question of patentability exists as to those claims in light of prior art that was not previously

18  before the USPTO, and issued an Office Action rejecting the claims.

19         11.    The USPTO issued United States Patent No. 6,768,497 ("the '497 patent"), entitled

20  "Elastic Presentation Space," on July 27, 2004.  On September 28, 2011, the USPTO granted

21  *inter partes* reexamination of claims 1-22, 24-50, 52-74, and 76-99 (of 100 total claims) of the

22  '497 patent on the basis that a substantial new question of patentability exists as to those claims in

23  light of prior art that was not previously before the USPTO, and on the same date the USPTO

24  issued an Office Action rejecting all the claims subject to reexamination.

25         12.    The USPTO issued United States Patent No. 7,100,061 ("the '061 patent"), entitled

26  "Adaptive Power Control," on August 29, 2006.  An *inter partes* reexamination certificate was

27  issued on August 4, 2009.

28

1

## THE PARTIES

2    **Plaintiff**

3        13.    Xilinx is a Delaware corporation with its principal place of business at 2100 Logic

4    Drive, San Jose, California 95124.  Xilinx is engaged in the business of designing, developing,

5    and marketing complete programmable logic solutions, including advanced integrated circuits,

6    software design tools, predefined system functions delivered as intellectual property cores, design

7    services, customer training, field engineering, and customer support.

8    **Defendants**

9        14.    Upon information and belief, Defendants Intellectual Ventures, LLC ("Intellectual

10    Ventures") and Intellectual Ventures Management, LLC ("IV Management") are Washington

11    limited liability companies each with their principal place of business at 3150 139th Avenue SE,

12    Building 4, Bellevue, Washington 98005.

13        15.    Upon information and belief, Intellectual Ventures and IV Management maintain

14    offices and employees within this District.

15        16.    Upon information and belief, Intellectual Ventures and IV Management are in the

16    business of acquiring, licensing and/or enforcing patents and patent portfolios.

17        17.    Upon information and belief, Defendant Detelle Relay KG, LLC ("Detelle") is a

18    Delaware limited liability company with a Registered Agent located at 2711 Centerville Road,

19    Suite 400, Wilmington, Delaware 19808.  Detelle is the assignee of record with the USPTO of the

20    '251 patent.

21        18.    Upon information and belief, Defendant Roldan Block NY, LLC ("Roldan") is a

22    Delaware limited liability company with a Registered Agent located at 160 Greentree Drive, Suite

23    101, Dover, Delaware 19904.  Roldan is the assignee of record with the USPTO of the '736

24    patent.

25        19.    Upon information and belief, Defendant Latrosse Technologies, LLC ("Latrosse") is

26    a Delaware limited liability company with a Registered Agent located at 2711 Centerville Road,

27    Suite 400, Wilmington, Delaware 19808.  Latrosse is the assignee of record with the USPTO of

28    the '165 patent.

FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

20.    Upon information and belief, Defendant TR Technologies Foundation LLC ("TRTF") is a Delaware limited liability company with a Registered Agent located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  TRTF is the assignee of record with the USPTO of the '331 patent.

21.    Upon information and belief, Defendant Taichi Holdings, LLC ("Taichi") is a Delaware limited liability company with a Registered Agent located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  Taichi is the assignee of record with the USPTO of the '350 patent.

22.    Upon information and belief, Defendant Noregin Assets N.V., LLC ("Noregin") is a Delaware limited liability company with a Registered Agent located at 160 Greentree Drive, Suite 101, Dover, Delaware 19904.  Noregin is the assignee of record with the USPTO of the '497 patent.

23.    Upon information and belief, Defendant Intellectual Venture Funding ("IVF") is a Nevada limited liability company with a Registered Agent located at 2215-b Renaissance Drive, Las Vegas, NV 89119.  IVF is the assignee of record with the USPTO of the '061 patent.  IVF is a known affiliate of Defendants Intellectual Ventures and Intellectual Ventures Management.

24.    Upon information and belief Defendants Detelle, Roldan, Latrosse, TRTF, Taichi, Noregin, and IVF are each acting as holding companies for the respective Asserted Patents and their activities relating to those patents are being directed by Defendants Intellectual Ventures and/or IV Management.  Defendants Detelle, Roldan, Latrosse, TRTF, Taichi, Noregin, and IVF are collectively referred to throughout this Complaint as the "IV Holding Companies."

**Defendants' Activities in California**

25.    Defendants Intellectual Ventures and IV Management were founded in 1999 and 2000, respectively, by Nathan Myhrvold, Edward Jung, Peter Detkin and Greg Gorder.  Defendants Intellectual Ventures and IV Management have the same directors and management and otherwise appear to operate as a single entity.

26.    In a recent complaint filed with the U.S. International Trade Commission, IV Management stated that it "oversees the entire family of companies known in the industry . . . as

FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

1    'Intellectual Ventures.'"  Certain Dynamic Random Access Memory and NAND Flash Memory

2    Devices and Products Containing Same, Inv. No. 337-TA-__, USITC Docket No. 2829 (July 12,

3    2011), ¶ 7.

4         27.    Together Intellectual Ventures and IV Management make up what has been called

5    one of the world's largest patent holding companies.  Intellectual Ventures and IV Management

6    claim to own rights to more than 30,000 patents and intellectual property assets, which they

7    acquire, group into portfolios, and market to investors through their private IP funds ("IP Funds").

8         28.    Upon information and belief, Intellectual Ventures and IV Management own the IP

9    in their portfolio through a network of holding companies, which Intellectual Ventures and IV

10   Management refer to as their "affiliates."  *See* Defendants' Motion to Dismiss Xilinx's Complaint

11   for Declaratory Judgment, ECF 39 at 3.  Upon information and belief, Defendants Detelle,

12   Roldan, Latrosse, TRTF, Taichi, Noregin, and IVF are seven such affiliates or holding

13   companies.

14        29.    Intellectual Ventures and/or IV Management maintain an office and employees

15   within this District.  Upon information and belief, Mr. Joe Chernesky, a Vice President and

16   General Manager of Intellectual Ventures and IV Management's Hardware Intellectual Property

17   group, and Mr. Mark Wilson, a Licensing Executive, both work at Intellectual Ventures and IV

18   Management's Silicon Valley office.

19        30.    In 2004, Xilinx was approached by representatives from Intellectual Ventures and/or

20   IV Management about becoming an investor in one of their IP Funds, Intellectual Ventures Fund

21   I ("Fund I").  During the course of the negotiations, representatives from Intellectual Ventures

22   and/or IV Management, including Peter Detkin and/or Gregory Gorder, communicated with

23   Xilinx by email and telephone, and attended in-person meetings with Xilinx in California.

24        31.    In 2005, following extensive negotiations, Xilinx and various companies related to

25   Intellectual Ventures and IV Management executed several agreements pursuant to which Xilinx

26   became a limited partner of Fund I.  Xilinx's representatives executed the agreements in San Jose,

27   California on behalf of Xilinx.

28        32.    In 2008, after several months of negotiations, again initiated by representatives from

FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

1    Intellectual Ventures and/or IV Management, Xilinx became a non-managing member of

2    Intellectual Ventures Fund II ("Fund II").

3        33.    Also in 2008, Defendants Intellectual Ventures and/or IV Management, and their

4    affiliate Fund I, issued acquisition notices informing Xilinx that Fund I acquired an interest in the

5    '251, and '331 patents.

6        34.    In 2009, Defendants Intellectual Ventures and/or IV Management, and their affiliate

7    Fund II, issued an acquisition notice informing Xilinx that Fund II acquired an interest in the '497

8    and '736 patents

9        35.    In 2010, Defendants Intellectual Ventures and/or IV Management, and their affiliate

10   Fund II, issued acquisition notices informing Xilinx that Fund II acquired an interest in the '061,

11   '165, and '350 patents.

12       36.    In or about the summer of 2010, representatives from Intellectual Ventures and/or

13   IV Management contacted Xilinx to request Xilinx make additional investments in the Funds and

14   take licenses to certain patent portfolios belonging to the Funds which together contained over

15   500 patents. Representatives from Intellectual Ventures and/or IV Management refused to even

16   consider granting Xilinx licenses to individual patents, and Xilinx declined to pay for licenses to

17   the portfolios.

18       37.    In December 2010, representatives from Intellectual Ventures and/or IV

19   Management again began to pressure Xilinx into making additional investments in Fund I and

20   Fund II. As part of its campaign, representatives from Intellectual Ventures and/or IV

21   Management, including Mr. Chernesky, sent Xilinx emails and met with Xilinx in person at

22   Xilinx's headquarters in San Jose and at Xilinx's counsel's offices in Palo Alto.

23       38.    In an email dated December 7, 2010, Mr. Chernesky identified 16 patents (including

24   the Asserted Patents) that representatives from Intellectual Ventures and/or IV Management claim

25   are infringed by Xilinx products. Shortly thereafter, representatives from Intellectual Ventures

26   and/or IV Management provided Xilinx with claim charts that are identified as having been

27   prepared by Intellectual Ventures and/or IV Management, and that purport to map Xilinx's

28   Accused Products with claim terms of some of the Asserted Patents, including the '251, '736,

FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

1    '165, '331, '350, and '497 patents.  The cover sheet for each of the claim charts prominently

2    displayed the Intellectual Ventures' logo used by IV Management, included a copyright notice to

3    "Intellectual Ventures Management, LLC (IV)," and that purport to map claim terms of the

4    Asserted Patents on Xilinx's Accused Products.

5            39.    None of the claim charts indicate that the charted patent was owned or was being

6    asserted by any other party, including any of the IV Holding Companies.  On information and

7    belief, the claim charts were prepared by representatives from Intellectual Ventures and/or IV

8    Management and provided to Xilinx. On information and belief, by accusing Xilinx of infringing

9    the Asserted Patents and demanding that Xilinx enter into a license to various patent portfolios,

10   representatives from Intellectual Ventures and/or IV Management were acting as though they had

11   the right to enforce the Asserted Patents against Xilinx.  On information and belief the

12   representatives of Intellectual Ventures and/or IV Management were acting as agents of the IV

13   Holding Companies, or were otherwise acting on behalf of the IV Holding Companies as the

14   owners of the Asserted Patents.

15                                    **FIRST COUNT**

16                **(Declaratory Judgment of Non-Infringement of the '251 Patent)**

17                              **(Against Defendant Detelle)**

18           40.    The allegations contained in paragraphs 1 through 39 are incorporated by reference

19   as if fully set herein.

20           41.    Defendant Detelle is the assignee of record with the USPTO of the '251 patent.

21   Upon information and belief, Detelle is the owner and assignee of all rights, title, and interest in

22   and under the '251 patent.

23           42.    Representatives from Defendants Intellectual Ventures and/or IV Management,

24   acting on behalf of and as the agent for Detelle, have accused Xilinx of infringing at least Claim 1

25   of the '251 patent through its manufacture, sale, offering for sale, use, and/or importation of

26   certain integrated circuits allegedly containing an ARM dual-core Cortex™A9 MPCore

27   Processor, and have asserted that Xilinx must take a license to the '251 patent to lawfully

28

FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

1    continue the manufacture, sale, offering for sale, use, and/or importation of such integrated

2    circuits.

3        43.    Xilinx has informed Defendants that Xilinx contends it has the right to engage in the

4    manufacture, sale, offering for sale, use, and/or importation of these integrated circuits without a

5    license to the '251 patent.

6        44.    Under all the circumstances in this dispute, Defendants have, at a minimum, created

7    a substantial, immediate, and real controversy between the parties as to the non-infringement of

8    the '251 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and

9    Defendants within the meaning of 28 U.S.C. § 2201.

10       45.    Upon information and belief, Xilinx has not directly or indirectly infringed any valid

11   and enforceable claim of the '251 patent, either literally or under the doctrine of equivalents

12   because none of its integrated circuits, including those Xilinx integrated circuits allegedly

13   containing an ARM dual-core Cortex™A9 MPCore Processor, including at least Xilinx's 28 nm

14   programmable logic products such as the 7 Series FPGAs, practice Claim 1 or any valid claim of

15   the '251 patent.

16       46.    A judicial declaration of non-infringement of the '251 patent is necessary and

17   appropriate in order to resolve this controversy.

18   <center>**SECOND COUNT**</center>

19   <center>**(Declaratory Judgment of Invalidity of the '251 Patent)**</center>

20   <center>**(Against Defendant Detelle)**</center>

21       47.    The allegations contained in paragraphs 1 through 46 are incorporated by reference

22   as if fully set herein.

23       48.    Under all the circumstances in this dispute, Defendants have, at a minimum, created

24   a substantial, immediate, and real controversy between the parties as to the invalidity of the '251

25   patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants

26   within the meaning of 28 U.S.C. § 2201.

27

28

49.    Upon information and belief, the '251 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, at least 35 U.S.C. §§ 102, 103, and/or 112.

50.    At least Claims 1-11 of the '251 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '251 patent, including but not limited to U.S. Patent No. 4,774,688, and the Signetics, 68000 16-/32-Bit Microprocessor publication.  Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '251 patent would not have issued.

51.    The USPTO has already determined that these references raise a substantial new question of patentability of the '251 patent and has issued an Office Action rejecting all claims of the patent.

52.    At least Claims 1-11 of the '251 patent are not sufficiently enabled because the specification does not "contain a written description of the invention, and the manner and process of making and using it . . . to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same," as required by 35 U.S.C. § 112. One such example of a non-enabled claim limitation is "multiplication and division operations."

53.    Xilinx will provide additional and more detailed invalidity contentions as required by Patent Local Rules 3-3 and 3-5 in the time period prescribed by those Rules, or as otherwise ordered by the Court.

54.    A judicial declaration of invalidity of the '251 patent is necessary and appropriate in order to resolve this controversy.

## THIRD COUNT

### (Declaratory Judgment of Non-Infringement of the '736 Patent)

### (Against Defendant Roldan)

55.    The allegations contained in paragraphs 1 through 54 are incorporated by reference as if fully set herein.

1    56.    Defendant Roldan is the assignee of record with the USPTO of the '736 patent.

2  Upon information and belief, Roldan is the owner and assignee of all rights, title, and interest in

3  and under the '736 patent.

4    57.    Representatives from Defendants Intellectual Ventures and/or IV Management,

5  acting on behalf of and as the agent for Roldan, have accused Xilinx of infringing at least Claim 1

6  of the '736 patent through its manufacture, sale, offering for sale, use, and/or importation of

7  certain integrated circuits, including Xilinx's Spartan-6 FPGAs, and have asserted that Xilinx

8  must take a license to the '736 patent to lawfully continue the manufacture, sale, offering for sale,

9  use, and/or importation of such integrated circuits.

10    58.    Xilinx has informed Defendants that Xilinx contends it has the right to engage in the

11  manufacture, sale, offering for sale, use, and/or importation of these integrated circuits without a

12  license to the '736 patent.

13    59.    Under all the circumstances in this dispute, Defendants have, at a minimum, created

14  a substantial, immediate, and real controversy between the parties as to the non-infringement of

15  the '736 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and

16  Defendants within the meaning of 28 U.S.C. § 2201.

17    60.    Upon information and belief, Xilinx has not directly or indirectly infringed any valid

18  and enforceable claim of the '736 patent, either literally or under the doctrine of equivalents

19  because none of its integrated circuits, including Xilinx's Spartan-6 FPGAs, practice Claim 1 or

20  any valid claim of the '736 patent.

21    61.    A judicial declaration of non-infringement of the '736 patent is necessary and

22  appropriate in order to resolve this controversy.

23                              **FOURTH COUNT**

24                    **(Declaratory Judgment of Invalidity of the '736 Patent)**

25                              **(Against Defendant Roldan)**

26    62.    The allegations contained in paragraphs 1 through 61 are incorporated by reference

27  as if fully set herein.

28

FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

63. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '736 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

64. Upon information and belief, the '736 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, at least 35 U.S.C. §§ 102, 103, and/or 112.

65. At least Claims 1-8 of the '736 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '736 patent, including but not limited to U.S. Patent Nos. 4,947,357 and 5,748,497; the European Patent Application 0578386A2, 1/12/1994, L. Whetsel, Int. Cl. G06F 13/40; and the publication J. Hirst et al., "Infinite Versions Of Some Problems From Finite Complexity Theory," Cornell University Library, March 10, 1995. Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '736 patent would not have issued.

66. The USPTO has already determined that these references raise substantial new questions of patentability of the '736 patent.

67. At least Claims 1-8 of the '736 patent are not sufficiently definite to "distinctly claim[] the subject matter which the applicant regards as his invention," as required by 35 U.S.C. § 112. One such example of a claim limitation that is indefinite under § 112 is "an identifier."

68. Xilinx will provide additional and more detailed invalidity contentions as required by Patent Local Rules 3-3 and 3-5 in the time period prescribed by those Rules, or as otherwise ordered by the Court.

69. A judicial declaration of invalidity of the '736 patent is necessary and appropriate in order to resolve this controversy.

## FIFTH COUNT

### (Declaratory Judgment of Non-Infringement of the '165 Patent)

### (Against Defendant Latrosse)

70.    The allegations contained in paragraphs 1 through 69 are incorporated by reference as if fully set herein.

71.    Defendant Latrosse is the assignee of record with the USPTO of the '165 patent. Upon information and belief, Latrosse is the owner and assignee of all rights, title, and interest in and under the '165 patent.

72.    Representatives from Defendants Intellectual Ventures and/or IV Management, acting on behalf of and as the agent for Latrosse, have accused Xilinx of infringing at least Claim 1 of the '165 patent through its manufacture, sale, offering for sale, use, and/or importation of certain integrated circuits, including the Xilinx Virtex-5 ML50x evaluation platforms, and have asserted that Xilinx must take a license to the '165 patent to lawfully continue the manufacture, sale, offering for sale, use, and/or importation of such evaluation platforms.

73.    Xilinx has informed Defendants that Xilinx contends it has the right to engage in the manufacture, sale, offering for sale, use, and/or importation of these evaluation platforms without a license to the '165 patent.

74.    Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of the '165 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

75.    Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '165 patent, either literally or under the doctrine of equivalents because none of its evaluation platforms, including the Xilinx Virtex-5 ML50x evaluation platforms, practice Claim 1 or any valid claim of the '165 patent.

76.    A judicial declaration of non-infringement of the '165 patent is necessary and appropriate in order to resolve this controversy.

# SIXTH COUNT

## (Declaratory Judgment of Invalidity of the '165 Patent)

## (Against Defendant Latrosse)

77.    The allegations contained in paragraphs 1 through 76 are incorporated by reference as if fully set herein.

78.    Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '165 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

79.    Upon information and belief, the '165 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, at least 35 U.S.C. §§ 102, 103, and/or 112.

80.    At least Claims 1-11 of the '165 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '165 patent, including but not limited to U.S. Patent Nos. 5,859,878; 5,559,450; 5,815,415; and 5,784,648.  Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '165 patent would not have issued.

81.    The USPTO has already determined that these references raise a substantial new question of patentability of the '165 patent.

82.    At least Claims 1-9 of the '165 patent are not sufficiently definite to "distinctly claim[] the subject matter which the applicant regards as his invention," as required by 35 U.S.C. § 112.  One such example of a claim limitation that is indefinite under § 112 is "independently of the real-time control of the external device."

83.    Xilinx will provide additional and more detailed invalidity contentions as required by Patent Local Rules 3-3 and 3-5 in the time period prescribed by those Rules, or as otherwise ordered by the Court.

84.    A judicial declaration of invalidity of the '165 patent is necessary and appropriate in order to resolve this controversy.

**SEVENTH COUNT**

**(Declaratory Judgment of Non-Infringement of the '331 Patent)**

**(Against Defendant TRTF)**

85.    The allegations contained in paragraphs 1 through 84 are incorporated by reference as if fully set herein.

86.    Defendant TRTF is the assignee of record with the USPTO of the '331 patent.  Upon information and belief, TRTF is the owner and assignee of all rights, title, and interest in and under the '331 patent.

87.    Representatives from Defendants Intellectual Ventures and/or IV Management, acting on behalf of and as the agent for TRTF, have accused Xilinx of infringing at least Claim 21 of the '331 patent through its manufacture, sale, offering for sale, use, and/or importation of certain integrated circuits allegedly containing an ARM dual-core Cortex™A9 MPCore Processor, and have asserted that Xilinx must take a license to the '331 patent to lawfully continue the manufacture, sale, offering for sale, use, and/or importation of such integrated circuits.

88.    Xilinx has informed Defendants that Xilinx contends it has the right to engage in the manufacture, sale, offering for sale, use, and/or importation of these integrated circuits without a license to the '331 patent.

89.    Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of the '331 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

90.    Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '331 patent, either literally or under the doctrine of equivalents because none of its integrated circuits allegedly containing an ARM dual-core Cortex™A9 MPCore Processor, including at least Xilinx's 28 nm programmable logic products such as the 7 Series FPGAs practice Claim 21 or any valid claim of the '331 patent.

1      91.    A judicial declaration of non-infringement of the '331 patent is necessary and

2      appropriate in order to resolve this controversy.

3                                     **EIGHTH COUNT**

4                    **(Declaratory Judgment of Invalidity of the '331 Patent)**

5                                **(Against Defendant TRTF)**

6      92.    The allegations contained in paragraphs 1 through 91 are incorporated by reference

7      as if fully set herein.

8      93.    Under all the circumstances in this dispute, Defendants have, at a minimum, created

9      a substantial, immediate, and real controversy between the parties as to the invalidity of the '331

10     patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants

11     within the meaning of 28 U.S.C. § 2201.

12     94.    Upon information and belief, the '331 patent is invalid because of its failure to

13     comply with one or more of the requirements of the patent laws of the United States, including,

14     without limitation, at least 35 U.S.C. §§ 102, 103, and/or 112.

15     95.    At least Claims 1-5, 11-15, and 19-22 of the '331 patent are invalid as anticipated

16     and/or obvious over multiple prior art references that were not before the patent examiner during

17     the prosecution of the '331 patent, including but not limited to U.S. Patent Nos. 5,996,092 and

18     5,361,348, and the IBM PowerPC 403GA User's Manual, Second Edition, published March

19     1995.  Had the patent examiner known or been made aware of these prior art references, the

20     claims would not have been allowed and the '331 patent would not have issued.

21     96.    The USPTO has already determined that these references raise a substantial new

22     question of patentability of the '331 patent, and has issued an Office Action rejecting Claims 1-5,

23     11-15, and 19-22 of the '331 patent.

24     97.    At least Claims 1-22 of the '331 patent are not sufficiently definite to "distinctly

25     claim[] the subject matter which the applicant regards as his invention," as required by 35 U.S.C.

26     § 112.  One such example of a claim limitation that is indefinite under § 112 is "cause register

27     means."

28

98.    Xilinx will provide additional and more detailed invalidity contentions as required by Patent Local Rules 3-3 and 3-5 in the time period prescribed by those Rules, or as otherwise ordered by the Court.

99.    A judicial declaration of invalidity of the '331 patent is necessary and appropriate in order to resolve this controversy.

### NINTH COUNT

### (Declaratory Judgment of Non-Infringement of the '350 Patent)

### (Against Defendant Taichi)

100.  The allegations contained in paragraphs 1 through 99 are incorporated by reference as if fully set herein.

101.  Defendant Taichi is the assignee of record with the USPTO of the '350 patent. Upon information and belief, Taichi is the owner and assignee of all rights, title, and interest in and under the '350 patent.

102.  Representatives from Defendants Intellectual Ventures and/or IV Management, acting on behalf of and as the agent for Taichi, have accused Xilinx of infringing at least Claim 1 of the '350 patent through its manufacture, sale, offering for sale, use, and/or importation of certain integrated circuits, including Xilinx FPGA products assembled in a flip-chip BGA package, and have asserted that Xilinx must take a license to the '350 patent to lawfully continue the manufacture, sale, offering for sale, use, and/or importation of such integrated circuits.

103.  Xilinx has informed Defendants that Xilinx contends it has the right to engage in the manufacture, sale, offering for sale, use, and/or importation of these integrated circuits without a license to the '350 patent.

104.  Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of the '350 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

105.  Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '350 patent, either literally or under the doctrine of equivalents

1    because none of its integrated circuits, including Xilinx FPGA products assembled in a flip-chip

2    BGA package, including at least the Virtex-5 FPGAs, practice Claim 1 or any valid claim of the

3    '350 patent.

4      106. A judicial declaration of non-infringement of the '350 patent is necessary and

5    appropriate in order to resolve this controversy.

6    <div align="center">**TENTH COUNT**</div>

7    <div align="center">**(Declaratory Judgment of Invalidity of the '350 Patent)**</div>

8    <div align="center">**(Against Defendant Taichi)**</div>

9      107. The allegations contained in paragraphs 1 through 106 are incorporated by reference

10   as if fully set herein.

11     108. Under all the circumstances in this dispute, Defendants have, at a minimum, created

12   a substantial, immediate, and real controversy between the parties as to the invalidity of the '350

13   patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants

14   within the meaning of 28 U.S.C. § 2201.

15     109. Upon information and belief, the '350 patent is invalid because of its failure to

16   comply with one or more of the requirements of the patent laws of the United States, including,

17   without limitation, at least 35 U.S.C. §§ 102, 103, and/or 112.

18     110. At least Claims 1-10 of the '350 patent are invalid as anticipated and/or obvious over

19   multiple prior art references that were not before the patent examiner during the prosecution of

20   the '350 patent, including but not limited to U.S. Patent Nos. 7,126,218 ("the '218 patent").  Had

21   the patent examiner known or been made aware of these prior art references, the claims would not

22   have been allowed and the '350 patent would not have issued.

23     111. The USPTO has already determined that the '218  patent reference raises a

24   substantial new question of patentability of the '350 patent and has issued an Office Action

25   rejecting all claims of the patent.

26     112. At least Claims 1-10 of the '350 patent are not sufficiently definite to "distinctly

27   claim[] the subject matter which the applicant regards as his invention," as required by 35 U.S.C.

28   § 112.  One such example of a claim limitation that is indefinite under § 112 is "extending part."

113.  Xilinx will provide additional and more detailed invalidity contentions as required by Patent Local Rules 3-3 and 3-5 in the time period prescribed by those Rules, or as otherwise ordered by the Court.

114.  A judicial declaration of invalidity of the '350 patent is necessary and appropriate in order to resolve this controversy.

### ELEVENTH COUNT

**(Declaratory Judgment of Non-Infringement of the '497 Patent)**

**(Against Defendant Noregin)**

115.  The allegations contained in paragraphs 1 through 114 are incorporated by reference as if fully set herein.

116.  Defendant Noregin is the assignee of record with the USPTO of the '497 patent. Upon information and belief, Noregin is the owner and assignee of all rights, title, and interest in and under the '497 patent.

117.  Representatives from Defendants Intellectual Ventures and/or IV Management, acting on behalf of and as the agent for Noregin, have accused Xilinx of infringing at least Claim 76 of the '497 patent through its manufacture, sale, offering for sale, use, and/or importation of the Xilinx FPGA Editor that allegedly practices methods for applying detail-in-context viewing to online and electronic presentations of viewable media, and have asserted that Xilinx must take a license to the '497 patent to lawfully continue the manufacture, sale, offering for sale, use, and/or importation of the Xilinx FPGA Editor.

118.  Xilinx has informed Defendants that Xilinx contends it has the right to engage in the manufacture, offering for sale, use, and/or importation of the Xilinx FPGA Editor without a license to the '497 patent.

119.  Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of the '497 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

120.  Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '497 patent, either literally or under the doctrine of equivalents because the Xilinx FPGA Editor does not practice Claim 76 or any valid claim of the '497 patent.

121.  A judicial declaration of non-infringement of the '497 patent is necessary and appropriate in order to resolve this controversy.

<div align="center">

**TWELFTH COUNT**

**(Declaratory Judgment of Invalidity of the '497 Patent)**

**(Against Defendant Noregin)**

</div>

122.  The allegations contained in paragraphs 1 through 121 are incorporated by reference as if fully set herein.

123.  Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '497 patent.  A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

124.  Upon information and belief, the '497 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, at least 35 U.S.C. §§ 102, 103, and/or 112.

125.  At least Claims 1-22, 24-50, 52-74, and 76-99 of the '497 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '497 patent, including but not limited to U.S. Patent Nos. 5,630,103; 5,615,384; 6,018,704; 4,821,210; and 6,407,747; and the International Patent Application WO 00/25267, published on May 4, 2000.  Had the patent examiner known or been made aware of these prior art references and others, the claims would not have been allowed and the '497 patent would not have issued.

126.  The USPTO has already determined that these references raise a substantial new question of patentability of the '497 patent, and has issued an Office Action rejecting Claims 1-22, 24-50, 52-74, and 76-99 of the '497 patent.

127.  At least Claims 1-100 of the '497 patent are not sufficiently definite to "distinctly claim[] the subject matter which the applicant regards as his invention," as required by 35 U.S.C. § 112.  One such example of a claim limitation that is indefinite under § 112 is "lens surface."

128.  Xilinx will provide additional and more detailed invalidity contentions as required by Patent Local Rules 3-3 and 3-5 in the time period prescribed by those Rules, or as otherwise ordered by the Court.

129.  A judicial declaration of invalidity of the '497 patent is necessary and appropriate in order to resolve this controversy.

**THIRTEENTH COUNT**

**(Declaratory Judgment of Non-Infringement of the '061 Patent)**

**(Against Defendant IVF)**

130.  The allegations contained in paragraphs 1 through 129 are incorporated by reference as if fully set herein .

131.  Defendant IVF is the assignee of record with the USPTO of the '061 patent.  Upon information and belief, IVF is the owner and assignee of all rights, title, and interest in and under the '061 patent.

132.  Representatives from Defendants Intellectual Ventures and/or IV Management, acting on behalf of and as the agent for IVF, have accused Xilinx of infringing the '061 patent through its manufacture, sale, use, and/or importation of certain integrated circuits that allegedly practice methods for controlling power consumption in a computer processor, including Xilinx's FPGA products, and have asserted that Xilinx must take a license to the '061 patent to lawfully continue the manufacture, sale, use, and/or importation of such integrated circuits.

133.  Xilinx has informed Defendants that Xilinx contends it has the right to engage in the manufacture, sale, use, and/or importation of these integrated circuits without a license to the '061 patent.

134.  Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of

the '061 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

135. Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '061 patent, either literally or under the doctrine of equivalents because none of its integrated circuits, including Xilinx's Spartan-6 FPGAs, practice any valid claim of the '061 patent.

136. Xilinx will provide additional and more detailed invalidity contentions as required by Patent Local Rules 3-3 and 3-5 in the time period prescribed by those Rules, or as otherwise ordered by the Court.

137. A judicial declaration of non-infringement of the '061 patent is necessary and appropriate in order to resolve this controversy.

## FOURTEENTH COUNT

### (Declaratory Judgment of Invalidity of the '061 Patent)

### (Against Defendant IVF)

138. The allegations contained in paragraphs 1 through 137 are incorporated by reference as if fully set herein.

139. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '061 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

140. Upon information and belief, the '061 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, at least 35 U.S.C. §§ 102, 103, and/or 112.

141. At least, Claims 1, 3-15, 17-19, 23, 24, 26, 28-34, 36, 38-40, 42, and 44-68 of the '061 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '061 patent, including but not limited to U.S. Patent Nos. 5,727,193 and 5,761,517. Had the patent examiner known or been made

1   aware of these prior art references and others, the claims would not have been allowed and the

2   '061 patent would not have issued under an *inter partes* reexamination certificate.

3       142.  At least Claims 1, 3-7, 15, 17-19, 23, 24, 26, 28, 29, 39, 40, 42, 44-62, and 64-68 of

4   the '331 patent are not sufficiently definite to "distinctly claim[] the subject matter which the

5   applicant regards as his invention," as required by 35 U.S.C. § 112.  One such example of a claim

6   limitation that is indefinite under § 112 is "said determination made independently of instructions

7   to be executed by the processor."

8       143.  Xilinx will provide additional and more detailed invalidity contentions as required

9   by Patent Local Rules 3-3 and 3-5 in the time period prescribed by those Rules, or as otherwise

10  ordered by the Court.

11      144.  A judicial declaration of invalidity of the '061 patent is necessary and appropriate in

12  order to resolve this controversy.

13                          **FIFTEENTH COUNT**

14              **(California Business and Professions Code § 17200 *et. seq.*)**

15                  **(Against Defendants IV and IV Management)**

16      145.  The allegations contained in paragraphs 1 through 144 are incorporated by reference

17  as if fully set herein.

18      146.  In an effort to coerce Xilinx into making additional investments in Fund I and Fund

19  II, representatives from Intellectual Ventures and/or IV Management represented to Xilinx that

20  they own, have the right to license, and the right to enforce the Asserted Patents.  Specifically, the

21  following are among the misrepresentations made by or on behalf of Intellectual Ventures and/or

22  IV Management by their representatives:

23      147.  In email correspondence and telephone discussions with Xilinx, Intellectual

24  Ventures' and/or IV Management's representatives, including Mr. Chernesky and Mr. Wilson,

25  referred to the Asserted Patents as "IV's patents."  For example, on February 16, 2011, in an

26  email to Mr. Hover-Smoot, Mr. Chernesky reminded Mr. Hover-Smoot that IV sent Xilinx the

27  "list of patents IV had acquired that we believe Xilinx should re-consider electing into."  In that

28  same email, Mr. Chernesky also referred to the Asserted Patents as "IV patents."

148.  In or about December 2010, Intellectual Ventures and/or IV Management's representatives provided Xilinx's General Counsel Scott Hover-Smoot with claim charts that were identified as having been prepared by representatives from Intellectual Ventures and/or IV Management, included a copyright notice to "Intellectual Ventures Management, LLC (IV)," and that purport to map claim terms of the Asserted Patents on Xilinx's Accused Products.

149.  On or about December 9, 2010, representatives from Intellectual Ventures and/or IV Management, stated to Mr. Hover-Smoot in an email that "I wanted to be the first to let you know that IV has taken action to enforce our invention rights.  We have filed complaints against nine companies for violating our patents, including three companies operating in the FPGA/PLD marketplace," further implying that Intellectual Ventures and/or IV management has the right or power to assert some or all of the patents in the various portfolios against parties such as Xilinx if Xilinx fails to agree to obtaining a license to the entire portfolio of patents for Millions of Dollars.

150.  Between December 2010 and February 2011, Mr. Chernesky, on behalf of Intellectual Ventures and/or IV Management, communicated with Mr. Hover-Smoot and Mr. Justin Liu, Xilinx's IP Counsel, via email, telephone and at in-person meetings, to discuss Xilinx's further investment into the Funds and to pressure Xilinx to take licenses to certain patent portfolios belonging to the Funds, including the Asserted Patents.  By virtue of engaging in licensing negotiations with Xilinx, representatives from Intellectual Ventures and/or IV Management implied they had the right to license and enforce the Asserted Patents.

151.  At a meeting on or about February 14, 2011, representatives from Intellectual Ventures and/or IV Management, including Mr. Chernesky, demanded Xilinx pay millions of dollars to license several portfolios of patents including the portfolios containing the Asserted Patents.

152.  At no time did Mr. Chernesky or any representative from Intellectual Ventures and/or IV Management inform Xilinx that Intellectual Ventures and/or IV Management did not own the Asserted Patents or possess the right to bring a suit for infringement.  It was only during the course of this litigation and, in an effort to avoid the jurisdiction of this Court, that Intellectual

1   Ventures and/or IV Management have taken a contrary position.  *See* Chernesky Decl. in Support

2   of Defs' Reply Brief, ¶ 5, filed July 20, 2011, ECF No. 81-1 (filed under seal).

3          153.  Despite having asserted the Asserted Patents against Xilinx during on-going

4   negotiations, representatives from Intellectual Ventures and/or IV Management took a  contrary

5   position (that is, that it has no right to assert the patents against Xilinx) during this litigation and

6   further asserted that Xilinx's claims must be dismissed because Xilinx failed to sue the real

7   owners of the patents, the IV Holding Companies.

8          154.  As a direct result of the misrepresentations from Intellectual Ventures and/or IV

9   Management's representatives, Xilinx was forced to expend time and resources litigating these

10  jurisdictional issues, incurring legal fees, and suffering injury.

11         155.  Moreover, as a direct result of the misrepresentations from Intellectual Ventures

12  and/or IV Management's representatives, Xilinx was forced to dedicate resources to investigating

13  the allegations related to the Asserted Patents and engaging in negotiations with the

14  representatives of Intellectual Ventures and/or IV Management.  Had representatives from

15  Defendants informed Xilinx that Intellectual Ventures and/or IV Management had no rights to

16  enforce the Asserted Patents, Xilinx would not have expended the time and resources to

17  investigate the claims or to negotiate for a possible license.

18         156.  Upon information and belief, at the time representatives from Intellectual Ventures

19  and/or IV Management made the above misrepresentations, they were aware that they did not

20  own, have the right to license, or have the right to enforce the Asserted Patents.

21         157.  Upon information and belief, at the time these misrepresentations were made,

22  Intellectual Ventures and/or IV Management's representatives knew or reasonably should have

23  known that they were false, but either actively concealed and suppressed the truth from Xilinx or

24  disregarded their falsity.

25         158.  Representatives from Intellectual Ventures and/or IV Management made these

26  misrepresentations with the intent to deceive Xilinx and induce Xilinx into making further

27  investments in the Funds for the benefit of Intellectual Ventures and/or IV Management.  Xilinx

28

1    justifiably relied on Intellectual Ventures and/or IV Management's representatives'

2    misrepresentations.

3            159.  Xilinx reasonably relied upon these misrepresentations and, as a result of the

4    fraudulent misrepresentations, active concealment, and suppression of the truth made by

5    representatives from Intellectual Ventures and/or IV Management, Xilinx has been damaged in an

6    amount to be proven at trial.

7            160.  California Business and Professions Code Section 17200 prohibits acts, which

8    constitute "unlawful, unfair or fraudulent business practice[s]."  The above-described actions of

9    representatives from Defendants Intellectual Ventures and/or IV Management constitute unfair

10   business acts or practices within the meaning of California Business and Professions Code

11   Section 17200, *et seq*.

12           161.  Defendants Intellectual Ventures and/or IV Management should be ordered to

13   account for all monies received from such unfair activities and disgorge any ill-gotten gains

14   incurred as a result of its unfair business practices.  Defendants Intellectual Ventures and/or IV

15   Management should also be permanently enjoined from continuing their violations of California

16   Business and Professions Code section 17200.

17                                    **PRAYER FOR RELIEF**

18           WHEREFORE, Xilinx requests that the Court enter judgment in its favor and against,

19   Intellectual Ventures LLC, Intellectual Ventures Management LLC, Detelle Relay KG, LLC,

20   Roldan Block NY, LLC, Latrosse Technologies, LLC, TR Technologies Foundation LLC, Taichi

21   Holdings, LLC, Noregin Assets N.V., LLC, and Intellectual Venture Funding LLC, and requests

22   the following relief:

23                   (A)     An adjudication that the '251, '736, '165, '331, '350, '497, and '061

24                           patents (collectively, the "Asserted Patents") are not infringed by Xilinx's

25                           importation, use, offer for sale, and/or sale in the United States of the

26                           Accused Products, including the Spartan-6 FPGAs, the Virtex-5 ML50x

27                           evaluation platforms, the Virtex-5 FPGAs, the Xilinx FPGA Editor, and

28

FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

1   the 28 nm programmable logic products containing an ARM dual-core

2   Cortex™A9 MPCore Processor such as the 7 Series FPGAs;

3   (B)   An adjudication that the Asserted Patents are invalid;

4   (C)   An order requiring Intellectual Ventures and IV Management to account

5         for all monies received from its activities enforcing the Asserted Patents in

6         violation of California Business and Professions Code Section 17200;

7   (D)   An order requiring Intellectual Ventures and IV Management to disgorge

8         any ill-gotten gains incurred as a result of its activities enforcing the

9         Asserted Patents in violation of California Business and Professions Code

10        Section 17200;

11  (E)   An adjudication in favor of Xilinx on each of Xilinx's claims;

12  (F)   An adjudication that this is an exceptional case, and an award of Xilinx's

13        costs and attorneys' fees by Defendants pursuant to 35 U.S.C. § 285 or

14        otherwise;

15  (G)   An adjudication that the Defendants are not entitled to any damages, an

16        injunction, or any other relief; and

17  (H)   Such other relief as this Court deems just and proper.

18  **DEMAND FOR JURY TRIAL**

19  Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California

20  Local Rule 3-6(a), Plaintiff respectfully requests a jury trial on all issues triable thereby.

21

22  Dated:  October 17, 2011                Respectfully submitted,

23

24                                          JONES DAY

25                                          By:  /S/ Behrooz Shariati

26                                          Behrooz Shariati

27                                          Attorneys for Xilinx, Inc.

SVI-98472v3

28