BLACK CHANG & HAMILL LLP
Bradford J. Black (SBN 252031)
bblack@bchllp.com
Peter H. Chang (SBN 241467)
pchang@bchllp.com
Andrew G. Hamill (SBN 251156)
ahamill@bchllp.com
333 Bush Street, Suite 2250
San Francisco, California 94105
Telephone:  415-813-6210
Facsimile:  415-813-6222

DESMARAIS LLP
John M. Desmarais (admitted *pro hac vice*)
jdesmarais@desmaraisllp.com
Michael P. Stadnick (admitted *pro hac vice*)
mstadnick@desmaraisllp.com
Ameet A. Modi (admitted *pro hac vice*)
amodi@desmaraisllp.com
230 Park Avenue
New York, NY 10169
Telephone:  212-351-3400
Facsimile:  212-351-3401

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| XILINX, INC.,<br><br>     Plaintiff,<br><br>  v.<br><br>INTELLECTUAL VENTURES, LLC,<br>INTELLECTUAL VENTURES<br>MANAGEMENT, LLC,<br>DETELLE RELAY KG, LLC,<br>ROLDAN BLOCK NY, LLC,<br>LATROSSE TECHNOLOGIES, LLC,<br>TR TECHNOLOGIES FOUNDATION LLC,<br>TAICHI HOLDINGS, LLC,<br>NOREGIN ASSETS N.V., LLC, and<br>INTELLECTUAL VENTURE FUNDING<br>LLC,<br><br>     Defendants. | **Case No. 11-cv-04407-SI**<br><br>**DEFENDANTS' MOTION TO<br>DISMISS XILINX'S FIRST<br>AMENDED COMPLAINT**<br><br>Date:  January 20, 2012<br>Time:  9:00 am<br>Judge:  Hon. Susan Illston<br>Courtroom 10, 19th Floor |

## <u>TABLE OF CONTENTS</u>

I.      NATURE AND STAGE OF THE PROCEEDINGS ............................... 1

II.     INTRODUCTION ................................................................. 2

III.    FACTUAL BACKGROUND ..................................................... 4

IV.     ARGUMENT .................................................................... 8

    A.  Xilinx's Non-Infringement Claims Concerning The '251, '331, And '061 Patents Should Be Dismissed Because The First Amended Complaint Presents No Definite And Concrete Controversy Of Sufficient Immediacy And Reality To Sustain Declaratory Judgment Jurisdiction..................... 8

        1.  Xilinx Fails To Plead A Real, Immediate Case Or Controversy With Respect To Its Non-Infringement Claims Concerning The '251 And '331 Patents.......................................................... 9

        2.  Xilinx Fails To Plead A Real, Immediate Controversy With Respect To Its '061 Patent Non-Infringement Claim............................. 12

    B.  Xilinx's Declaratory Judgment Claims Concerning Invalidity Fail Because No Declaratory Judgment Jurisdiction Exists Over Its Non-Infringement Claims For The '251, '331, And '061 Patents. ......................... 13

    C.  Xilinx's Declaratory Judgment Claims Should Be Dismissed For Lack Of Declaratory Judgment Jurisdiction And Failure To State A Claim To The Extent That They Seek Declaratory Relief Broader Than The Scope Of The Controversy. .................................................................. 13

    D.  Xilinx's Claim Under California Business And Professions Code § 17200 ("UCL") Should Be Dismissed Because Xilinx Fails To State A Plausible Right To Relief Under The UCL's Substantive Prongs And Lacks Standing Under The Statute. .............................................................. 14

        1.  Xilinx's UCL Claim Should Be Dismissed Because The First Amended Complaint Fails To Allege A Plausible Claim Under Any Of The Statute's Substantive Prongs. ....................................... 15

            a.  Xilinx Fails To Allege A Plausible Claim Under The "Unlawful" Prong Of The UCL. ................................... 17

            b.  Xilinx Fails To Allege A Plausible Claim Under The "Unfair" Prong Of The UCL. ......................................... 18

            c.  Xilinx Fails To Allege A Plausible Claim Under The "Fraudulent" Prong Of The UCL. ................................ 20

        2.  Xilinx Lacks Standing To Bring A Claim Under The UCL Because The Complaint Does Not, And Cannot, Allege Any Injury-in-Fact Or Loss Of Money Or Property Caused By Defendants. .................. 23

V.      CONCLUSION.................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Aralac, Inc. v. Hat Corp. of Am.,*
    166 F.2d 286 (3d Cir. 1948) ................................................................ 13

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009) .......................................................... 15, 16, 21, 22

*Ass'n for Molecular Pathology v. United States PTO,*
    653 F.3d 1329 (Fed. Cir. 2011) ............................................................ 9

*Baba v. Hewlett-Packard Co.,*
    No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ............... 17, 18, 21, 22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................. 15, 21, 22

*Bender v. Motorola, Inc.,*
    No. C 09-1245 SBA, 2010 WL 726739 (N.D. Cal. Feb. 26, 2010) .................... 14

*Benitec Australia, Ltd. v. Nucleonics, Inc.,*
    495 F.3d 1340 (Fed. Cir. 2007) .......................................................... 9, 10

*Buckland v. Threshold Enterprises, Ltd.,*
    66 Cal. Rptr. 3d 543 (Cal. Ct. App. 2007) ............................................... 24

*Cel-Tech Commn's, Inc. v. Los Angeles Cellular Telephone Co.,*
    973 P.2d 527 (Cal. 1999) ............................................................... 16, 18

*Creative Compounds, LLC v. Starmark Labs.,*
    651 F.3d 1303 (Fed. Cir. 2011) .......................................................... 13

*Dipaola v. JPMorgan Chase Bank,*
    No. C 11-2605 SI, 2011 WL 3501756 (N.D. Cal. Aug. 10, 2011) ..................... 15, 24

*Farmers Ins. Exch. v. Super. Court,*
    826 P.2d 730 (Cal. 1992) ............................................................... 17

*Ferrington v. McAfee, Inc.,*
    No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ................... 19

*Girafa.com, Inc. v. Alexa Internet, Inc.,*
    No. C-08-02745 RMW, 2008 WL 4500858 (N.D. Cal. Oct. 6, 2008) .................. 19, 20

*In re Acacia Media Techs. Corp.,*
    No. C 05-01114 JW, 2005 WL 1683660 (N.D. Cal. July 19, 2005) ................... 19

*In re Gilead Scis. Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008) .......................................................... 16

*In re Tobacco II Cases,*
    207 P.3d 20 (Cal. 2009) ............................................................................... 16

*Kwikset Corp. v. Super. Ct. of Orange Cnty.,*
    246 P.3d 877 (Cal. 2011) ................................................................. 16, 20, 21

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ................................................................................ 9, 14

*Motors, Inc. v. Times Mirror Co.,*
    102 Cal. App. 3d 735 (Cal. Ct. App. 1980) ................................................ 18

*People v. Casa Blanca Convalescent Homes, Inc.,*
    159 Cal. App. 3d 509 (Cal. Ct. App. 1984) ................................................ 18

*Prasco, LLC v. Medicis Pharm. Corp.,*
    537 F.3d 1329 (Fed. Cir. 2008) ............................................................. 9, 12

*Propat Int'l Corp. v. RPost, Inc.,*
    473 F.3d 1187 (Fed. Cir. 2007) .................................................................. 16

*Sharper Image Corp. v. Honeywell Int'l, Inc.,*
    No. C 02-4860 CW, 2005 WL 2176903 (N.D. Cal. Aug. 31, 2005) ........... 11

*Sierra Applied Scis., Inc. v. Advanced Energy Indus.,*
    363 F.3d 1361 (Fed. Cir. 2004) .................................................................. 11

*Trend Micro Corp. v. WhiteCell Software, Inc.,*
    No. C 10-02248-WHA, 2011 WL 499951 (N.D. Cal. Feb. 8, 2011) ............. 9

*Trentacosta v. Frontier Pacific Aircraft Industries, Inc.,*
    813 F.2d 1553 (9th Cir. 1987) .................................................................... 11

*Usher v. City of Los Angeles,*
    828 F.2d 556 (9th Cir. 1987) ...................................................................... 16

*Zero Motorcycles, Inc. v. Pirelli Tyre S.P.A.,*
    No. C 10-01290 SBA, 2011 WL 2844397 (N.D. Cal. July 18, 2011) ........ 17, 19, 21

**Statutes**

28 U.S.C. § 2201(a) ............................................................................................ 8

CAL. BUS. & PROF. CODE § 17200 ..................................................................... 16

CAL. BUS. & PROF. CODE § 17204, as amended by Prop. 64 ......................... 20, 23

1    PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 12 and

2    Civil L.R. 7-2, Defendants Intellectual Ventures, LLC ("IV LLC"), Intellectual Ventures

3    Management, LLC ("IV Management"), Detelle Relay KG, LLC, Roldan Block NY, LLC,

4    Latrosse Technologies, LLC, TR Technologies Foundation LLC, Taichi Holdings, LLC,

5    Noregin Assets N.V., LLC, and Intellectual Venture Funding LLC (collectively,

6    "Defendants") respectfully move the Court to dismiss Plaintiff Xilinx, Inc.'s First Amended

7    Complaint (D.I. 29) in Case No. 3:11-cv-04407-SI.  This motion will be heard on January 20,

8    2012, at 9:00 am, or as soon thereafter as the matter can be heard by the Honorable Susan

9    Illston in Courtroom 10, 19th Floor of the above-titled Court.  Defendants' motion is further

10   based on the below memorandum of points and authorities, all pleadings, exhibits and papers

11   on file in this action and the related action pending in this Court (Case No. 3:11-cv-0671-SI),

12   and any other matters properly before the Court.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

14       On February 14, 2011, Plaintiff Xilinx, Inc. ("Xilinx") filed a declaratory judgment

15   complaint in this Court seeking a declaration of non-infringement, invalidity, and lack of

16   standing concerning sixteen patents owned by various affiliates of IV Management.  D.I. 1,

17   *Xilinx, Inc. v. Invention Investment Fund I, L.P., et al.*, Case No. 3:11-cv-0671-SI ("the 671

18   Action").  On July 27, 2011, this Court severed and transferred Xilinx's claims concerning

19   four of those patents to the District of Delaware, dismissed with leave to amend claims

20   concerning five other patents (for failure to state a plausible claim), and dismissed without

21   leave to amend claims concerning the seven remaining patents (for lack of standing due to

22   Xilinx's failure to name as defendants the owners of those patents).  (671 D.I. 86)[1]

23       On August 18, 2011, Xilinx amended its complaint in the 671 Action to reassert

24   claims concerning five patents previously dismissed with leave to amend.  (671 D.I. 90)  On

25   September 2, 2011, Xilinx initiated a new action against Intellectual Ventures LLC ("IV

26

27   _____

[1] For convenience, citations to pleadings from Case No. 11-cv-0671-SI are preceded by
"671."  Citations to pleadings from Case No. 11-cv-04407-SI are preceded by "4407."

28

1   LLC"), Intellectual Ventures Management, LLC ("IV Management"), and seven affiliates of

2   IV Management, asserting claims previously dismissed from the 671 Action concerning

3   seven patents and adding a new claim under the California Unfair Competition Law.  D.I. 1,

4   *Xilinx, Inc. v. Intellectual Ventures Management, LLC, et al.*, Case No. 3:11-cv-04407-SI

5   ("the 4407 Action").  On October 4, 2011, this Court ordered the 671 and 4407 Actions

6   related.  (671 D.I. 101)

7        Defendants have moved to dismiss Xilinx's Second Amended Complaint in the 671

8   Action.  (671 D.I. 105)  A hearing date of December 2, 2011 has been set for that motion.

9   Defendants hereby move to dismiss Xilinx's First Amended Complaint in the 4407 Action

10  (the "First Amended Complaint").

11                          **II.    INTRODUCTION**

12       On February 14, 2011, Xilinx terminated then-pending patent license negotiations

13  with IV Management and filed a declaratory judgment action concerning sixteen patents

14  previously identified by IV Management in response to a Xilinx request.  Xilinx's defective

15  complaint failed to identify a single product that allegedly did not infringe, pled wholly

16  conclusory invalidity claims, and failed to name as defendants the owners of seven of the

17  patents-in-suit.  (671 D.I. 1)  As a result, this Court dismissed Xilinx's original complaint

18  without leave to amend its claims concerning those seven patents.  (671 D.I. 86)

19       Xilinx initiated the 4407 Action on September 2, 2011, asserting anew claims

20  concerning those seven patents, but this time naming as defendants the patent owners.  (4407

21  D.I. 1)  But Xilinx's original 4407 Complaint still suffered from many of the exact defects as

22  its original Complaint in the 671 Action.  Defendants therefore repeatedly requested that

23  Xilinx voluntarily amend its 4407 Complaint to comply with this Court's order in the 671

24  Action.  On October 17, 2011—the same day as Defendants' deadline to respond to Xilinx's

25  4407 Complaint—Xilinx filed its First Amended Complaint in the 4407 Action.  (4407 D.I.

26  29)  In its First Amended Complaint, Xilinx reasserts claims concerning the same seven

27  patents against the correct owners of those patents and—remarkably—attempts to rely on its

28

1   own prior failure to name the correct defendants to fashion a purported claim under

2   California's Unfair Competition Law ("UCL").

3         To the extent that Xilinx has attempted to correct the lack of specificity in its original

4   4407 Action Complaint, Xilinx's amendments serve only to demonstrate its inability to plead

5   a real and immediate controversy sufficient to support declaratory judgment claims

6   challenging the infringement and validity of at least three patents-in-suit:  U.S. Patent No.

7   5,524,251 (the "'251 patent"), U.S. Patent No. 6,321,331 (the "'331 patent"), and U.S. Patent

8   No. 7,100,061 (the "'061 patent").  With respect to the '061 patent, Xilinx fails to allege—

9   and cannot demonstrate—that any of the Defendants made infringement accusations

10   regarding specific Xilinx products.  As such, discussions between Xilinx and IV

11   Management concerning the '061 patent never progressed to the point where any concrete,

12   immediate dispute arose that would support a declaratory judgment claim.

13         As for the '251 and '331 patents, as already set forth in Defendants' pending motion

14   to dismiss in the 671 Action, licensing executives from Defendant IV Management informed

15   Xilinx that it may need to take a license to those patents if Xilinx *later* decided to incorporate

16   certain third-party technology in future Xilinx products.  But Xilinx pleads no factual

17   allegations suggesting (1) that the ultimate design of those products is substantially final, or

18   (2) that launch of those products is imminent.  Without such allegations, let alone facts to

19   support them, Xilinx falls far short of demonstrating a real and present dispute between the

20   parties sufficient to support declaratory judgment jurisdiction concerning the '251 and '331

21   patents.  Moreover, without demonstrating a controversy sufficient to support declaratory

22   judgment jurisdiction concerning infringement, Xilinx's declaratory judgment claims

23   concerning the validity of the '251, '331, and '061 patents also fail.  Those claims should

24   therefore be dismissed under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

25         Xilinx's purported UCL claim, meanwhile, fails to allege any "unlawful, unfair, or

26   fraudulent" business practice as defined by the UCL and should be dismissed pursuant to

27   Fed. R. Civ. P. 12(b)(6).  For example, a viable claim of "unlawful" activity under the UCL

28

1    must identify some statutory provision that was violated by the defendant's conduct.

2    Allegations of "unfair" conduct must likewise be tethered to some constitutional or statutory

3    provision.  To state a claim for "fraudulent" conduct, a plaintiff must include a plausible

4    allegation that it actually relied on the alleged conduct.  Because Xilinx's First Amended

5    Complaint contains none of these necessary allegations, it fails to state a claim under any

6    substantive theory of liability of the UCL and should be dismissed.

7        Beyond the facial defects in its pleadings, the First Amended Complaint fails to state

8    any substantively *plausible* claim for relief under the UCL.  Xilinx's claim is premised

9    entirely on an allegation that representatives of IV Management, by virtue of participating in

10   patent licensing negotiations, implied that IV Management had the right to enforce those

11   patents through litigation in its own name.  But Xilinx has long known (and even

12   affirmatively pleads) that IV Management offers administrative and licensing support for an

13   array of companies affiliated with IV Management.  There is nothing wrong with that.

14   Moreover, Xilinx's allegation that it "justifiably relied" on, and was injured by, Defendants'

15   representations regarding patent ownership is belied by Xilinx's *own prior pleadings* in this

16   Court, which affirmatively argued that IV Management lacked standing to enforce the

17   patents-in-suit ████████████████████████████████████

18   ████████████████████████████████████  Xilinx's claim

19   should accordingly be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

20                    **III.    FACTUAL BACKGROUND[2]**

21       IV Management was founded in 2000 and today helps to manage a portfolio of over

22   30,000 intellectual property assets owned by affiliated entities.  (4407 D.I. 29 at ¶¶ 25-28;

23   671 D.I. 64 at 3)  As Xilinx has long known, IV Management facilitates licenses to those

24   inventions to investors through licensing and partnership programs, including by providing

25   ───────────────

26   [2] The pertinent facts are taken from Xilinx's First Amended Complaint in this Action (4407
     D.I. 29).  Certain facts are also included for contextual purposes from Xilinx's Opposition To

27   Defendants' Motion to Dismiss in the 671 Action (671 D.I. 64) and Xilinx's Reply in
     Support of Motion To Enjoin (671 D.I. 82).

28

opportunities for investment in two private Funds:  Invention Investment Fund I, L.P. ("Fund I") and Invention Investment Fund II, LLC ("Fund II").  (4407 D.I. 29 at ¶¶ 27, 30-32; 671 D.I. 64 at 3) ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████ IV Management has contracted with the general partner of Fund I and the managing member of Fund II, respectively, to provide administrative and licensing services for Fund I and Fund II.  (Declaration of Ameet A. Modi ("Modi Decl.") at ¶¶ 2-3, Exs. A-B)

Xilinx has "an established, long-term business relationship with IV Management and its affiliates."  (671 D.I. 82 at 2)  In 2005, pursuant to negotiations with representatives from IV Management, Xilinx became a limited partner in Fund I.  (4407 D.I. 29 at ¶ 31) ████

████████████████████████████████████████████████████████████████

████████████████████████████ In 2008, again pursuant to negotiations between Xilinx and representatives of IV Management, Xilinx became a non-managing member of Fund II.  (4407 D.I. 29 at ¶ 32) █████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ Xilinx "remains to this day [] a licensee" of patents owned by affiliates of IV Management.  (*Id.*)

In 2010, two representatives of IV Management—Joe Chernesky and Mark Wilson—approached Xilinx about investing in additional licenses to Fund I and Fund II patents that Xilinx had not already elected to license.  (4407 D.I. 29 at ¶¶ 36-37)  On December 7, 2010, in response to a request from Xilinx's general counsel, and consistent with the parties' established business practices, Mr. Chernesky identified 16 Fund I and Fund II patents that IV Management believed might be of interest to Xilinx.  (*Id.* at ¶ 38)  As discussions with

1  Xilinx progressed throughout early 2011, ███████████████████

2  ████████████████████████████████████████

3  ████████████████████████████████

4  ████████████████████████████████████████

5  ████████████████████████████████████████

6  ████████████████████████████████████████

7  ████████

8    ██████████████████████████████

9  ████████████████████████████████████████

10  ███████████████████████████████████

11  ████████████████  Xilinx's Complaint named six defendants:  Invention

12  Investment Fund I LP, Invention Investment Fund II LLC, Intellectual Ventures LLC ("IV

13  LLC"), Intellectual Ventures Management LLC ("IV Management"), Intellectual Ventures I

14  LLC ("IV-I"), and Intellectual Ventures II LLC ("IV-II").  (671 D.I. 1)  In addition to

15  declaratory judgment claims for non-infringement and invalidity of the sixteen patents,

16  Xilinx's original complaint in the 671 Action affirmatively pled that the named defendants

17  lacked standing to enforce the patents-in-suit.  (*Id*. at ¶¶ 36-40, 52-56, 68-72, 84-88, 100-104,

18  116-120, 132-136, 148-152, 164-168, 191-195, 207-211, 223-227, 239-243, 266-270)

19       On April 11, 2011, Defendants filed a motion to dismiss Xilinx's 671 Action

20  complaint for lack of standing and failure to state a plausible claim.  (671 D.I. 39)

21  Defendants moved in the alternative to sever and transfer the claims concerning patents at

22  issue in a co-pending Delaware action.  (*Id.*)  On the same day, Xilinx filed a motion to

23  enjoin the co-pending Delaware action.  (671 D.I. 56)

24       On July 27, 2011, this Court denied Xilinx's motion to enjoin the Delaware action.

25  (671 D.I. 86)  This Court further transferred four of the patents asserted in Xilinx's complaint

26  to Delaware, dismissed without leave to amend claims concerning seven patents for lack of

27  standing, and dismissed the remaining claims concerning five patents for insufficient

28

1    pleading. (*Id.*) This Court also dismissed four named defendants without leave to amend—

2    Invention Investment Fund I LLC, Invention Investment Fund II LLC, Intellectual Ventures

3    LLC, and Intellectual Ventures Management LLC—because none of those parties were

4    owners or assignees of any of the patents-in-suit in Xilinx's initial complaint. (*Id.*)

5         On August 18, 2011, Xilinx filed its First Amended Complaint in the 671 Action to

6    reassert claims concerning five patents previously dismissed for insufficient pleading. (671

7    D.I. 90) Upon review, Defendants discovered that Xilinx's First Amended Complaint

8    continued to suffer myriad defects, including the continued prosecution of declaratory

9    judgment claims for lack of standing against IV LLC and IV Management, a continued

10   failure by Xilinx to specify products or conduct alleged not to infringe, and a continued

11   failure to provide any factual basis for Xilinx's allegations of invalidity under 35 U.S.C. §§

12   101 and 112. Seeking to avoid the burden, delay, and expense of further motion practice,

13   Defendants repeatedly requested—through correspondence and telephone discussions—that

14   Xilinx agree to again amend its First Amended Complaint in the 671 Action to address those

15   defects. (Modi Decl., ¶¶ 2-3, Exs. A-B) Ultimately, Xilinx agreed to file another amended

16   pleading and drop its defective claims against IV LLC and IV Management alleging lack of

17   standing. (671 D.I. 100) But Xilinx's Second Amended Complaint in the 671 Action still

18   failed to sufficiently plead a case or controversy for declaratory relief with respect to three

19   patents, and Xilinx's counsel refused to provide any substantive explanation. (Modi Decl. ¶¶

20   4-7, Exs. C-F) Defendants have therefore moved for dismissal. (671 D.I. 105)

21        On September 2, 2011, Xilinx filed a declaratory judgment complaint in this action—

22   the 4407 Action—concerning seven patents, this time naming as defendants the correct

23   owners of the seven patents-in-suit.[3] (4407 D.I. 1) But once again, Defendants discovered

24

25   [3] Xilinx filed its original Complaint in this action on September 2, 2011, despite this Court's
     prior order in the 671 Action that Xilinx amend or re-file its claims by August 18, 2011.
26   (671 D.I. 89) Xilinx further withheld service of the 4407 Complaint on Defendants until
     September 12, 2011. (4407 D.I. 23-27) Defendants requested a 30-day extension to respond
27   to Xilinx's 4407 Complaint in light of its newly-raised claim under the UCL, but Xilinx
     refused to grant an extension beyond October 17, 2011. (Modi Decl. ¶ 8, Ex. G)

28

1  that Xilinx's 4407 Complaint suffered from many of the same defects that have plagued its

2  earlier pleadings in the 671 Action, including its defective standing claims against IV

3  Management and IV LLC, its continued failure to specify products or conduct alleged not to

4  infringe, its continued failure to provide any factual basis for claims of invalidity, and its

5  inability to allege standing under the California Unfair Competition Law.  Once again,

6  seeking to avoid the burden, delay, and expense of further motion practice, Defendants

7  repeatedly requested that Xilinx agree to amend its 4407 Complaint to address those defects.

8  (Modi Decl. ¶¶ 3, 9-11, Exs. B, H-J)

9       Despite the early warning, Xilinx waited until October 17, 2011 to finally amend its

10  complaint in this action.  (4407 D.I. 29)  But as in the 671 Action, neither Xilinx's First

11  Amended Complaint nor Defendants' subsequent efforts to confer with Xilinx have

12  elucidated any cogent theory of declaratory judgment jurisdiction over Xilinx's claims

13  concerning the '251, '331, and '061 patents.  Nor has Xilinx stated any plausible claim for

14  relief under the UCL or established standing under the statute.  Defendants therefore bring

15  this motion to dismiss those claims of Xilinx's First Amended Complaint.

16

17                          **IV.    ARGUMENT**

18  **A. Xilinx's Non-Infringement Claims Concerning The '251, '331, And '061 Patents
    Should Be Dismissed Because The First Amended Complaint Presents No
    Definite And Concrete Controversy Of Sufficient Immediacy And Reality To
19  Sustain Declaratory Judgment Jurisdiction.**

20       The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within

21  its jurisdiction . . . any court of the United States . . . may declare the rights and other legal

22  relations of any interested party seeking such declaration, whether or not further relief is or

23  could be sought."  28 U.S.C. § 2201(a). "A party seeking to base jurisdiction on the

24  Declaratory Judgment Act bears the burden of proving that the facts alleged, 'under all the

25  circumstances, show that there is a  substantial controversy, between the parties having

26  adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

27  declaratory judgment.'"  *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343

28

1  (Fed. Cir. 2007) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

2  To determine whether an "actual controversy" exists in actions involving a claim for a

3  declaration of patent invalidity or non-infringement, a declaratory judgment plaintiff must

4  allege both (1) an affirmative act by the patentee related to the enforcement of his patent

5  rights, and (2) meaningful preparation to conduct potentially infringing activity. *Ass'n for*

6  *Molecular Pathology v. United States PTO*, 653 F.3d 1329, 1343 (Fed. Cir. 2011).

7      The fear that a party will bring an infringement action is not enough to establish

8  declaratory judgment jurisdiction. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329,

9  1338 (Fed. Cir. 2008) ("The existence of a patent is not sufficient to establish declaratory

10  judgment jurisdiction."); *see also Trend Micro Corp. v. WhiteCell Software, Inc.*, No. C 10-

11  02248-WHA, 2011 WL 499951, at *4 (N.D. Cal. Feb. 8, 2011) ("The fact that [defendant]

12  has positioned itself to be able to sue [plaintiff] on the '744 patent and is keeping open the

13  option of doing so at some indefinite time in the future does not create a real and immediate

14  controversy between [defendant] and [plaintiff].").  Whether declaratory judgment

15  jurisdiction exists by an affirmative act by the patentee concerning enforcement of his patent

16  rights is determined on a patent-by-patent basis. *See, e.g.*, *Trend Micro*, 2011 WL 499951, at

17  *3 (finding no actual, imminent controversy between the parties because "[defendant] has not

18  made any claim that [plaintiff] infringes the '744 patent.  [Defendant] has not threatened or

19  otherwise communicated with [plaintiff] regarding infringement of that patent.").

### 1.  Xilinx Fails To Plead A Real, Immediate Case Or Controversy With Respect To Its Non-Infringement Claims Concerning The '251 And '331 Patents.

22      Xilinx alleges that "Defendants have accused Xilinx of infringing [certain claims of

23  the '251 and '331 patents] through its manufacture, sale, offering for sale, use, and/or

24  importation of certain integrated circuits allegedly containing an ARM dual-core Cortex A9

25  MPCore processor."  (4407 D.I. 29 at ¶¶ 42, 87)  Xilinx proceeds to request declaratory relief

26  that "none of its integrated circuits allegedly containing an ARM dual-core Cortex A9

27  MPCore processor, including at least Xilinx's 28 nm programmable logic products such as

28

the 7 Series FPGAs, practice . . . any valid claim" of the '251 and '331 patents.  (*Id*. at ¶¶ 45,

90)  Xilinx does not—and cannot—allege that its 7-Series FPGAs, or any other Xilinx

products, were ever accused of infringement.  Indeed, Xilinx's 7-Series FPGAs do not

contain an ARM core processor, and to Defendants' knowledge, neither do any of Xilinx's

other current or past products.  (*See* Modi Decl. ¶¶ 6, 12, Exs. E, K)  Because Xilinx's

requested declaratory relief of non-infringement of the '251 and '331 patents concerns

products that were not accused of infringement or discussed with Xilinx in the context of

those patents, Xilinx fails to plead a real and immediate controversy sufficient to support

declaratory judgment jurisdiction.  Xilinx's declaratory judgment claims of non-infringement

concerning the '251 and '331 patents should therefore be dismissed pursuant to Fed. R. Civ.

P. 12(b)(1).

█████████████████████████████

█████████████████████████████████

███████████████████████████ But IV

Management did not accuse any current (or even future) Xilinx product of infringing the '251

or '331 patents, because based on its understanding at the time, none existed.  Even now,

Xilinx has not identified any currently-offered, or even future-planned, Xilinx product that

uses the ARM core processor.[4]  Xilinx has therefore failed to plead a case or controversy

concerning infringement of the '251 and '331 patents.  *See Benitec*, 495 F.3d at 1343 ("A

party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of

proving that the facts alleged, under all the circumstances, show that there is a substantial

controversy, between the parties having adverse legal interests, of sufficient immediacy and

reality to warrant the issuance of a declaratory judgment.") (citation omitted).

---

[4] As set forth in Defendants' pending motion to dismiss in the 671 Action, Xilinx has not
provided, upon Defendants' repeated requests, an identification of any past or current Xilinx
product that allegedly incorporates ARM Cortex A9 technology.  (Modi Decl. ¶¶ 4-7, Exs. C-
F)

Furthermore, to the extent that Xilinx intends to seek declaratory relief concerning unspecified **future** products, it has failed to identify any such product with sufficient specificity to demonstrate an actual controversy. *See Sharper Image Corp. v. Honeywell Int'l, Inc.*, No. C 02-4860 CW, 2005 WL 2176903, at *2 (N.D. Cal. Aug. 31, 2005) ("The residual possibility of a future infringement suit based on [] future acts is simply too speculative a basis for jurisdiction over [a] counterclaim for declaratory judgments of invalidity."). To do so, Xilinx must establish a real, concrete, and immediate exposure to infringement liability. This includes identifying products that are far enough along in development that they will be the same products that are ultimately provided to the marketplace.[5] *See, e.g., Sierra Applied Scis., Inc. v. Advanced Energy Indus.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004) ("[B]ecause of the relatively early stage of its development, the design which is before us now may not be the design which is ultimately produced and marketed. For a decision in a case such as this to be anything other than an advisory opinion, the plaintiff must establish that the product presented to the court is the same product which will be produced if a declaration of noninfringement is obtained."). Because Xilinx has not identified any such allegedly non-infringing product in its request for declaratory relief of non-infringement of the '251 and '331 patents, Xilinx has not established a case or controversy sufficient for declaratory judgment jurisdiction, and its declaratory claims concerning infringement of the '251 and '331 patents fail.

---

[5] If the Court concludes that factual issues must be resolved to decide this motion under Rule 12(d) of the Federal Rules of Civil Procedure, then this motion should be viewed as a summary judgment motion under Rule 56 and resolved in Defendants' favor, since any information supporting Xilinx's declaratory judgment jurisdiction theories necessarily resides in Xilinx's possession. *See, e.g., Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) ("[W]hen ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment.").

### 2. Xilinx Fails To Plead A Real, Immediate Controversy With Respect To Its '061 Patent Non-Infringement Claim.

Xilinx requests declaratory relief that it has not infringed any claims of the '061 patent "because none of its FPGA products, including Xilinx's Spartan-6 FPGAs, practice any valid claim of the '061 patent." (4407 D.I. 29 at ¶ 135)  But once again, Xilinx does not even allege that Defendants have accused Xilinx's Spartan-6 FPGAs of infringing the '061 patent.  (*Id.* at ¶ 132 ("Defendants . . . have accused Xilinx of infringing the '061 patent through its manufacture, sale, offering for sale, use, and/or importation of certain integrated circuits that allegedly practice methods for controlling power consumption in a computer processor, including Xilinx's FPGA products."))  Nor could it—neither the Spartan-6 product nor any other specific Xilinx product was accused of infringing the '061 patent.

As a provider of administrative and licensing services for certain patent portfolios, in 2008 IV Management notified Xilinx that one of its affiliated funds ("Fund II"), in which Xilinx is a non-managing member, had acquired the '061 patent.  (*See* 4407 D.I. 29 at ¶¶ 32, 35)  IV Management again corresponded with Xilinx in 2010, and at Xilinx's request, provided Xilinx with a list of patents that it believed might be of investment interest to Xilinx.  (*Id.* at ¶¶ 36-38) ███████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████

Nor did IV Management accuse any Xilinx product of infringing the '061 patent. Because IV Management therefore took no affirmative steps to enforce its patent rights in the '061 patent, no controversy exists between the parties concerning an adverse legal interest of the '061 patent.  *See Prasco,* 537 F.3d at 1339 ("[J]urisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee.").  Xilinx cannot point to an imminent infringement dispute merely because it was notified of the existence of the '061 patent.  Because Xilinx has not established a controversy sufficient for declaratory judgment jurisdiction, its declaratory claim concerning non-

infringement of the '061 patent fails and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**B.    Xilinx's Declaratory Judgment Claims Concerning Invalidity Fail Because No Declaratory Judgment Jurisdiction Exists Over Its Non-Infringement Claims For The '251, '331, And '061 Patents.**

Xilinx's declaratory judgment claims concerning the '251, '331, and '061 patents also fail because Xilinx cannot establish declaratory judgment jurisdiction for its infringement claims concerning those patents. Absent an underlying legal cause of action, no dispute exists sufficient to establish an adverse legal interest as to the validity of a patent. *See Creative Compounds, LLC v. Starmark Labs.,* 651 F.3d 1303, 1316-17 (Fed. Cir. 2011) (vacating summary judgment of invalidity because the district court lacked declaratory judgment jurisdiction); *Aralac, Inc. v. Hat Corp. of Am.,* 166 F.2d 286, 295 (3d Cir. 1948) ("Where a person is not engaged in possible infringing conduct and with no intention of doing so, he lacks an interest in a controversy to support an action for declaratory judgment relief to test the validity of a patent."). Accordingly, Xilinx's declaratory judgment claims concerning invalidity of the '251, '331, and '061 patents should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**C.    Xilinx's Declaratory Judgment Claims Should Be Dismissed For Lack Of Declaratory Judgment Jurisdiction And Failure To State A Claim To The Extent That They Seek Declaratory Relief Broader Than The Scope Of The Controversy.**

The First Amended Complaint seeks judgment that a wide range of Xilinx products do not infringe *any* of the '251, '736, '165, '331, '350, '497, or '061 patents. (*See* 4407 D.I. 29 Prayer For Relief Subpara. (A); *id.* at ¶¶ at 45, 60, 75, 90, 105, 135 (alleging that "none of its integrated circuits," "none of its FPGA products," or "none of its evaluation platforms" infringe the patents-in-suit.)) As this Court has already ruled, "[i]n an action for declaratory judgment concerning claims for patent non-infringement, the pleading must specify the products or conduct alleged not to infringe." (671 D.I. 86 at 10) Because the relief sought by Xilinx's non-infringement claims still far exceeds any specific identification of products

in Xilinx's pleading, those claims remain defective under the controlling pleading standard. *See Bender v. Motorola, Inc.*, No. C 09-1245 SBA, 2010 WL 726739, at *3 (N.D. Cal. Feb. 26, 2010) (finding that the accused device or devices cannot be described "in terms of a multiplicity of generically-described product lines such as 'satellite communications technology' and 'audio amplifiers,'" and dismissing as insufficient a "laundry list of accused devices" that do not "actually identif[y] specific accused devices.").

Moreover, by failing to specify with particularity the products or conduct that allegedly do not infringe each of the '251, '736, '165, '331, '350, '497, and '061 patents, Xilinx fails to state a plausible claim that is definite and concrete for declaratory relief of non-infringement as to any Xilinx products not adequately alleged to be the subject of a real, immediate infringement dispute in the First Amended Complaint. A case or controversy for declaratory relief only exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune,* 549 U.S. at 127. Without tailoring its prayer for relief to link specific non-infringing products with specific patents, Xilinx cannot meet that standard.

**D.      Xilinx's Claim Under California Business And Professions Code § 17200 ("UCL") Should Be Dismissed Because Xilinx Fails To State A Plausible Right To Relief Under The UCL's Substantive Prongs And Lacks Standing Under The Statute.**

In its original Complaint in the 671 Action, Xilinx failed to name as defendants the owners of seven patents-in-suit. (671 D.I. 1) The parties named in the original complaint did not own or possess the right to bring suit on those seven patents. (671 D.I. 39 at 5-7; D.I. 40, ¶¶ 7-13, Exs. F-L) As Defendants noted, Xilinx could have readily ascertained the ownership of those patents had it conducted even a rudimentary pre-suit investigation. (*Id.*) Because Xilinx failed to do so, this Court dismissed claims concerning those seven patents without leave to amend. (671 D.I. 86 at 10)

Now, Xilinx attempts to excuse its own failures by accusing IV LLC and IV Management of "unfair business acts or practices" under California Business and Professions Code § 17200 *et seq.*  Xilinx's claim appears to be premised on an allegation that, by virtue of participating in licensing negotiations, IV Management "implied" that it had the right to enforce those patents in its own name.  (4407 D.I. 29 at ¶ 150)  But that assertion is unsupportable because—as the Federal Circuit has explained—there is nothing improper about a party participating in licensing negotiations concerning patents it does not own and therefore cannot sue to enforce.  Xilinx's UCL claim is therefore defective because the First Amended Complaint—once stripped of its conculsory allegations—fails to state a plausible claim for relief under any substantive theory of liability under the statute.  In addition, the First Amended Complaint fails to allege any plausible economic injury suffered by Xilinx as a result of Defendants' alleged conduct, as required for standing under the statute.  Xilinx's UCL claim should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

> **1.    Xilinx's UCL Claim Should Be Dismissed Because The First Amended Complaint Fails To Allege A Plausible Claim Under Any Of The Statute's Substantive Prongs.**

Under Federal Rule of Civil Procedure 12(b)(6), a District Court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  As such, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Ordinarily, in deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and draw reasonable inferences in the plaintiff's favor. *Dipaola v. JPMorgan Chase Bank*, No. C 11-2605 SI, 2011 WL 3501756, at *2 (N.D. Cal. Aug. 10, 2011) (citing *Usher v. City of Los*

*Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).  However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Id.* (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).  Rather, the Court must strip out any allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth," and consider any remaining factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Iqbal*, 129 S.Ct. at 1950.

The UCL defines three types of unfair competition:  practices which are unlawful, unfair, or fraudulent.  CAL. BUS. & PROF. CODE § 17200 (West 2008).  Its purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 246 P.3d 877, 883 (Cal. 2011).  To provide guidance to businesses, and in an effort to quell growing abuse of the statute's enforcement, California Courts and the state's electorate have restricted the scope of actionable conduct and eligibility for relief under the statute.  *See, e.g., Cel-Tech Commn's, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527, 543 (Cal. 1999); *In re Tobacco II Cases*, 207 P.3d 20, 32-33 (Cal. 2009).

Xilinx's First Amended Complaint does not—and cannot—state a plausible claim of unfair competition under any of the three substantive prongs of the statute.  At bottom, Xilinx's claim is predicated on the fact that representatives of IV Management participated in patent licensing negotiations on behalf of third parties that own the patents.  But no reason exists that IV Management need own the patents-in-suit or the right to enforce those patents in its own name in order to conduct such licensing activities on the patent owner's behalf.[6] As such, and as demonstrated below, Xilinx fails to state a plausible claim under the UCL, and its claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[6] Indeed, as the Federal Circuit has noted, a patent owner may sensibly accord to a third party the power to grant licenses and act as the patent owner's agent for licensing purposes. *See Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1192 (Fed. Cir. 2007).

### a.   *Xilinx Fails To Allege A Plausible Claim Under The "Unlawful" Prong Of The UCL.*

To state a claim under the "unlawful" prong of the UCL, a plaintiff must identify a statute that was allegedly violated by a defendant, as well as facts supporting such a violation.  Here, Xilinx's Complaint does not—and cannot—identify any statute that Defendants have allegedly violated.  Xilinx's First Amended Complaint therefore fails to state a plausible claim under the "unlawful" prong and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

"[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 *et seq.*"  *Zero Motorcycles, Inc. v. Pirelli Tyre S.P.A.*, No. C 10-01290 SBA, 2011 WL 2844397, at *4 (N.D. Cal. July 18, 2011) (quoting *Farmers Ins. Exch. v. Super. Court*, 826 P.2d 730, 734 (Cal. 1992)).  A UCL claim arising under the "unlawful" prong must therefore "identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation." *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010).  The absence of such allegations is fatal to a claim brought under the unlawful prong of the UCL.  *Zero Motorcycles*, 2011 WL 2844397, at *5 (dismissing UCL claim under "unlawfulness" prong for failure to allege any statutory provision allegedly violated by defendants); *Baba*, 2010 WL 2486353, at *6 (dismissing UCL claim under "unlawfulness" prong for failure to tie factual allegations to identified statutes allegedly violated).

The First Amended Complaint does not identify any statutory provision that Defendants allegedly violated.  Nor does the First Amended Complaint allege any particular facts demonstrating that Defendants engaged in any ***unlawful*** activity.  To the contrary, Xilinx's defective UCL claim is premised entirely on the parties' patent license negotiations, which Xilinx does not (and cannot) contend were unlawful.  Xilinx's failure to allege any illegal or unlawful activity is fatal to any claim brought under the "unlawful" prong. *Zero Motorcycles*, 2011 WL 2844397, at *5; *Baba*, 2010 WL 2486353, at *6.

**b.**    *Xilinx Fails To Allege A Plausible Claim Under The "Unfair" Prong Of The UCL.*

To state a claim under the "unfair" prong of the UCL, a plaintiff must link its allegation of unfair competition to a constitutional or statutory provision or regulation carrying out such a statutory policy.  In the context of patent disputes, Courts have required plaintiffs to allege facts sufficient to establish a *prima facie* case of an incipient antitrust violation.  Because Xilinx's First Amended Complaint does not (and cannot) allege such facts, its UCL claim fails and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

California Courts historically applied a balancing test to determine whether a business practice was "unfair" under the UCL.  Under that test, "the determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer."  *Baba*, 2010 WL 2486353, at *7 (quoting *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (Cal. Ct. App. 1980)).  As such, a practice was deemed "unfair" "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.")  *Id.* (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (Cal. Ct. App. 1984)).

In 1999, the California Supreme Court rejected the balancing test approach because "[its] definitions are too amorphous and provide too little guidance to courts and businesses." *Cel-Tech*, 973 P.2d at 543.  Instead, the *Cel-Tech* court held that for a competitor to state a plausible claim under the UCL's "unfair" prong, allegations of unfairness must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Id.* at 544.  As such, "unfair" in the context of a UCL claim "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Id.*  This requires an "actual or threatened impact on competition," not just harm to a competitor.  *Id.*  Courts have regularly dismissed UCL claims under the "unfair" prong for a plaintiff's failure to tether allegations

1   supporting such claim to a constitutional, statutory, or regulatory provision. *See, e.g.*, *Zero*

2   *Motorcycles*, 2011 WL 2844397, at *6; *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK,

3   2010 WL 3910169, at *12-*13 (N.D. Cal. Oct. 5, 2010).

4          Federal courts have employed the *Cel-Tech* "tethering" test to determine whether a

5   plaintiff has sufficiently pled a cause of action for an "unfair" business practice in the context

6   of patent and other intellectual property disputes. *See, e.g., In re Acacia Media Techs. Corp.*,

7   No. C 05-01114 JW, 2005 WL 1683660, at *4-*5 (N.D. Cal. July 19, 2005); *Girafa.com, Inc.*

8   *v. Alexa Internet, Inc.*, No. C-08-02745 RMW, 2008 WL 4500858, at *2-*3 (N.D. Cal. Oct.

9   6, 2008); *Zero Motorcycles*, 2011 WL 2844397, at *4-*5. In *Girafa*, the plaintiff filed a

10  declaratory judgment action seeking a declaration of non-infringement and invalidity of

11  defendant Alexa's patent, as well as a claim under the "unfair" prong of the UCL based on

12  allegations that defendants had initiated sham patent litigation with the intent of harming the

13  plaintiff's business. *Girafa.com*, 2008 WL 4500858, at *1. Citing *Cel-Tech*, the *Girafa.com*

14  court dismissed the UCL claim because it failed to allege "an incipient violation of the

15  antitrust law" that would support a section 17200 claim, such as allegations concerning

16  market power, relevant market, and other allegations that would establish a *prima facie* case

17  of monopolization or attempted monopolization. *Id.* at *2. Nor did Girafa's complaint

18  establish that the alleged conduct "otherwise significantly threatens or harms **competition**,"

19  as opposed to harm to a competitor. *Id.* at *2-*3 (emphasis added).

20         Here, Xilinx's UCL claim is predicated on IV Management's participation in

21  licensing negotiations concerning patents owned by its affiliates. (4407 D.I. 29 at ¶¶ 145-

22  161) But Xilinx's First Amended Complaint does not include any allegations that tether its

23  claim to any constitutional, statutory, or regulatory provision prohibiting such conduct. Like

24  the allegations found to be insufficient in *Girafa.com*, the complaint does not include any

25  allegations concerning market power or any other allegations that could plausibly support "an

26  incipient violation of an antitrust law." *Girafa.com*, 2008 WL 4500858, at *1. Without such

27

28

1    allegations, Xilinx cannot establish that the alleged conduct "otherwise significantly

2    threatens or harms competition."  *See id.* at *2.

3         Nor could Xilinx conceivably advance any such allegations.  At bottom, Xilinx's

4    UCL claim appears to be based on an erroneous notion that a third party may not negotiate

5    licenses on behalf of a patent owner.  But as the Federal Circuit has explained, a patent

6    owner may sensibly designate a third party as its agent for purposes of licensing support—

7    just as IV Management does on behalf of its patent owner affiliates.  *See Propat*, 473 F.3d at

8    1192.  As such, the First Amended Complaint fails to state a plausible claim for relief under

9    the "unfair" prong of the UCL.

10                    **c.    *Xilinx Fails To Allege A Plausible Claim Under The***
                              ***"Fraudulent" Prong Of The UCL.***

11

12        To state a viable claim under the "fraudulent" prong of the UCL, a plaintiff must at

13   least allege actual reliance on the defendant's alleged conduct.  Xilinx's First Amended

14   Complaint, while including a conclusory allegation of reliance, fails to state a plausible claim

15   of any such reliance.  Its UCL claim should therefore be dismissed pursuant to Fed. R. Civ.

16   P. 12(b)(6).

17        In 2004, the California electorate substantially heightened the requirements for a

18   plaintiff to bring a claim under the UCL.  *See Kwikset*, 246 P.3d at 884.  Whereas once

19   private suits could be brought by any person acting "for the interests of itself, its members, or

20   the general public," standing under the UCL is now limited to one who "has suffered injury

21   in fact and has lost money or property as a result of" the alleged conduct.  CAL. BUS. & PROF.

22   CODE § 17204, as amended by Prop. 64; *Kwikset*, 246 P.3d at 884.  The intent of this change

23   was to confine standing to those actually injured by a defendant's business practices.

24   *Kwikset*, 246 P.3d at 884.  Thus, to satisfy the narrower standing requirements imposed by

25   Proposition 64, a party must now (1) establish a loss or deprivation of money or property

26   sufficient to qualify as injury in fact, *i.e.*, economic injury, and (2) show that the economic

27   injury was the ***result of*** the allegedly unfair business practice.  *Id.* at 885.

28

1    "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and

2    requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id*.

3    at 888.  A plaintiff proceeding on a claim of fraudulent conduct as the basis of his or her

4    UCL action must therefore plausibly allege and demonstrate ***actual reliance*** on the alleged

5    conduct—*i.e.*, must allege that "he or she was motivated to act or refrain from action based

6    on the truth or falsity of a defendant's statement, not merely on the fact [that] it was made,"

7    and that the representation "was an immediate cause of the injury-producing conduct." *Id.* at

8    n.10, 888.

9    Here, as described above, Xilinx's UCL claim is premised on an allegation that IV

10   Management "implied [it] had the right to license and enforce the Asserted Patents." (4407

11   D.I. 29 at ¶ 150)  Xilinx claims to have "justifiably relied" on that implication.  (*Id*. at ¶¶

12   156-158)  Xilinx further claims that it "has been damaged in an amount to be proven at trial."

13   (*Id*. at ¶ 159)

14   But Xilinx's allegations merely recite "legal conclusion[s] couched as [ ] factual

15   allegation[s]" and accordingly are not entitled to any assumption of truth.  *Twombly*, 550

16   U.S. at 555; *Iqbal*, 129 S.Ct. at 1951.  Indeed, most of Xilinx's allegations are nothing more

17   than "threadbare recitals of a cause of action's elements, supported by mere conclusory

18   statements."  *Iqbal*, 129 S.Ct. at 1940.  For example, Xilinx alleges that representatives of IV

19   Management "knew or reasonably should have known that [the alleged implications] were

20   false, but either actively concealed and suppressed the truth from Xilinx or disregarded their

21   falsity."  (4407 D.I. 29 at ¶ 157)  It further alleges that these supposed representations were

22   made "with the intent to deceive Xilinx" and that Xilinx "justifiably relied" on these alleged

23   representations.  But Xilinx does not include any factual allegations to support its claims of

24   concealment, suppression, intent, or reliance.[7]  Accordingly, these allegations are not entitled

25

26   [7] Allegations of fraudulent conduct under the UCL must be alleged with particularity under
     Fed. R. Civ. P. 9(b).  *Zero Motorcycles*, 2011 WL 2844397, at *6.  To satisfy the heightened

27   pleading requirement of Rule 9(b), Xilinx was required to allege the "who, what, where,
     when, and how" of the alleged concealment, suppression, intent, and reliance.  *See Baba*,

28

1  to the presumption of truth and should be disregarded.  *Twombly*, 555 U.S. at 570; *Iqbal*, 129

2  S.Ct. at 1940.

3        Stripped of such threadbare, conclusory allegations, the "nub" of Xilinx's UCL claim

4  is that, "[b]y virtue of engaging in licensing negotiations with Xilinx, representatives from

5  Intellectual Ventures [LLC] and/or IV Management implied they had the right to license and

6  enforce the Asserted Patents."  (4407 D.I. 29 at ¶ 150)  But that allegation does not plausibly

7  suggest any wrongful conduct because it is "not only compatible with, but indeed [is] more

8  likely explained by, lawful" conduct—*i.e.*, the lawful exercise of engaging in licensing

9  negotiations on behalf of a patent's owner.  *See Iqbal*, 129 S.Ct. at 1950.  Nor does the First

10  Amended Complaint include any allegations concerning the existence of a duty to disclose or

11  a likelihood that members of the public would be deceived, as required to state a viable claim

12  under the "fraudulent" prong of the UCL.  *Baba*, 2010 WL 2486353, at *7.

13        Moreover, Xilinx's own pleadings in this and the related 671 Action belie any

14  contention that Xilinx ***actually relied*** on an alleged representation that IV LLC and IV

15  Management owned the patents-in-suit and possessed the right to bring suit for infringement

16  on those patents.  After terminating negotiations, Xilinx filed its original complaint in the 671

17  Action, which—far from demonstrating any actual reliance on the alleged implication that IV

18  Management possessed the right to enforce the patents in its own name—***affirmatively pled***

19  that IV LLC and IV Management lacked standing to enforce the patents-in-suit.  (*See, e.g.*,

20  671 D.I. 1 at ¶ 38 ("On information and belief, IV has not shown that it has the right to bring

21  an action to enforce the '251 patent"; *see also id.* at ¶¶ 54, 70, 86, 102, 118, 134, 150, 166,

22  193, 209, 225, 241, 268))  Indeed, Xilinx even maintained similar claims in its original

23  Complaint in the 4407 Action until, upon Defendants' repeated warnings, Xilinx withdrew

24  those claims.  (4407 D.I. 1 at ¶¶ 39-66; Modi Decl. ¶¶ 3, 9-11, Exs. B, H-J)

25

26

27  2010 WL 2486353, *2.  Xilinx's bare-bones allegations clearly fail to meet that heightened
standard.

28

Furthermore, in opposing Defendants' original motion to dismiss, Xilinx has also argued that "[t]here can be no doubt that Mr. Chernesky represented IV-I and [IV]-II"—the owners of nine of the original patents-in-suit.  (671 D.I. 64 at 8 n.5)  Xilinx's contention now that it "justifiably relied" on the alleged implication of ownership flatly contradicts the earlier pleadings and arguments Xilinx has advanced to this Court.  There can accordingly be no reasonable inference that Xilinx actually relied on the conduct alleged in its First Amended Complaint.  As a result, to the extent Xilinx suffered any injury (which it has not), such injury was not "as a result" of the allegedly unfair competition, and Xilinx accordingly fails to state a claim under the "fraudulent" prong of the UCL.  Its claim should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

2.    **Xilinx Lacks Standing To Bring A Claim Under The UCL Because The Complaint Does Not, And Cannot, Allege Any Injury-in-Fact Or Loss Of Money Or Property Caused By Defendants.**

As described above, in 2004 the UCL was substantially revised to limit standing only to a plaintiff who "has suffered injury in fact and has lost money or property as a result of" the alleged conduct.  CAL. BUS. & PROF. CODE § 17204.  For the reasons set forth in Section III(D)(1)(c), Xilinx cannot plausibly allege that any injury allegedly suffered was "as a result of" Defendants' alleged conduct, at least because Xilinx's allegations of reliance are implausible in light of the contrary positions and claims it has advanced in the 671 Action.  Accordingly, in addition to failing to state a plausible claim under any substantive prong of the UCL, Xilinx lacks standing to bring a claim under the statute.  *Kwikset*, 246 P.3d at 888.

Xilinx also lacks standing to bring a claim under the UCL because it cannot plausibly allege any "injury in fact" or "loss of money or property."  In its First Amended Complaint, Xilinx alleges that it "expend[ed] time and resources" investigating the patents and "incurr[ed] legal fees" litigating its faulty lack of standing claims, and that Xilinx allegedly would not have undertaken such efforts had it known that IV Management did not possess the right to bring suit for infringement of those patents.  (4407 D.I. 29 at ¶¶ 154-155)  As an

initial matter, Courts have explicitly rejected the theory Xilinx advances here—namely, that litigation costs can serve as the requisite injury for a UCL claim. *See Buckland v. Threshold Enterprises, Ltd.*, 66 Cal. Rptr. 3d 543, 556 (Cal. Ct. App. 2007) (abrogated on other grounds). Moreover, as Xilinx has affirmatively argued, ███████████████████████████

██████████████████████████████████████████████████ By its own admission, any injury based on investigation of the patents-in-suit and subsequent litigation costs would have been incurred ***regardless*** of any of the conduct Xilinx alleges in its First Amended Complaint.

Nor could Xilinx plausibly allege any requisite injury arising out of the patent license negotiations. As Xilinx has affirmatively pled and argued, it has "an established, long-term business relationship with IV Management and its affiliates." (671 D.I. 82 at 2) ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Xilinx "remains to this day [] a licensee" of patents owned by affiliates of IV Management. (*Id.*) Its threadbare allegation at this stage that Xilinx "would not have expended the time and resources to investigate the claims or to negotiate for a possible license," like the rest of its UCL allegations, fail to raise any ***plausible*** claim of injury. *Dipaola v. JPMorgan Chase Bank*, No. C 11-2605 SI, 2011 WL 3501756, at *2 (N.D. Cal. Aug. 10, 2011) (the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") Because Xilinx's allegations fail to plausibly allege any injury-in-fact and loss of money or property as a result of Defendants' conduct, Xilinx lacks standing to bring its claim under the UCL, and the claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## V.   CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing Xilinx's First Amended Complaint.

1

2    Dated:  October 31, 2011                    Respectfully submitted,

3                                               BLACK CHANG & HAMILL LLP
                                               Bradford J. Black (SBN 252031)
4                                              bblack@bchllp.com
                                               Peter H. Chang (SBN 241467)
5                                              pchang@bchllp.com
                                               Andrew G. Hamill (SBN 251156)
6                                              ahamill@bchllp.com

7                                              DESMARAIS LLP
                                               John M. Desmarais (admitted *pro hac vice*)
8                                              jdesmarais@desmaraisllp.com
                                               Michael P. Stadnick (admitted *pro hac vice*)
9                                              mstadnick@desmaraisllp.com
                                               Ameet A. Modi (admitted *pro hac vice*)
10                                             amodi@desmaraisllp.com

11                                              By: _/s/ Michael P. Stadnick_____
                                                    Michael P. Stadnick
12

13                                             *Attorneys for Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28