BLACK CHANG & HAMILL LLP
Bradford J. Black (SBN 252031)
bblack@bchllp.com
Peter H. Chang (SBN 241467)
pchang@bchllp.com
Andrew G. Hamill (SBN 251156)
ahamill@bchllp.com
333 Bush Street, Suite 2250
San Francisco, California 94105
Telephone: 415-813-6210
Facsimile: 415-813-6222

DESMARAIS LLP
John M. Desmarais (admitted *pro hac vice*)
jdesmarais@desmaraisllp.com
Michael P. Stadnick (admitted *pro hac vice*)
mstadnick@desmaraisllp.com
Ameet A. Modi (admitted *pro hac vice*)
amodi@desmaraisllp.com
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

XILINX, INC.,
Plaintiff,

v.

INTELLECTUAL VENTURES, LLC, INTELLECTUAL VENTURES MANAGEMENT, LLC, DETELLE RELAY KG, LLC, ROLDAN BLOCK NY, LLC, LATROSSE TECHNOLOGIES, LLC, TR TECHNOLOGIES FOUNDATION LLC, TAICHI HOLDINGS, LLC, NOREGIN ASSETS N.V., LLC, and INTELLECTUAL VENTURE FUNDING LLC,
Defendants.

**Case No. 3:11-cv-04407-SI**

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS XILINX'S FIRST AMENDED COMPLAINT**

Date: January 20, 2012
Time: 9:00 am
Judge: Hon. Susan Illston
Courtroom 10, 19th Floor

**FILED UNDER SEAL**

PUBLIC VERSION

TABLE OF CONTENTS


**I. INTRODUCTION .......... 1**

**II. FACTUAL BACKGROUND .......... 3**

**A. [REDACTED] .......... 3**

**B. [REDACTED] .......... 4**

**III. ARGUMENT .......... 6**

**A. Xilinx's UCL Claim Should Be Dismissed Because Xilinx Fails To Allege Any Actionable Conduct Or Articulate Any Plausible Theory Of Standing .......... 6**

**1. The First Amended Complaint Fails To Allege "Unfair" Conduct Under Any Standard. .......... 6**

**2. Xilinx Lacks Standing To Raise A Claim Under The UCL Because The Alleged Injury—Engaging In A Pre-Suit Investigation—Is Not Attributable To Defendants' Allegedly Deceptive Conduct. .......... 8**

**B. No Declaratory Judgment Jurisdiction Exists For Xilinx's Claims Concerning The '251, '331, and '061 Patents. .......... 9**

**1. Xilinx Fails To Plead A Real, Immediate Controversy With Respect To Its '061 Patent Non-Infringement Claim. .......... 9**

**2. Xilinx Fails To Plead A Real, Immediate Case Or Controversy With Respect To Its '251 And '331 Patent Non-Infringement Claims. .......... 11**

**C. Xilinx's Declaratory Judgment Claims Concerning Invalidity Fail Because No Declaratory Judgment Jurisdiction Exists Over Its Non-Infringement Claims For The '251, '331, And '061 Patents. .......... 12**

**D. Xilinx's Declaratory Judgment Claims Should Be Dismissed For Lack Of Declaratory Judgment Jurisdiction And Failure To State A Claim To The Extent That They Seek Declaratory Relief Broader Than The Scope Of The Controversy. .......... 12**

**E. Even If An Immediate Controversy Existed, This Court Should Exercise Its Discretion To Decline Declaratory Judgment Jurisdiction Under The Circumstances Of This Case. .......... 13**

**IV. CONCLUSION .......... 14**

# TABLE OF AUTHORITIES

## Cases

*Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303 (Fed. Cir. 2011) ........ 12

*Dipaola v. JPMorgan Chase Bank*, No. C 11-2605 SI, 2011 WL 3501756 (N.D. Cal. Aug. 10, 2011) ........ 9

*Distor v. U.S. Bank NA*, No. C 09-2086 SI, 2009 WL 3429700 (N.D. Cal. Oct. 22, 2009) ........ 6

*Fresenius USA, Inc. v. Transonic Sys., Inc.*, 207 F. Supp. 2d 1009 (N.D. Cal. 2001) ........ 13

*Hewlett-Packard Co. v. Acceleron, LLC*, 587 F.3d 1358 (Fed. Cir. 2009) ........ 10

*Lozano v. AT&T Wireless Svcs., Inc.*, 504 F.3d 718 (9th Cir. 2007) ........ 6

*Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156 (C.D. Cal. 2010) ........ 10

*Propat Int'l v. RPost, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007) ........ 7

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) ........ 10

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361 (Fed. Cir. 2004) ........ 11

*Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 405 F.3d 990 (Fed. Cir. 2005) ........ 10

*Van Slyke v. Capital One Bank*, No. C 07-00671 WHA, 2007 WL 3343943 (N.D. Cal. Nov. 7, 2007) ........ 6

## Statutes

CAL. BUS. & PROF. CODE § 17204 ........ 8, 9

# I. INTRODUCTION

The fundamental, immediate controversy between Xilinx and certain affiliates of the Defendants concerns Xilinx's infringement of four patents. This Court has already severed and transferred Xilinx's declaratory judgment claims concerning those four patents to the District of Delaware. While simultaneously seeking to stay those Delaware claims on judicial economy grounds, Xilinx pursues a campaign in this Court to harass Defendant Intellectual Ventures Management, LLC ("IV Management") and its affiliates by asserting (for the fifth time now) a host of ill-founded claims. Xilinx's ongoing inability to plead viable claims continues in its latest amended complaint, as Xilinx again overlooks key aspects of the parties' relationship, ignores their interactions leading up to this litigation, and contradicts positions Xilinx has previously advanced in this Court.

*First*, Xilinx's putative claim under California's Unfair Competition Law ("UCL") fails because Xilinx can neither plausibly allege actionable conduct supporting its claim nor establish standing under the statute. The Federal Circuit has expressly condoned the allegedly "unfair" conduct here—namely, participation by a party such as IV Management in licensing negotiations concerning patents it does not own and therefore cannot enforce to sue. Xilinx also lacks standing under the UCL because any expenses incurred in connection with investigation of the patents-in-suit—Xilinx's lone theory of alleged injury—would have been incurred ***regardless*** of any "deceptive" conduct alleged in Xilinx's First Amended Complaint. Xilinx now insists that it was misled into believing that IV Management possessed the right to enforce the patents-in-suit, and that it relied on such alleged representations. But that contention flatly contradicts Xilinx's ***own prior pleadings*** in this Court, which expressly asserted that IV Management did ***not*** own the patents-in-suit. Xilinx's UCL claim should be seen for what it is—an attempt to cover up its own litigation missteps and harass IV Management—and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

*Second*, Defendants' challenge to declaratory judgment jurisdiction over Xilinx's patent claims in this action does not hinge—as Xilinx contends—on rigid mechanical rules requiring an express charge of infringement or an exchange of claim charts. No dispute exists that the pertinent jurisdictional analysis focuses on whether the totality of circumstances establishes a substantial dispute of sufficient reality and immediacy to justify the expense of judicial resources in presiding over declaratory judgment litigation. Here, no such real and immediate controversy exists in light of the parties' long-standing business relationship and interactions leading up to the filing of Xilinx's anticipatory February 2011 declaratory judgment complaint—factors Xilinx ignores.



*Finally*, even if the facts alleged in Xilinx's First Amended Complaint were sufficient to establish an immediate controversy, this Court should exercise its equitable discretion to

[1] *See* Defendants' Reply Brief In Support Of Motion To Dismiss Xilinx's Second Amended Complaint For Declaratory Judgment (671 D.I. 118) at 1-3. For convenience, citations to pleadings from Case No. 3:11-cv-0671-SI (the "671 Action") are preceded by "671." Citations to pleadings from Case No. 3:11-cv-04407-SI are preceded by "4407." Defendants in this Action expressly incorporate by reference the briefs and declarations previously submitted by Defendants in the related 671 Action.

decline declaratory judgment jurisdiction here. [redacted] In addition, the crux of the parties' immediate controversy concerns Xilinx's infringement of the four patents at issue in the Delaware Action. As Xilinx's counsel has confirmed, Xilinx filed (and later re-filed) its claims concerning the twelve additional patents from the "true-up" discussions simply to maintain a foothold in this District should Defendants seek to assert infringement claims in the future. Finally, Xilinx has moved to stay the patent litigation in the District of Delaware concerning the four patents truly in dispute, arguing that judicial resources are best conserved by staying patent litigations in favor of pending reexamination proceedings. Here, conservation of judicial resources would be best achieved by focusing on adjudication of the true, immediate dispute between the parties, which concerns Xilinx's infringement of the patents at issue in the Delaware Action. Accordingly, this Court should exercise its equitable discretion to decline declaratory judgment jurisdiction here.

## II. FACTUAL BACKGROUND

[redacted]

[2] *See* Defendants' Reply Brief In Support Of Motion To Dismiss Xilinx's Second Amended Complaint For Declaratory Judgment (671 D.I. 118) at 4-7; Defendants' Motion To Dismiss Xilinx's First Amended Complaint (4407 D.I. 60) at 4-8. Defendants in this Action expressly incorporate by reference the briefs and declarations previously submitted by Defendants in the related 671 Action.

Around the same time, IV Management negotiated but could not reach patent license agreements with several of Xilinx's competitors. [redacted]

[redacted]

> [redacted]

[redacted], Xilinx filed a declaratory judgment action in this Court on February 14, 2011 regarding the four patents already at issue in the Delaware Action and—without any consideration as to whether an immediate dispute over infringement actually existed between the parties—additional claims regarding twelve patents not at issue in Delaware. (671 D.I. 1) [redacted]

Xilinx's Complaint named six defendants, but ***not*** the owners of the patents-in-suit. (*Id.*) Rather, Xilinx's original complaint in the 671 Action affirmatively pled that "IV has

---

[3] "Chernesky Decl." refers to the Declaration Of Joseph F. Chernesky In Support Of Defendants' Reply Brief, filed concurrently with this reply brief.

not shown that it has the right to bring an action to enforce" 14 of the patents-in-suit. (671 D.I. 1 at ¶¶ 38, 54, 70, 86, 102, 118, 134, 150, 166, 193, 209, 225, 241, 268) Over the ensuing several weeks, Xilinx and/or its counsel initiated reexamination on virtually all sixteen patents asserted in Xilinx's original Complaint. (*See* Modi Decl. at ¶¶ 2-4, Exs. A-C)[4]

On April 11, 2011, Defendants in the 671 Action moved to sever overlapping claims to the District of Delaware and dismiss the remainder of Xilinx's Complaint for lack of subject matter jurisdiction and failure to state a claim. (671 D.I. 39) Defendants explained that the ownership of the patents-in-suit was readily ascertainable based on the Patent Office's publicly-available assignment database. (*Id*. at 7; 671 D.I. 40 at ¶¶ 7-13, Exs. F-L) In opposition, Xilinx conceded that "[t]here can be no doubt" that the participants during the "true-up" negotiations represented the owners of the patents-in-suit. (671 D.I. 64 at 8 n.5)

On July 27, 2011, this Court severed and transferred the overlapping claims to the District of Delaware, finding that Xilinx's claims concerning the Delaware patents were anticipatory. (671 D.I. 86) In August 2011, Xilinx and its co-defendants in the Delaware Action moved to stay that litigation based on a professed concern over judicial efficiency in light of pending reexamination proceedings. (Modi Decl. at ¶¶ 5-7, Exs. D-F) But just under one month later, Xilinx filed this litigation, re-asserting declaratory judgment claims concerning seven patents (most the subject of ongoing reexamination proceedings) and adding a new claim under the UCL. (4407 D.I. 1) On October 17, 2011, Xilinx filed its First Amended Complaint, albeit only after Defendants' repeated requests that Xilinx comply with this Court's July 27, 2011 Order. (4407 D.I. 29) Xilinx now has made four serial, defective attempts to re-file claims concerning the twelve additional patents in this Court. (671 D.I. 90; 671 D.I. 100; 4407 D.I. 1; 4407 D.I. 29)

---

[4] "Modi Decl." refers to the Declaration Of Ameet A. Modi In Support Of Defendants' Reply Brief In Support Of Motion To Dismiss Xilinx's First Amended Complaint, filed concurrently with this reply brief.

## III. ARGUMENT

### A. Xilinx's UCL Claim Should Be Dismissed Because Xilinx Fails To Allege Any Actionable Conduct Or Articulate Any Plausible Theory Of Standing.

#### 1. The First Amended Complaint Fails To Allege "Unfair" Conduct Under Any Standard.

Federal Courts may apply either the *Cel-Tech* "tethering" test or the traditional "balancing" test to determine whether a plaintiff has stated a plausible claim of "unfair" conduct under the UCL.[5] Xilinx does not profess to have a viable UCL claim under the "tethering" test. In order to state a viable claim of "unfair" conduct under the balancing test, Xilinx must allege conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Distor v. U.S. Bank NA*, No. C 09-2086 SI, 2009 WL 3429700, at *8 (N.D. Cal. Oct. 22, 2009). The test "requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id*. Here, the Defendants' conduct—designating a third party for purposes of licensing negotiations on behalf of the patents' owners—has been endorsed by the Federal Circuit and caused no discernable harm to Xilinx. Accordingly, even if this Court elects to apply the "balancing test," Xilinx's claim fails and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

In its opposition brief, Xilinx insists that it relied on certain alleged representations that IV Management owned the patents-in-suit and the right to enforce those patents. (Xilinx, Inc.'s Opposition To Defendants' Motion To Dismiss First Amended Complaint

---

[5] As Defendants explained in their opening brief, some Federal Courts have applied the *Cel-Tech* "tethering" test in the context of patent disputes, and this Court may do the same, even if the parties are not competitors. *See Lozano v. AT&T Wireless Svcs., Inc*., 504 F.3d 718, 736 (9th Cir. 2007) (holding that, absent further clarification from the California Supreme Court, a District Court may apply either the *Cel-Tech* "tethering" test or the traditional balancing test to determine whether conduct is "unfair" in the consumer action context, and noting that "adopting one standard does not necessitate rejection of the other."); *Van Slyke v. Capital One Bank*, No. C 07-00671 WHA, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7, 2007) ("*Lozano* did not require using the balancing test, so using *Cel-Tech*'s tethering standard is still appropriate and, indeed, necessary as this Court sees the development of the state law under Section 17200."). Xilinx does not dispute that the First Amended Complaint fails to state a plausible claim of "unfair" conduct under the *Cel-Tech* "tethering" test.

("Opp. Br.") at 14) But that contention is flatly contradicted by Xilinx's prior pleadings in this Court. As Defendants highlighted in their opening brief, Xilinx launched its declaratory judgment action contesting infringement and validity of the patents and—in the ***very same pleading***—affirmatively pled that IV Management "has not shown that it has the right to bring an action to enforce" 14 of the patents-in-suit. (671 D.I. 1 at ¶¶ 38, 54, 70, 86, 102, 118, 134, 150, 166, 193, 209, 225, 241, 268) In opposing a motion to dismiss its original Complaint, moreover, Xilinx affirmatively argued that "[t]here can be no doubt" that the participants during the "true-up" negotiations represented the owners of the patents-in-suit. (671 D.I. 64 at 8 n.5) Not surprisingly, Xilinx refuses to address these fundamental contradictions in its opposition brief. (*See* Opp. Br. at 14-15)

Stripping away its implausible allegations of reliance, Xilinx's claim of "unfair" conduct boils down to its mistaken belief that a third party such as IV Management may not negotiate licenses on behalf of a patent owner. (*See* Defendants' Motion To Dismiss Xilinx's First Amended Complaint (4407 D.I. 60) ("Opening Br.") at 22) But Federal Circuit authority—which Xilinx fails to address in its opposition brief—confirms not only the permissibility, but also the utility of such an arrangement. *See Propat Int'l v. RPost, Inc.*, 473 F.3d 1187, 1192 (Fed. Cir. 2007) (noting that a patent owner may "sensibly" designate a third party for purposes of licensing support).

Meanwhile, IV Management's participation during the parties' "true-up" discussions caused Xilinx no credible harm. Xilinx pleads no facts on which one could plausibly conclude that Xilinx would have proceeded any differently if IV Management had expressly disavowed any ability to sue on the patents-in-suit in its own name. Indeed, as outlined above, Xilinx's contention that it would have foregone a pre-suit investigation had it been aware of the identities of the patents' true owners is also controverted by Xilinx's own prior pleadings. In short, Xilinx is no differently situated today than it would have been had it named the correct defendants—as required by established case law concerning standing—in its original Complaint. Accordingly, the utility of Defendants' conduct (as confirmed by the

Federal Circuit) outweighs Xilinx's alleged harm. Xilinx's claim of "unfair" conduct should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**2. Xilinx Lacks Standing To Raise A Claim Under The UCL Because The Alleged Injury—Engaging In A Pre-Suit Investigation—Is Not Attributable To Defendants' Allegedly Deceptive Conduct.**

Standing under the UCL is limited to a plaintiff who "has suffered injury in fact and has lost money or property ***as a result of***" the alleged conduct. CAL. BUS. & PROF. CODE § 17204 (emphasis added). In its opposition brief, Xilinx now argues that "investigating a claim prior to litigation"—*i.e.*, addressing and responding to Defendants' identification of the patents-in-suit—constitutes its injury sufficient to establish its standing under the UCL. (Opp. Br. at 14-15) But as Defendants explained in their opening brief—and Xilinx does not dispute—Xilinx would have incurred such expenses ***regardless*** of any of the allegedly "deceptive" conduct that Xilinx alleges.

[redacted]

Xilinx nevertheless now argues that it "expended and lost money through unnecessary cost and expense" conducting a pre-suit investigation as a result of Defendants' alleged ownership representations. (*See* Opp. Br. at 14; *see also* 4407 D.I. 29 at ¶ 155 ("Had representatives from Defendants informed Xilinx that Intellectual Ventures and/or IV Management had no rights to enforce the Asserted Patents, Xilinx would not have expended the time and resources to investigate the claims or to negotiate for a possible license.")) But as outlined above, Xilinx pleads no facts on which one could plausibly conclude that Xilinx

would have proceeded any differently if IV Management had expressly disavowed any ability to sue on the patents-in-suit in its own name. For example, Xilinx does not (and cannot plausibly) allege any basis for its contention that it affirmatively brought declaratory judgment claims for patent non-infringement and invalidity against IV Management, but would not have even engaged in a pre-suit investigation of those claims had it been aware of the precise corporate entities that owned those patents. And indeed, as explained above, such contention is also controverted by Xilinx's own pleadings. (671 D.I. 1 at ¶¶ 38, 54, 70, 86, 102, 118, 134, 150, 166, 193, 209, 225, 241, 268)

In sum, as confirmed by its own prior pleadings, Xilinx's alleged injury—expenses associated with its pre-suit investigation—was incurred independently, and not in reliance on representations by IV Management or its affiliates concerning ownership of the patents-in-suit. Accordingly, Xilinx fails to raise any plausible claim of injury suffered "as a result" of the alleged conduct, as required for standing under the UCL. CAL. BUS. & PROF. CODE § 17204; *Dipaola v. JPMorgan Chase Bank*, No. C 11-2605 SI, 2011 WL 3501756, at *2 (N.D. Cal. Aug. 10, 2011) (the Court is not required to accept as true "allegations that are . . . unwarranted deductions of fact [] or unreasonable inferences."). Xilinx's UCL claim should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## B. No Declaratory Judgment Jurisdiction Exists For Xilinx's Claims Concerning The '251, '331, and '061 Patents.

### 1. Xilinx Fails To Plead A Real, Immediate Controversy With Respect To Its '061 Patent Non-Infringement Claim.

[redacted]

[redacted]



The authorities cited by Xilinx uniformly fail to support its declaratory judgment jurisdiction arguments. (*See, e.g.*, Opp. Br. at 6-7) That jurisdictional analysis is highly fact-specific and turns on the totality of the circumstances presented in each individual case. *See Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 405 F.3d 990, 992 (Fed. Cir. 2005). Because the facts presented in each of the cases relied upon by Xilinx differ so substantially from the circumstances of this case, they have no bearing on the outcome here.

The cases cited by Xilinx all involve assertions of patents against specified, current products in the context of simple license demands. *See Hewlett-Packard Co. v. Acceleron, LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382 (Fed. Cir. 2007); *Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1162 (C.D. Cal. 2010).

[redacted]

### 2. Xilinx Fails To Plead A Real, Immediate Case Or Controversy With Respect To Its '251 And '331 Patent Non-Infringement Claims.

[redacted] In its First Amended Complaint, Xilinx seeks a broad declaration that "none of its integrated circuits . . . including at least Xilinx's 28 nm programmable logic products such as the 7 Series FPGAs" infringe the '251 or '331 patents. (4407 D.I. 29 at ¶ ¶ 45, 90) [redacted]

But Xilinx still fails to plead or demonstrate that any real and immediate controversy exists with respect to infringement of the '251 and '331 patents, which would require a showing that "the design of the potentially infringing subject of the declaratory-judgment suit was substantially ***fixed***, particularly with respect to its potentially-infringing characteristics, on the date the complaint was filed." *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004) (emphasis in original). [redacted]

**C. Xilinx's Declaratory Judgment Claims Concerning Invalidity Fail Because No Declaratory Judgment Jurisdiction Exists Over Its Non-Infringement Claims For The '251, '331, And '061 Patents.**

Xilinx does not dispute that, absent an underlying legal cause of action, no dispute exists sufficient to establish a legal adverse interest as to the validity of a patent. *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1318 (Fed. Cir. 2011) (vacating summary judgment of invalidity because the district court lacked declaratory judgment jurisdiction). As demonstrated above, Xilinx cannot establish declaratory judgment jurisdiction for its infringement claims concerning at least the '061, '251, and '331 patents. Accordingly, Xilinx's declaratory judgment claims concerning invalidity of the '061, '251, and '331 patents should also be dismissed.

**D. Xilinx's Declaratory Judgment Claims Should Be Dismissed For Lack Of Declaratory Judgment Jurisdiction And Failure To State A Claim To The Extent That They Seek Declaratory Relief Broader Than The Scope Of The Controversy.**

As Defendants explained in their opening brief, the First Amended Complaint seeks judgment that a wide range of Xilinx products do not infringe ***any*** of the '251, '736, '165, '331, '350, '497, or '061 patents. (*See* 4407 D.I. 29 Prayer For Relief Subpara. (A); *id*. at ¶¶ 45, 60, 75, 90, 105, 135 (alleging that "none of its integrated circuits," "none of its FPGA products," or "none of its evaluation platforms" infringe the patents-in-suit.)) In response, Xilinx points to allegations in the First Amended Complaint that identify specific products, but once again fails to even address the mismatch between those allegations and the broader declaratory relief that Xilinx seeks. Without tailoring its requested relief to link specific non-infringing products and specific patents, Xilinx fails to state a plausible claim that is definite and concrete for declaratory relief as to products not specifically identified in the First Amended Complaint.

**E. Even If An Immediate Controversy Existed, This Court Should Exercise Its Discretion To Decline Declaratory Judgment Jurisdiction Under The Circumstances Of This Case.**

Even if the Court decides that the facts alleged in Xilinx's First Amended Complaint are sufficient to establish an immediate case or controversy to support declaratory judgment jurisdiction over Xilinx's patent claims, the Court retains equitable discretion to decline such jurisdiction. *See, e.g., Fresenius USA, Inc. v. Transonic Sys., Inc.*, 207 F. Supp. 2d 1009, 1012 (N.D. Cal. 2001). Here, this Court should decline to exercise declaratory judgment jurisdiction for at least three reasons.

*First*, [REDACTED]

*Second*, the real, immediate patent controversy between Xilinx and Defendants centers on the four patents at issue in the Delaware Action. As outlined above, Xilinx included an additional twelve patents in its original declaratory judgment complaint in a clear attempt to avoid transfer and secure venue in this Court, without regard to whether any concrete dispute existed between the parties. Indeed, Xilinx's counsel has since expressly stated that Xilinx re-filed claims concerning the twelve patents in this action and the related 671 Action simply to obtain a foothold in this Court. (*See* Modi Decl. at ¶ 8, Ex. G) Defendants asked Xilinx to voluntarily withdraw its claims here with the explicit commitment that Defendants would notify Xilinx if they intend to move forward with infringement claims at a later date, so that Xilinx could bring such claims in this Court. (*Id.*) Counsel for Xilinx rejected that offer.

*Third*, Xilinx has argued in the Delaware Action that, in the interest of judicial efficiency, a patent litigation—indeed, ***the*** patent litigation concerning the four patents truly

in dispute—should be stayed when a substantial number of the patents-in-suit are the subject of ongoing reexamination proceedings at the United States Patent & Trademark Office. (*See* Modi Decl. ¶¶ 5-7, Exs. D-F) Here, after filing its initial declaratory judgment complaint in February 2011, Xilinx and/or its counsel initiated reexamination proceedings on at least fourteen patents owned by Defendants and their affiliates, including six of the seven patents-in-suit in this Action. (*Id.* at ¶¶ 3-4, Exs. B-C) Equity does not counsel proceeding with this action while Xilinx argues to stay—on grounds equally applicable here—litigation concerning the patents plainly in dispute between the parties. This Court should therefore exercise its discretion to decline declaratory judgment jurisdiction.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing Xilinx's First Amended Complaint.

Dated: November 21, 2011

Respectfully submitted,

BLACK CHANG & HAMILL LLP
Bradford J. Black (SBN 252031)
bblack@bchllp.com
Peter H. Chang (SBN 241467)
pchang@bchllp.com
Andrew G. Hamill (SBN 251156)
ahamill@bchllp.com

DESMARAIS LLP
John M. Desmarais (admitted *pro hac vice*)
jdesmarais@desmaraisllp.com
Michael P. Stadnick (admitted *pro hac vice*)
mstadnick@desmaraisllp.com
Ameet A. Modi (admitted *pro hac vice*)
amodi@desmaraisllp.com

By: */s/ Michael P. Stadnick*
Michael P. Stadnick

*Attorneys for Defendants*