1   Behrooz Shariati (State Bar No. 174436)
2   bshariati@jonesday.com
    JONES DAY
3   1755 Embarcadero Road
    Palo Alto, CA  94303
4   Telephone:  (650) 739-3939
    Facsimile:   (650) 739-3900
5
6   Attorney for Plaintiff
    XILINX, INC.
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  XILINX, INC.,                          Case No. 3:11-cv-04407-SI

12          Plaintiff,
13      v.
                                           **XILINX INC.'S OPPOSITION TO**
14  INTELLECTUAL VENTURES, LLC,            **DEFENDANTS' MOTION TO**
    INTELLECTUAL VENTURES                  **DISMISS FIRST AMENDED**
15  MANAGEMENT, LLC,                       **COMPLAINT**
    DETELLE RELAY KG, LLC,
16  ROLDAN BLOCK NY, LLC,                  **DATE:    January 20, 2012**
    LATROSSE TECHNOLOGIES, LLC,            **TIME:     9:00 a.m.**
17  TR TECHNOLOGIES FOUNDATION LLC,        **JUDGE:  Honorable Susan Illston**
    TAICHI HOLDINGS, LLC,                  **PLACE:  Courtroom 10, 19th Floor**
18  NOREGIN ASSETS N.V., LLC,
    INTELLECTUAL VENTURE FUNDING
19  LLC,
            Defendants.
20                                         **PUBLIC VERSION**

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3  I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

4  II.   RELEVANT FACTS ........................................................................................................ 2

5  III.  ARGUMENT .................................................................................................................... 3

6       A.   Under the Totality of the Circumstances, There Exists an Actual
             Controversy Between Xilinx and IV as to All of the Patents in Suit .................... 3

7
             1.    Standard for Declaratory Relief ................................................................ 3

8
             2.    Under the totality of circumstances, the Court has jurisdiction over
9                  the '061 patent............................................................................................ 4

10            3.    There is an actual controversy between Xilinx and IV with respect
                   to the '251 and '331 patents ........................................................................ 7

11
        B.   Because the Court Has Declaratory Judgment Jurisdiction Over Xilinx's
12           Declaratory Judgment Claims for Non-Infringement of the '251, '331, and
             '061 Patents, it Also Has Declaratory Judgment Jurisdiction Over Xilinx's
13           Claims for Invalidity of the '251, '331, and '061 Patents..................................... 9

14      C.   Xilinx's Declaratory Judgment Claims Are Sufficiently Plead to Survive
             Defendants' Motion to Dismiss .......................................................................... 9

15
        D.   Xilinx's Section 17200 Claims Are Sufficiently Pled to Survive
16           Defendants' Motion to Dismiss ........................................................................ 11

17      E.   In the Alternative, to The Extent the Court Grants Defendants' Motion,
             Xilinx Requests Leave to Amend the Complaint................................................. 15

18  IV.  CONCLUSION .............................................................................................................. 15

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
    846 F.2d 731 (Fed. Cir. 1988) .................................................................................................. 4

*Bardin v. Daimlerchrysler Corp.*,
    136 Cal. App. 4th 1255 (2006) ...................................................................................... 12, 13

*Bender v. Motorola*,
    N.D. Cal. Case No. 4:09-cv-01245-SBA ................................................................................ 10

*Buckland v. Threshold Enterprises, Ltd.*,
    155 Cal. App. 4th 798 (2007) ........................................................................................ 14, 15

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (Ct. App. 1999) ............................................................................................. 11

*Certain Dynamic Random Access Memory and NAND Flash Memory Devices and
    Products Containing Same*,
    ITC Inv. No. 337-TA-__ ..................................................................................................... 2, 12

*Distor v. US Bank NA*,
    No. C 09-02086 SI, 2009 U.S. Dist. LEXIS 98361 (N.D. Cal. Oct. 22, 2009) ..................... 13

*Erickson v. Pardus*,
    551 U.S. 89 (2007) .................................................................................................................. 11

*Hewlett-Packard Co. v. Acceleron LLC*,
    587 F.3d 1358 (Fed. Cir. 2009) ...................................................................................... passim

*Intellectual Ventures I LLC v. Check Point Software Technologies Ltd.*,
    D. Del. Case No. 1:10-cv-1067 ................................................................................................. 3

*Intellectual Ventures I LLC v. Hynix Semiconductor Inc.*,
    D. Del. Case No. 1:10-cv-1066 ................................................................................................. 3

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ................................................................................................. 15

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ................................................................................................... 13

*McCarthy v. United States*,
    850 F.2d 558 (9th Cir. 1988) ..................................................................................................... 3

*McKell v. Washington Mutual Inc.*,
    142 Cal. App. 4th 1457 (2006) ............................................................................................... 12

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941) ................................................................................................................... 3

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *MedImmune, Inc. v. Genentech, Inc.*,
          549 U.S. 118 (2007) .......................................................................................................... 3

4
     *Microsoft Corp. v. Phoenix Solutions, Inc.*,
5          741 F. Supp. 2d 1156 (C.D. Cal. 2010) .............................................................. 6, 7

6    *Navarro v. Block*,
          250 F.3d 729 (9th Cir. 2001) ........................................................................................ 11

7
     *People v. Casa Blanca Convalescent Homes, Inc.*,
8          159 Cal. App. 3d 509 (1984) ....................................................................................... 12

9    *Prasco, LLC v. Medicis Pharm. Corp.*,
          537 F.3d 1329 (Fed. Cir. 2008) .............................................................................. 3, 4
10
     *Progressive W. Ins. Co. v. Superior Ct.*,
11         135 Cal. App. 4th 263 (2005) ..................................................................................... 12

12   *SanDisk Corp. v. STMicroelectronics, Inc.*,
          480 F.3d 1372 (Fed. Cir. 2007) ....................................................................... 3, 6, 7
13
     *Smith v. State Farm Mutual Automobile Insurance Company*,
14         93 Cal. App. 4th 700 (2001) ....................................................................................... 12

15   *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
          497 F.3d 1271 (Fed. Cir. 2007) .................................................................................. 4
16
     *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*,
17         482 F.3d 1330 (Fed. Cir. 2007) .................................................................................. 3

18   *Trend Micro Corp. v. Whitecell Software, Inc.*,
          No. C-10-02248 WHA, 2011 WL 499951 (N.D. Cal. Feb. 8, 2011)....................... 4
19
     *United States v. City of Redwood City*,
20         640 F.2d 963 (9th Cir. 1981) ...................................................................................... 11

21   *Xilinx, Inc. v. Invention Investment Fund I, L.P., et al.*,
          Case No. 3:11-cv-00671 SI ..................................................................................... 1, 2
22

23   **STATUTES**

24   28 U.S.C. § 2201 .................................................................................................................... 3

25   Cal. Bus. & Prof. Code § 17200 ............................................................................ 1, 11, 14

26   **OTHER AUTHORITIES**

27   Fed. R. Civ. P., Rule 12 ...................................................................................................... 11

28   Fed. R. Civ. P., Rule 15 ...................................................................................................... 15

1    **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

2          The facts underlying this case do not change with each retelling.  IV[1] accused Xilinx of

3    infringing sixteen "Key Patents" in twelve "Highly Relevant" portfolios during negotiations and

4    made it clear to Xilinx that IV's plans for the FPGA industry are to sue companies that do not

5    knuckle under to IV's demands.  But the moment Xilinx stood up to IV's tactics and invoked the

6    jurisdiction of this Court, IV immediately sheathed its drawn sword and attempted to conjure a

7    white dove instead.  The undisputed facts and IV's own documents, however, tell the real story of

8    what happened and how IV was attempting to strong arm Xilinx into licensing hundreds of patents

9    that even IV did not contend Xilinx infringed ██████████████████████████

10   ████████████          (*See* Liu Decl. in Supp. of Opp'n to MTD SAC (hereafter "Liu Decl.") ¶ 16 (ECF

11   No. 115) (filed under seal).)

12         Another tactic used by IV to shield itself from this Court's jurisdiction is to play a shell

13   game with the ownership of and the right to assert these patents.  When demanding money from

14   Xilinx, IV's representatives Messrs. Chernesky and Wilson had no hesitation asserting the patents

15   as IV Management's patents but as soon as this Court was involved in the dispute, IV Management

16   filed a sworn declaration that ████████████████████████████████████

17   ████████████████████████████████████████████████████

18   (Chernesky Decl. in Supp. of Defs.' Reply to Mot. to Dismiss, filed in *Xilinx, Inc. v. Invention*

19   *Investment Fund I, L.P.*, *et al.*, Case No. 3:11-cv-00671 SI, ¶ 5 (ECF No. 81-1) (filed under

20   seal).)[2]  The same unscrupulous conduct also gave rise to Xilinx's Section 17200 claim, which IV

21   now attempts to deflect by applying the wrong legal standard and misleading this Court.  Under

---

22         [1] To avoid confusion and for convenience, "IV" collectively refers to all Defendants in
     this action, namely Intellectual Ventures, LLC, Intellectual Ventures Management, LLC, Detelle
23   Relay KG, LLC, Roldan Block NY, LLC, Latrosse Technologies, LLC, TR Technologies
     Foundation LLC, Taichi Holdings, LLC, Noregin Assets N.V., LLC, Intellectual Venture
24   Funding LLC.  Where necessary to make a distinction, Defendants Intellectual Ventures LLC
     and/or Intellectual Ventures Management, LLC will be referred to collectively as "IV
25   Management."

26         [2] Except for references to Plaintiff's Motion to Dismiss the First Amended Complaint
     ("Motion" or "Mot.") (ECF No. 64) (filed under seal) or the First Amended Complaint ("FAC")
27   (ECF No. 29) both filed in this action, all other citations to docket entries, pleadings, motions,
     declarations, and other  court filings, will be to documents filed in the related action, *Xilinx, Inc.*
28   *v. Invention Investment Fund I, L.P., et al.*, Case No. 3:11-cv-00671 SI.

the correct legal standard, Xilinx has adequately plead "unfair" business practices under California's unfair competition law.  Both motions to dismiss should be denied. [3]

## II.     RELEVANT FACTS

Xilinx has previously introduced the parties and described the long history between them, including the assertion of patents and excessive licensing demands by IV that have resulted in the filing of the present action, and so will not repeat these facts here.[4]  (*See* Pls.' Mot. to Enjoin at 2-4 (ECF No. 56); Xilinx's Opp'n to Defs.' Mot. to Dismiss ("MTD") Compl. at 2-6 (ECF No. 71); Xilinx Opp'n MTD Second Am. Compl. ("SAC") at 3-7 (ECF No. 114) (all three filed under seal).)  However, the following specific facts are relevant to this Motion and necessary to correct Defendants' misleading version of the events leading to the filing of this action.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████  (*See* Defs.' Reply to MTD SAC at 4-6, (ECF No. 118).)  IV never defines its so-called "licensing" program and its overall description to this Court is self-serving and at odds with the evidence.  When it suits its purposes, such as when it has to establish that it satisfies the "domestic industry" requirement before the International Trade Commission,  IV's description of its "licensing" activities sound more like its dealings with Xilinx: "[t]he Funds' *licensing efforts* include *pre-assertion due diligence*, market and industry research, reverse engineering of potentially infringing products, preparation of claim charts, face-to-face licensing negotiations, and *preparations for litigation*."  *Certain Dynamic Random Access Memory and NAND Flash Memory Devices and Products Containing Same*, ITC Inv. No. 337-TA-__, Compl. ¶ 13, Docket No. 2829 (emphasis added) ("ITC Compl.").

████████████████████████████████████████████████████

███████████████████████████████████████████████  (Reply to MTD

---

[3] In this motion, IV fails to make any specific arguments with regard to U.S. Patent Nos. 5,751,736; 5,887,165; 6,747,350; 6,768,497 and with regard to these patents, it has conceded the adequacy of Xilinx's FAC.

[4] Xilinx has previously briefed the facts of this case in the related action *Xilinx v. Invention Investment Fund I, L.P., et al.*, Case No. 3:11-cv-00671 SI.  Xilinx expressly incorporates by reference the facts and declarations previously submitted by Xilinx in that case.

1    SAC at 6 (ECF No. 118) (filed under seal).)  IV fails to inform this Court that on the same day, IV

2    unleashed two additional lawsuits in Delaware:  *Intellectual Ventures I LLC* v. *Hynix*

3    *Semiconductor Inc.*, D. Del. Case No. 1:10-cv-1066 and *Intellectual Ventures I LLC* v. *Check*

4    *Point Software Technologies Ltd.*, D. Del. Case No. 1:10-cv-1067.

5    **III.    ARGUMENT**

6          **A.    Under the Totality of the Circumstances, There Exists an Actual Controversy**
            **Between Xilinx and IV as to All of the Patents in Suit**
7

8                **1.    Standard for Declaratory Relief**

9          Subject matter jurisdiction under the Declaratory Relief Act, 28 U.S.C. § 2201(a), requires

10    a showing of an actual case or controversy between the declaratory relief plaintiff and defendant.

11    *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1336 (Fed. Cir. 2007).  The

12    Court may consider any admissible evidence to determine the existence of jurisdiction.  *See*

13    *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

14          The Supreme Court has articulated the test as follows: "the question in each case is whether

15    the facts alleged, under all the circumstances, show that there is a substantial controversy, between

16    parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

17    of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)

18    (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Likewise, the Federal

19    Circuit explained that declaratory judgment jurisdiction in patent cases requires an analysis of the

20    totality of the circumstances and has explained that a "patentee can cause such an injury [sufficient

21    to create a justiciable case or controversy] in a variety of ways, for example, by creating a

22    reasonable apprehension of an infringement suit, . . . demanding the right to royalty payments, . . .

23    creating a barrier to the regulatory approval of a product that is necessary for marketing," or by

24    prior litigious conduct.  *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339, 1341 (Fed.

25    Cir. 2008).  Applying *MedImmune*, the Federal Circuit has held that "where a patentee asserts

26    rights under a patent based on certain identified ongoing or planned activity of another party, and

27    where that party contends that it has the right to engage in the accused activity without license, an

28    Article III case or controversy will arise . . . ."  *SanDisk Corp. v. STMicroelectronics, Inc.*, 480

1    F.3d 1372, 1381 (Fed. Cir. 2007).

2           An actual controversy may exist even in the absence of a direct or explicit threat because,

3    "a declaratory judgment plaintiff does not need to establish a reasonable apprehension of a lawsuit

4    in order to establish that there is an actual controversy between the parties." *Sony Elecs., Inc. v.*

5    *Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007).  The Federal Circuit has held

6    that a justiciable controversy exists where there is a "real and *immediate* injury or threat of future

7    injury that is *caused by the defendants . . . .*" *Prasco*, 537 F. 3d. at 1339.  Jurisdiction exists where

8    the plaintiff can show "'some affirmative act by the patentee' that forms the basis for an actual

9    controversy between the parties." *Trend Micro Corp. v. Whitecell Software, Inc.*, No. C-10-02248

10   WHA, 2011 WL 499951, at *3 (N.D. Cal. Feb. 8, 2011) (citing *Prasco*, at 1338-39).

11          In *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed. Cir. 2009), the Federal

12   Circuit went further, stating:

13          Acceleron repeatedly emphasizes that "at the time HP filed its complaint,
            Acceleron could not have asserted its rights in the '021 patent against HP because

14          it had not even determined if it had a basis to assert the patent against HP."
            However, it is irrelevant whether Acceleron had conducted an adequate

15          investigation or whether it subjectively believed HP was infringing.  ***"The test [for***
            ***declaratory judgment jurisdiction in patent cases], however stated, is objective.***

16          ***Indeed, it is the objective words and actions of the patentee that are controlling."***
            Thus, ***conduct that can be reasonably inferred as demonstrating intent to enforce***

17          ***a patent can create declaratory judgment jurisdiction.***

18   *Id*. at 1363-64 (emphasis added) (citations omitted) (reversing the district court's dismissal for lack

19   of subject matter jurisdiction based on its finding that there was "declaratory judgment jurisdiction

20   arising from a 'definite and concrete' dispute between . . . parties having adverse legal interests").

21   The Federal Circuit has even held that a patentee's litigation history can demonstrate an intent to

22   enforce a patent, creating declaratory judgment jurisdiction.  *See Arrowhead Indus. Water, Inc. v.*

23   *Ecolochem, Inc.*, 846 F.2d 731, 737-38 (Fed. Cir. 1988).

24          **2.      Under the totality of circumstances, the Court has jurisdiction over the**
                     **'061 patent**

25

26          Contrary to IV's assertion, there is no rule requiring a patentee to name specific accused

27   products or provide claim charts in order to trigger declaratory judgment jurisdiction.  Indeed, the

28   opposite is true.  In *Hewlett-Packard* for example, the Federal Circuit found that declaratory

1    judgment jurisdiction existed where a non-competitor patent holding company sent two letters to

2    Hewlett-Packard ("HP") in which the holding company identified certain patents that it owned,

3    referenced a category of products (blade servers) sold by plaintiff, and imposed deadlines by

4    which HP needed to respond. *Hewlett-Packard*, 587 F.3d at 1362-63. In that case, the court found

5    jurisdiction when no claim charts were exchanged, and no specific products were identified. Here,

6    IV's actions were far more definitive in creating a case or controversy. Indeed, as alleged in the

7    complaint (FAC ¶ 132), IV affirmatively accused Xilinx of infringing the '061 patent, which IV

8    has not disputed.

9      Unable to dispute those allegations, and in the face of such contrary controlling law, IV

10    attempts to argue that because it never actually accused any "specific" Xilinx product of infringing

11    the '061 patent it has taken no affirmative steps to enforce its patents.[5] (*See, e.g.*, Mot. at 3, 12-

12    13.) IV attempts to minimize its actions, claiming that it merely "notified" Xilinx that it had

13    acquired patents and had "at Xilinx's request, provided Xilinx with a list of patents that it believed

14    might be of investment interest to Xilinx." (Mot. at 12.)

15      IV's arguments are squarely contradicted by a number of undisputed facts in the record. ██

16 ████████████████████████████████████████████████████████████████

17 ██████████████████████████████████████████████████████████

18 █████████████████████████████████████████████████████

19 ███████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████

22 █████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████

24 ██████████████████████████████████████████████████████████████

25 █████████████████████████████████████████████████████████████

26 ███████████████████████████████████████████████████████

27

28

---

[5] IV offers only attorney argument here, and provides no evidence to support its argument
that IV did not accuse any specific Xilinx product of infringing the '061 patent. (Mot. at 12-13.)

1

2

3

4

5

6

7

8          *See Hewlett-Packard*, 587 F.3d at

9 1363 (finding DJ jurisdiction over patents identified as "relevant" to plaintiff's products by a "non-

10 competitor patent holding company").

11

12

13

14

15

16

17

18

19

20

21

22

23       These facts are sufficient to establish a real, immediate, and substantial controversy

24 regarding all the patents in suit. *See SanDisk*, 480 F.3d at 1381. *See also Microsoft Corp. v.*

25 *Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1162 (C.D. Cal. 2010) (finding declaratory

26 judgment jurisdiction where defendant sent several threatening letters to Plaintiff's customer

27 identifying fifteen patents relevant to the accused system, but providing only nine claim charts;

28 and holding that "evidence of conduct that shows an intent to enforce all fifteen patents . . . creates

1   declaratory judgment jurisdiction over all fifteen patents"); *Hewlett-Packard*, 587 F.3d at 1363

2   (finding DJ jurisdiction over patents identified by patent holding company as "relevant" to

3   plaintiff's products).

4        Xilinx was not merely "notified of the existence" of the '061 patent, as Defendants claim.

5   (Mot. at 12.)  Rather IV representatives repeatedly asserted, both expressly and impliedly, that

6   Xilinx infringed all sixteen of the Key Patents, including the '061 patent, and demanded that

7   Xilinx take a license to all of those patents.  IV also clearly signaled that Xilinx was the next target

8   in IV's "plans regarding the FPGA industry" by notifying Xilinx that IV had sued three of Xilinx's

9   major competitors in Delaware.  While the Delaware lawsuit involved only four of the sixteen Key

10  Patents, IV's actions were "evidence of conduct that shows an intent to enforce all [sixteen]

11  patents."  *See Microsoft*, 741 F. Supp. 2d at 1162.  Because IV has asserted "rights under a patent

12  based on certain identified ongoing or planned activity of another party," the standard for

13  declaratory judgment jurisdiction has been met and IV's Motion should be denied.  *See SanDisk*,

14  480 F.3d at 1381.

15        **3.    There is an actual controversy between Xilinx and IV with respect to
              the '251 and '331 patents**

16

17        IV also argues that no jurisdiction exists over Xilinx's declaratory judgment claims

18  regarding the '251 and '331 patents because the claim charts IV gave Xilinx for the '251 and '331

19  patents accuse only circuits containing an ARM dual-core Cortex A9 MPCore Processor, and

20  because the products for which Xilinx seeks a declaration of non-infringement—the 28 nm

21  programmable logic products and 7-Series FPGA products—do not contain an ARM core

22  processor.[6]  IV is simply wrong.  At least one of Xilinx's 28 nm programmable logic products,

23  including a variation of the 7-Series FPGA products does indeed contain an ARM core processor

24  as alleged in Paragraphs 45 and 90 of the First Amended Complaint.  As the complete grounds

25        [6] In a footnote, IV criticizes Xilinx for failing to provide IV with "an identification of any
    past or current Xilinx product that allegedly incorporates ARM Cortex A9 technology."  (Mot. at
26  10 n.4.)  However, IV, the patent holder and accuser could have, with a simple search of Xilinx's
    homepage for the word "ARM" or "ARM" in conjunction with "7 Series" discovered numerous
27  links to 28 nm programmable logic and variations of the 7-Series FPGA products that do
    incorporate the ARM Cortex A9 technology.  (Henry L. Welch Decl. Ex. A ("ARM 7 Series"
28  Search Results) (ECF No. 112-1).)

XILINX'S OPPOSITION TO DEFS' MOT TO
DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

1   upon which IV's motion is based with respect to the '251 and '331 patents is factually incorrect,

2   IV's motion necessarily fails and should be denied.

3        IV also falsely argues that it "did not accuse any current (or even future) Xilinx product of

4   infringing the '251 and '331 patents, because based on [IV's] understanding at the time, none

5   existed."  (Mot. at 10.)  This argument is directly contradicted by IV's own claim charts for the

6   '251 and '331 patents that even cite a Xilinx technical document that describes how the ARM core

7   processor is used with the Xilinx 28 nm programmable logic technology, and that contains an

8   internet link to the main Webpage for Xilinx's 28 nm programmable logic and 7-Series FPGA

9   products.  (See Liu Decl. in Supp. of Opp'n to Mot. to Dismiss Ex. 11 ('251 and '331 Patent Claim

10  Charts) (ECF No 72-11) (citing Xilinx technical document WP369 v. 1.0) (filed under seal); (Liu

11  Decl. Ex. 17 (WP369, v. 1.0) (ECF No. 111-2).) ██████████████████████████

12  ████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████

14        In order to accept IV's position one must believe the assertion that IV spent the time and

15  resources to create an "Evidence of Use" chart comparing the '251 and '331 patents against the

16  ARM core processor (using Xilinx's technical manuals) and presented this material to Xilinx along

17  with similar material for other patents and products even though IV believed that Xilinx did not

18  offer and was not developing a product incorporating an ARM Cortex A9 processor.[7]

19  Nevertheless, even if it were true that IV mistakenly believed that Xilinx did not have any such

20  products,  under Federal Circuit law, it is "irrelevant whether [IV] had conducted an adequate

21  investigation or whether it subjectively believed [Xilinx] was infringing. . . .  Indeed, it is the

22  objective words and actions of the patentee that are controlling."  See Hewlett-Packard, 587 F.3 at

23  1363 (citation omitted).

24

25

26
    ――――――――――――――――――
27       [7] This is even harder to believe in light of the fact that at in-person meetings IV's
    representatives stated that they had seen a Xilinx press release regarding a product incorporating
28  an ARM core processor.  (Liu Decl. ¶ 21 & Ex. 18 (April 27, 2010 News Release) (ECF No. 115
    & 111-3) (Decl. filed under seal).)

**B.    Because the Court Has Declaratory Judgment Jurisdiction Over Xilinx's Declaratory Judgment Claims for Non-Infringement of the '251, '331, and '061 Patents, it Also Has Declaratory Judgment Jurisdiction Over Xilinx's Claims for Invalidity of the '251, '331, and '061 Patents**

IV does not challenge the sufficiency of the allegations in the First Amended Complaint regarding invalidity.  Instead, the single argument advanced by IV in support of its motion to dismiss Xilinx's declaratory judgment claims for invalidity is that because the court lacks declaratory judgment jurisdiction over Xilinx's infringement claims it also lacks declaratory judgment jurisdiction over Xilinx's invalidity claims.  (Mot. at 13.)  As established above, the Court has declaratory judgment jurisdiction over Xilinx's infringement claims.  Therefore, IV's motion as to Xilinx's invalidity claims should likewise be denied.

**C.    Xilinx's Declaratory Judgment Claims Are Sufficiently Plead to Survive Defendants' Motion to Dismiss**

As a final catch-all argument, IV once again argues that Xilinx's claims for declaratory relief of non-infringement should be dismissed because Xilinx "fail[s] to specify with particularity the products or conduct that allegedly do not infringe each of the '251, '736, '165, '331, '350, '497, and '061 patents, [and therefore] Xilinx fails to state a plausible claim that is definite and concrete for declaratory relief of non-infringement . . . ."  (Mot. at 14.)  This argument is specious for the reasons set forth above and because Xilinx's First Amended Complaint clearly identifies specific products or product families for each of the patents on which Xilinx seeks a declaration of non-infringement.

Specifically, Xilinx's First Amended Complaint seeks "[a]n adjudication that the '251, '736, '165, '331, '350, '497, and '061 patents (collectively, the "Asserted Patents") are not infringed by Xilinx's importation, use, offer for sale, and/or sale in the United States of the Accused Products, including *the Spartan-6 FPGAs, the Virtex-5 ML50x evaluation platforms, the Virtex-5 FPGAs, the Xilinx FPGA Editor, and the 28 nm programmable logic products containing an ARM dual-core Cortex™A9 MPCore Processor such as the 7 Series FPGAs*." (FAC at 26-27.)  For the '251, '331, and '061 patents at issue in this Motion,[8] Xilinx clearly

---

[8] IV's notice of motion and request for relief is limited to those claims relating to the '251, '331, and '061 patents.  (Mot. at 8.)  Xilinx's Opposition therefore, addresses only those claims for which IV seeks dismissal.

XILINX'S OPPOSITION TO DEFS' MOT TO
DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

identifies a product or product family for which Xilinx seeks a declaration of non-infringement:

- Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '251 patent, … because none of its integrated circuits, including those Xilinx integrated circuits allegedly containing an **ARM dual-core Cortex™A9 MPCore Processor, including at least Xilinx's 28 nm programmable logic products such as the 7 Series FPGAs**, practice Claim 1 or any valid claim of the '251 patent.  (FAC ¶ 45 (emphasis added).)

- Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '331 patent, … because none of its integrated circuits allegedly containing an **ARM dual-core Cortex™A9 MPCore Processor, including at least Xilinx's 28 nm programmable logic products such as the 7 Series FPGAs** practice Claim 21 or any valid claim of the '331 patent.  (FAC ¶ 90 (emphasis added).)

- Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '061 patent, … because none of its integrated circuits, including Xilinx's **Spartan-6 FPGAs**, practice any valid claim of the '061 patent.  (FAC ¶ 135 (emphasis added).)

By contrast, in the claims found insufficient by the Court in *Bender v. Motorola* (which did not involve claims for declaratory judgment), the Plaintiff failed to identify ***any*** specific products or product families:

> Motorola has performed acts and performs acts within this judicial district and elsewhere that infringe, and induce others to infringe, one or more of the claims of the '188 Patent . . . by making, using, offering for sale, and/or selling products that consist of, comprise, and/or contain at least one circuit, silicon or otherwise, which contains and/or utilizes at least one buffered transconductance amplifier . . . and/or by practicing related methods embodying inventions claimed therein, which *such products include, without limitation, cell phones, computers, network drivers, high definition television sets, ultrasound machines, MRI machines, lab equipment, arbitrary waveform generators, audio amplifiers, video amplifiers, hard disc drives, ADC/DAC converters, DVD-RW players, DSL modems, CCD cameras, satellite communication technology, and other products where high performance, high speed analog circuits are used, and/or components thereof*.

*Bender v. Motorola*, N.D. Cal. Case No. 4:09-cv-01245-SBA, First Amended Complaint at 2-3 (emphasis added).  Thus, the court held "Plaintiff's generic descriptions of a litany of electronic products are far too conclusory to pass muster under Rule 8, *Twombly* or *Iqbal*." *Bender*, 2010 WL 72739 at *3.  By contrast, the allegations of the complaint at issue here point to specific products and product families, many of which came from IV itself as part of their demand for license fees for Xilinx's alleged infringement of the very same patents.

**D.    Xilinx's Section 17200 Claims Are Sufficiently Pled to Survive Defendants' Motion to Dismiss**

Under Federal Rules of Civil Procedure 12(b)(6), dismissal is proper only in "extraordinary" cases. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). Plaintiffs need only plead a "cognizable legal theory" or sufficient facts "to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The allegations in the complaint must be accepted as true, as well as all reasonable inferences that can be drawn from them, and construed in the light most favorable to the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A complaint should only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Redwood City*, 640 F.2d at 966 (citation omitted).

Defendants assert that Xilinx fails to allege a plausible claim under the "fraudulent" and "unlawful" prongs of the UCL and therefore Xilinx's UCL claims should be dismissed pursuant to Rule 12(b)(6). However, the UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The statute is phrased in the disjunctive so that Xilinx need only allege that Defendant's acts were unlawful *or* unfair *or* fraudulent in order to successfully state a claim. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Ct. App. 1999). Xilinx alleges only that Defendants' conduct is actionable under the "unfair" prong. (FAC ¶ 160). Defendants' arguments that Xilinx fails to state a claim under the "fraudulent" or "unlawful" prong are therefore irrelevant.

Relying on *Cel-Tech*, IV next argues that Xilinx fails to allege a plausible claim under the "unfair" prong of the UCL because "Xilinx's First Amended Complaint does not include any allegations that tether its claim to any constitutional, statutory, or regulatory provision prohibiting" the conduct Xilinx accuses. (Mot. at 19.)

IV's argument suffers from an erroneous reading of the *Cel-Tech* opinion. As the California Supreme Court made clear in *Cel-Tech*, the test for "unfair" business practices it was announcing was expressly limited to cases in which the parties are ***competitors***. *See Cel-Tech*, 20

1   Cal. 4th at 187 ("This case involves an action by a competitor alleging anticompetitive practices.

2   ***Our discussion and this test are limited to that context. Nothing we say relates to actions by***

3   ***consumers*** . . . ." (emphasis added). IV is a patent aggregator and licensor and does not claim to

4   make any product or offer any service (ITC Compl. ¶¶ 12-15.) By contrast, Xilinx designs and

5   sells actual products and provides related services. Because there can be no dispute that Xilinx

6   and IV are not "direct competitors," *Cel-Tech* is not controlling here and does not require Xilinx to

7   "include any allegations concerning market power or any other allegations that could plausibly

8   support 'an incipient violation of an antitrust law.'" (Mot. at 19.) IV's motion should be denied on

9   these grounds alone.

10          Following *Cel-Tech*, courts have attempted to formulate a definition of "unfair" under the

11  UCL for consumer or other commercial cases not involving direct competitors. In *Smith v. State*

12  *Farm Mutual Automobile Insurance Company*, 93 Cal. App. 4th 700, 720-21, n.23 (2001), the

13  court declined to apply *Cel-Tech* and instead applied the test used in *People v. Casa Blanca*

14  *Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984), which, applying guidelines adopted

15  by the Federal Trade Commission, concluded that "an 'unfair' business practice occurs when it

16  offends an established public policy or when the practice is immoral, unethical, oppressive,

17  unscrupulous or substantially injurious to consumers." Likewise, in *McKell v. Washington Mutual*

18  *Inc.*, the court adopted an FTC-like definition of an "unfair" business practice: "[a] business

19  practice is unfair within the meaning of the UCL if it violates established public policy ***or if it is***

20  ***immoral, unethical, oppressive or unscrupulous and causes injury to consumers*** which

21  outweighs its benefits." 142 Cal. App. 4th 1457, 1473 (2006) (emphasis added) (citations

22  omitted). The *McKell* court also applied a balancing test which "involves an examination of [that

23  allegedly unfair practice's] impact on its alleged victim, balanced against the reasons, justifications

24  and motives of the alleged wrongdoer," and must "weigh the utility of the defendant's conduct

25  against the gravity of the harm to the alleged victim. . . ." *Id*. (citation omitted). *See also*

26  *Progressive W. Ins. Co. v. Superior Ct.*, 135 Cal. App. 4th 263, 286 (2005) (applying *Smith*

27  balancing test); *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1270 (2006) (applying

28  the *Smith* balancing test).

XILINX'S OPPOSITION TO DEFS' MOT TO
DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:11-cv-04407-SI

1    The Federal Courts also recognize that the *Cel-Tech* "tethering" test is limited to

2   competitor cases and is not controlling for consumer or other commercial cases.  In *Lozano v.*

3   *AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007), the Ninth Circuit held that, "[i]n

4   the absence of further clarification by the California Supreme Court," district courts may apply

5   either or both the *Cel-Tech* or the older balancing test to determine if a defendant's conduct is

6   "unfair."  *Id.*  And, this very Court has explained:

> The California Supreme Court has never definitively addressed the test to be
> applied when evaluating a business practice for unfairness in a consumer action.
> The Courts of Appeal have applied two different tests in UCL consumer cases
> under the unfair acts prong.  As one Court put it:  There are two lines of appellate
> opinions addressing the definition of "unfair" within the meaning of the UCL in
> consumer actions.  ***One line defines "unfair" as prohibiting conduct that is
> immoral, unethical, oppressive, unscrupulous or substantially injurious to
> consumers and requires the court to weigh the utility of the defendant's conduct
> against the gravity of the harm to the alleged victim.***  The other line of cases holds
> that the public policy which is a predicate to a consumer unfair competition action
> under the "unfair" prong of the UCL must be tethered to specific constitutional,
> statutory, or regulatory provisions.

14   *Distor v. US Bank NA*, No. C 09-02086 SI, 2009 U.S. Dist. LEXIS 98361, at * 22-23 (N.D. Cal.

15   Oct. 22, 2009) (emphasis added) (citing *Bardin*, 136 Cal. App. 4th at 1260-61 (granting

16   defendants' motion to dismiss but granting plaintiff leave to amend if it "can plead specific facts

17   that show how specific acts of defendants meet one of California's tests for unfairness.").  *Distor*,

18   at 24.  Thus, contrary to IV's argument, Xilinx is not required "to allege facts sufficient to

19   establish a *prima facie* case of an incipient antitrust violation."  (Mot. at 18.)

20    Here, all that Xilinx is required to plead is "conduct that is immoral, unethical, oppressive,

21   unscrupulous or substantially injurious to consumers."  *See Distor*, at 22.  ████████████

22   ██████████████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████

26   Representatives from IV also represented that they had a right to enforce the Key Patents and

27   stated that "IV has taken action to enforce our invention rights" when referring to a lawsuit

28   involving four of the Key Patents.  (FAC ¶ 149.)  IV claim charts included a legend and copyright

1   notice that it was IV that had prepared them.  (FAC ¶¶ 38, 148;  *see, e.g.*, Liu Decl. Ex. 11 ('301

2   Claim Chart) (filed under seal).)  At no time during the negotiations did IV ever make a contrary

3   statement regarding ownership or rights to assert.  (FAC ¶ 39, 152.)  IV made these representations

4   knowing that they were false in an effort to get Xilinx to make further investments into their

5   Funds.  (FAC ¶¶ 156-158; Liu Decl. ¶ 16 (filed under seal).)

6           Taking IV Management at its word, Xilinx filed its declaratory judgment action naming

7   Intellectual Ventures, LLC and Intellectual Ventures Management, LLC and other entities

8   associated with the Funds, erroneously relying on IV Management's repeated demands for

9   licensing royalties and IV Management's repeated representations that it, not the nominal owners

10  of the patents, had the right to enforce and to license these patents.  (Complaint (ECF No. 1);  FAC

11  ¶¶ 151, 158.)  Only after IV Management realized that it might be subject to the jurisdiction of this

12  Court, did IV Management reverse itself and take the contrary position that the Key Patents were

13  not "IV's patents" and that it did not have the rights to assert the patents against Xilinx.  (FAC

14  ¶¶ 152-153.)  It is, at an absolute minimum, "unscrupulous" for IV Management to pretend to own

15  or have the right to assert these patents in order to demand tens of millions of dollars in licensing

16  revenues and then to swear under oath that it did not have those same rights in order to avoid the

17  jurisdiction of this Court.  IV Management, in effect, attempted to sell Xilinx the Brooklyn Bridge

18  and, when it got caught, defended itself by claiming it never owned the bridge in the first place.

19  Both the original deception and this defense are, at a minimum, unscrupulous.  As a direct result of

20  IV Management's unfair business acts, Xilinx expended and lost money through unnecessary cost

21  and expense in addressing IV Management's licensing demands well before it had to resort to this

22  litigation, satisfying the standing requirement of Section 17200.  (FAC ¶¶ 154-155.)  These

23  expenses include addressing Defendants' claims that the accused products infringe the asserted

24  patents, and responding to their demands that Xilinx take a license to the Key Patents and the

25  "highly relevant" portfolios.  Under the proper test for the adequacy of the pleadings, these

26  allegations are more than sufficient and IV's motion should be denied.

27          IV relies on *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798 (2007) for its

28  argument that Xilinx lacks standing to bring a claim under the UCL because Xilinx's seeks

"litigation costs." IV once again misstates the facts and the holding of a case in order to support its argument. Contrary to IV's assertions, *Buckland* has not "explicitly rejected the theory Xilinx advances here . . . ." (Mot. at 23-24.) First, as described above, Xilinx's economic injury are not merely "litigation costs." Second, the *Buckland* Court found the "litigation costs" incurred by the plaintiff were costs incurred for the sole purpose of establishing standing to sue. *Buckland*, at 816. Nevertheless, the *Buckland* Court acknowledged that resources diverted toward ***investigating a claim prior to litigation*** would constitute an "injury in fact." *Id.* That is precisely what Xilinx is alleging here.

> **E.    In the Alternative, to The Extent the Court Grants Defendants' Motion, Xilinx Requests Leave to Amend the Complaint**

In the event the Court is inclined to grant Defendant's Motion to Dismiss, Xilinx respectfully requests leave to amend its First Amended Complaint to cure any deficiency perceived by the Court. Under the Federal Rules, such leave should be granted "freely." Fed. R. Civ. P. 15(a)(2). Moreover, if the Court finds that subject matter jurisdiction over Xilinx's claims is not supported by the record, Xilinx respectfully requests leave of the Court to take focused discovery from Defendants to further demonstrate the existence of subject matter jurisdiction. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (recognizing that "[a] district court is vested with broad discretion to permit or deny [jurisdictional] discovery," and holding that "discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed").

## IV.    CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion to Dismiss Xilinx's First Amended Complaint. In the alternative, if the Court grants Defendants' Motion, it should also grant Xilinx leave to amend its Complaint and/or grant Xilinx leave to take jurisdictional discovery.

Dated: November 14, 2011                Respectfully submitted,
                                        JONES DAY

                                        By:  _/s/  Behrooz Shariati_
                                               Behrooz Shariati
                                        Attorneys for Xilinx, Inc.

SVI-99534